1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

Kerry B. Brownlee (*Pro Hac Vice*)
kbrownlee@ipcounselors.com
Jason M. Drangel (*Pro Hac Vice*)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*HDMI Licensing Administrator, Inc.*

**CONSTANTINE CANNON LLP**
Seth D. Greenstein
sgreenstein@constantinecannon.com
1001 Pennsylvania Ave., NW, 1300 N
Washington, D.C. 20004
Telephone: (202) 204-3500
Facsimile: (202) 204-3501
*Pro Hac Vice Application Pending*

Ankur Kapoor
akapoor@constantinecannon.com
335 Madison Avenue, Fl. 9
New York, NY 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701
*Pro Hac Vice Application Forthcoming*
*Attorneys for Plaintiff*
*HDMI Licensing Administrator, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR, INC., | Case No. 4:22-cv-6947-HSG |
| Plaintiff and Counterclaim Defendant, | **HDMI LICENSING ADMINISTRATOR, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AVAILINK INC.'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| AVAILINK INC., | |
| Defendant and Counterclaim Plaintiff. | Hearing Date: January 18, 2024<br>Time: 2:00 PM<br>Place: Courtroom 2, 4th Floor |

1

## NOTICE OF MOTION AND MOTION

2

**PLEASE TAKE NOTICE** that on January 18, 2024 at 2:00 PM, or as soon thereafter as this

3 matter may be heard by the Honorable Judge Haywood S. Gilliam, Jr., United States District Judge of

4 the United States District Court for the Northern District of California, located at the Oakland

5 Courthouse, 1301 Clay Street, Courtroom 2, 4th Floor, Oakland, California 94612, Plaintiff-

6 Counterclaim Defendant HDMI Licensing Administrator, Inc. ("Plaintiff" or "HDMI LA") will and

7 hereby does move the Court for an order dismissing all of Defendant-Counterclaim Plaintiff Availink

8 Inc.'s Counterclaims (*Dkt No. 49*) without leave to amend (the "Motion").

9

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6), and is made upon the following

10 grounds: Defendant-Counterclaim Plaintiff Availink Inc. ("Defendant" or "Availink") does not

11 plausibly allege a violation of federal antitrust law; its related state law claims fail for many of the

12 same reasons that its claim fails under federal law; it lacks standing to bring a trademark cancellation

13 claim under the Lanham Act, and regardless has failed to adequately plead genericness; its claim under

14 N.Y. Gen. Bus. L. § 349 fails due to Availink's lack of factual allegations regarding cognizable harm

15 to New York consumers; and its claim for declaratory relief should be dismissed as redundant.

16

Unless this Court finds otherwise, HDMI LA respectfully submits that this matter can be

17 decided on the papers. The instant Motion is based on this notice, the memorandum of points and

18 authorities in support filed herewith, all pleadings and papers on file with the Court, and all other

19 matters properly before this Court.

20

21 Dated: October 23, 2023                    Respectfully submitted,

22                                             **EPSTEIN DRANGEL LLP**

23

24                                             BY: *S/ Kerry B. Brownlee*
                                               Kerry B. Brownlee (*Pro Hac Vice*)
25                                             kbrownlee@ipcounselors.com
                                               60 East 42nd Street, Suite 1250
26                                             New York, New York 10165
                                               Telephone: (212) 292-5390
27                                             Facsimile: (212) 292-5391

28

# **TABLE OF CONTENTS**

I.   STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

II.  INTRODUCTION ...................................................................................................... 1

III. STATEMENT OF FACTS ......................................................................................... 2

IV. LEGAL STANDARDS .............................................................................................. 5

V.  ARGUMENT .............................................................................................................. 6

   A.   AVAILINK DOES NOT PLAUSIBLY ALLEGE A VIOLATION OF FEDERAL
ANTITRUST LAW. ............................................................................................................. 6

     1.   The HDMI Adopter Agreement Is a Lawful License of a Bundle of IP Rights, Including
Non-Patent Rights, and Availink Cannot Plausibly Allege Otherwise........................................ 7

     2.   Even if the Adopter Agreement Were a Patent Pool License, Continuing Royalties Would
Be Lawful Because the Pool Contains Unexpired Patents. ......................................................... 9

     3.   Availink Fails to Plead Anticompetitive Effects Resulting From the Adopter Agreement.
10

     4.   Availink Lacks Antitrust Standing To Assert "Grantback" Allegations......................... 12

   B.   FOR THE SAME REASONS, AVAILINK'S CLAIMS UNDER NEW YORK AND
CALIFORNIA STATE ANTITRUST LAWS AND CAL. BUS. & PROF. CODE § 17200 ALSO
FAIL. 14

   C.   AVAILINK FAILS TO STATE A CLAIM FOR CANCELLATION OF THE HDMI
TRADEMARKS. .................................................................................................................. 15

     1.   Availink Lacks Standing to Bring a Cancellation Claim. ................................................ 16

     2.   Even If Availink Had Standing, It Has Failed to Properly Plead Factual Allegations
Supporting Its Cancellation Claim. .............................................................................................. 16

   D.   AVAILINK FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL BUSINESS

LAW § 349. ............................................................................................................... 19

E.   AVAILINK'S CLAIM FOR DECLARATORY RELIEF IS REDUNDANT AND

SHOULD BE DISMISSED. ..................................................................................... 20

VI.  CONCLUSION........................................................................................................... 20

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *AAA Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 705 F.2d 1203 (10th Cir. 1982) ................... 12

4 *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5, 6

5 *Atl. Recording Corp. v. Serrano*, No. 07-CV-1824 W (JMA), 2007 U.S. Dist. LEXIS 95203 (S.D.

6     Cal. Dec. 27, 2007) ........................................................................................................... 20

7 *Axon Enter. v. Luxury Home Buyers, LLC*, No. 2:20-cv-01344-JAD-VCF, 2023 U.S. Dist. LEXIS

8     125043 (D. Nev. July 19, 2023) ........................................................................................ 17

9 *Beckman Instruments, Inc. v. Tech. Dev. Corp.*, 433 F.2d 55 (7th Cir. 1970) ................................ 10

10 *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................................................ 5

11 *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979) ................................................................ 7, 8

12 *Buffalo Broad. Co. v. Am. Soc. of Composers, Authors & Publishers*, 744 F.2d 917 (2d Cir. 1984) .. 8

13 *City of Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021) ............................................... 14

14 *Cunningham v. Laser Golf Corp.*, 222 F.3d 943 (Fed. Cir. 2000) ................................................. 15

15 *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .................................................. 3

16 *Elliott v. Google, Inc.*, 860 F.3d 1151 (9th Cir. 2017) ................................................................. 16

17 *Entrepreneur Media, Inc. v. Dermer*, No. SACV 18-1562 JVS (KESx), 2019 U.S. Dist. LEXIS

18     164858 (C.D. Cal. July 22, 2019) ..................................................................................... 18

19 *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) ........................................ 14

20 *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) .................................................. 8, 12

21 *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP (SSx), 2014 U.S. Dist.

22     LEXIS 117623 (C.D. Cal. Aug. 22, 2014) .................................................................... 15, 18

23 *Glob. Apogee v. Sugarfina, Inc.*, No. CV 18-05162-PSG-E, 2023 U.S. Dist. LEXIS 58599 (C.D. Cal.

24     Mar. 31, 2023) ................................................................................................................. 16

25 *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F.Supp.2d 269 (S.D.N.Y. 2003) ......................... 19

26 *Hull v. Brunswick Corp.*, 704 F.2d 1195 (10th Cir. 1983) .......................................................... 10

27 *In re Cipro Cases I & II*, 61 Cal. 4th 116 (2015) ...................................................................... 14

28

*In re Dynamic Random Access Memory (DRAM)*, 28 F.4th 42 (9th Cir. 2022) ................................... 6

*In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021) ..................... 14

*In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136 (9th Cir. 2019) ......................................... 6

*In re Pandora Media LLC*, No. 222CV00809MCSMAR, 2022 WL 19299126 (C.D. Cal. Oct. 26, 2022) .......................................................................................................................................... 8

*In re Zappos.com, Inc.,* 888 F.3d 1020 (9th Cir. 2018) ..................................................................... 14

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV07-00043MMMSSX, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x 571 (9th Cir. 2009)............................... 11

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015) ................................................................ 9

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005)............... 15

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)........................................... 12

*Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 NRB, 2011 WL 856266 (S.D.N.Y. Mar. 9, 2011) ........................................................................................................................................... 9

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, No. CIV.A.3:95-CV-1010-G, 1997 WL 671323 (N.D. Tex. Oct. 20, 1997), *aff'd*, 145 F.3d 320 (5th Cir. 1998) ................................................... 12

*Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679 (1978) ...................................................... 6

*Nero AG v. MPEG LA, L.L.C.*, No. 10-CV-3672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sep. 14, 2010) ...................................................................................................................................... 8, 9

*Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) ...................................................................... 6

*Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) .................................. 12

*Patt v. Antech Diagnostics, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2019 U.S. Dist. LEXIS 213021 (C.D. Cal. July 30, 2019) ......................................................................................................... 15

*POM Wonderful LLC v. Hubbard*, No. 13-06917 RGK (JPRx), 2016 U.S. Dist. LEXIS 86970 (C.D. Cal. June 29, 2016) .................................................................................................................. 15

*Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10-945 CW, 2013 WL 12324116 (N.D. Cal. Apr. 15, 2013) ........................................................................................................................................ 10

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ............... 14

*Sensory Path Inc. v. Fit & Fun Playscapes LLC*, No. 3:19-CV-219-GHD-RP, 2021 U.S. Dist. LEXIS 197315, 2021 WL 4768247 (N.D. Miss. Oct. 12, 2021) ............................................................. 18

*Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 U.S. Dist. LEXIS 173607 (N.D. Cal. Jan. 21, 2011) ................................................................................................................... 15

*St. Clare v. Gilead Scis., Inc.,* 536 F.3d 1049 (9th Cir. 2008) ............................................................ 6

*Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293 (9th Cir. 1998) ......................................................... 6

*Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. C 01-4925, 2007 WL 2318903 (N.D. Cal. Aug. 13, 2007) ..................................................................................... 11

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) ..................................... 11

*UMG Recordings, Inc. v. DIVX, Inc.*, No. CV 07-06835 AHM (AJWx), 2008 U.S. Dist. LEXIS 128844 (C.D. Cal. Aug. 22, 2008) ............................................................................... 20

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ..................................................................... 3

*Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (1995) .............................................................. 14

*Vital Pharm. v. Phd Mktg., Inc.*, No. CV 20-6745-RSWL-JC, 2021 U.S. Dist. LEXIS 253938 (C.D. Cal. Mar. 3, 2021) ................................................................................................. 16

*Well Survs., Inc. v. Perfo-Log, Inc.*, 396 F.2d 15 (10th Cir. 1968) ................................................. 10

**Statutes**

15 U.S.C. § 1 ..................................................................................................................................... 6

15 U.S.C. § 1064(3) ......................................................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ...................................................................................................... 18

N.Y. Gen. Bus. L. § 349 .................................................................................................................. 23

**Other Authorities**

Letter from Joel I. Klein, Acting Assistant Att'y Gen., U.S. Dep't of Justice, Business Review Letter of MPEG LA, L.L.C. (June 26, 1997), *available at*

https://www.justice.gov/sites/default/files/atr/legacy/2006/10/17/215742.pdf ........................... 16

Letter from Joel I. Klein, Assistant Att'y Gen., U.S. Dep't of Justice, Business Review Letter of DVD-ROM and DVD-Video (June 10, 1999), *available at*

https://www.justice.gov/sites/default/files/atr/legacy/2012/08/01/2485.pdf ................................ 15

U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, ANTITRUST ENFORCEMENT AND INTELLECTUAL

PROPERTY RIGHTS: PROMOTING INNOVATION AND COMPETITION (2023 update) ......................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 5

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Does Defendant[1] fail to allege a plausible violation of the Sherman Act, 15 U.S.C. § 1, because the Adopter Agreement is a lawful technology license including a package of intellectual property rights, Defendant fails to allege any anticompetitive effect, and Defendant lacks antitrust standing to make certain "grantback" allegations?

2.   Does Defendant fail to allege a plausible violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, for the same reasons that it fails to state a claim under the Sherman Act?

3.   Does Defendant fail to allege a plausible violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, in light of its failure to state a claim under the Sherman Act and its insufficient allegations of any other unlawful business practice?

4.   Does Defendant fail to allege a plausible violation of the Donnelly Act, N.Y. Gen. Bus. L. § 340, for the same reasons that it fails to make out a claim under the Sherman Act?

5.   Does Defendant fail to state a claim for cancellation of the HDMI Trademarks because Defendant lacks standing to bring a cancellation claim, and regardless, it fails to adduce factual, non-conclusory allegations of genericness?

6.   Does Defendant fail to state a claim for any violation of N.Y. Gen. Bus. L. § 349 because it fails to allege any cognizable acts affecting the public at large, including consumers in New York?

7.   Does Defendant fail to state a claim for declaratory relief because its claim merely recites issues already before this Court?

### II.   INTRODUCTION

For years, Defendant-Counterclaim Plaintiff Availink Inc. ("Defendant" or Availink") reaped the benefits of licensing the innovative HDMI technology and reputable HDMI Trademarks from Plaintiff-Counterclaim Defendant HDMI Licensing Administrator, Inc. ("Plaintiff" or "HDMI LA") for use on or in connection with Availink's products. Availink then sought to avoid its contractual

---

[1] All capitalized terms used in the Statement of Issues to Be Decided and Introduction, unless otherwise indicated, should be understood as defined *infra*.

obligations and unequivocally and inexcusably breached the terms of said license, necessitating HDMI LA's filing of this action. Availink now baselessly alleges that the Adopter Agreement, and the license it received thereunder, which it accepted for years, is invalid under antitrust law. Availink also seeks to cancel HDMI LA's HDMI Trademarks, although it alleges it does not use them. *See* Availink, Inc.'s Counterclaims (*Dkt. Entry No. 49*) ("Count." or "Counterclaims"). As detailed herein, Availink has failed to state a legally sufficient basis for all of its Counterclaims.

Primarily, Availink cannot plausibly allege that HDMI LA's licensing of multiple intellectual property rights in a single agreement is unlawful. The bundling of a technology specification with necessary underlying trade secret, copyright, patent, and trademark rights in a single license is lawful under established antitrust law where licensees remain free to obtain individual licenses, *because there is no restraint of trade*. Availink's allegations establish that HDMI LA's licensees have the option of individual licenses, and Availink fails to allege that it was practically unable to avail itself of individual licenses. Availink has also failed to plead facts to support allegations of anti-competitive effects; lacks standing to assert the Counterclaims' grantback allegations; lacks standing to challenge the HDMI Trademarks; and has failed to adduce more than conclusory allegations regarding genericness. Availink's related state law claims fail for much of the same reasons. Additionally, its claim under N.Y. Gen. Bus. L. § 349 fails on its face due to Availink's lack of factual allegations regarding cognizable harm to New York consumers. Likewise, Availink's claim for declaratory relief should be readily discarded as redundant. In light of Availink's clear failure to adduce more than mere conclusory allegations in its Counterclaims, all of its Counterclaims should be dismissed under Fed. R. Civ. P. 12 (b)(6).

## III.   STATEMENT OF FACTS[2]

HDMI LA is the licensing agent for a set of intellectual property rights necessary to make products compliant with the High-Definition Multimedia Interface Specification v. 1.x ("HDMI

---

[2] The following Statement of Facts is based upon the allegations of Availink's Counterclaims inasmuch as the Court must accept as true, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the well-pleaded allegations therein. By repeating these allegations in this memorandum, HDMI LA does not admit the truth of Availink's assertions.

Specification"), which are owned by the seven "Founder" companies that jointly created the HDMI Specification (collectively, the "Founders"), and for the trademarks for use in connection with products that are compliant with the HDMI Specification. Count. ¶¶ 3, 6-7, 18-19. The Founders jointly developed the HDMI technology to define a signal to transmit high-definition digital video and audio together along a single connection, and to establish product specifications that ensure compatibility among all source devices, e.g., personal computers or DVD players, and display devices, and the cables, ports, and plugs that connect them. *Id.* ¶¶ 16, 18-19. Before the Founders created and released the first version of the HDMI Specification in December 2002, there were no methods for transmitting digital video and audio together through a single interface. *Id*. ¶¶ 18-20.

The Founders jointly created the HDMI Specification in a private technology project, not a voluntary consensus standards-development process. *Id.* ¶¶ 17-18. The Founders prescribed the details of their technology in a technical document—the HDMI Specification—and retained an agent to license and promote it. The HDMI Specification has been extraordinarily successful and enduring: it has been widely adopted by more than 1,900 electronics and PC manufacturers worldwide, *id*. ¶ 35, and has been continually updated with new added features, some of which are covered by newly-issued patents, *id*. ¶¶ 59-61. HDMI LA and its licensees (known as "Adopters") have continuously used HDMI LA's valuable trademarks, including "HDMI" (covered by US. Trademark Registration No. 3,268,924), and "HDMI HIGH DEFINITION MULTIMEDIA INTERFACE " (covered by U.S. Trademark Registration No. 3,442,135) in connection with products incorporating the HDMI Specification (collectively, the "HDMI Trademarks" and "HDMI Registrations", respectively). *See id.* at ¶¶ 104-105.

In 2015, Availink signed the "High-Definition Multimedia Interface Specification ADOPTER AGREEMENT" with HDMI LA's predecessor, HDMI Licensing, LLC. Complaint Exhibit B ("Ex. B" or "Adopter Agreement").[3] The purpose of that Adopter Agreement is stated in the preamble:

---

[3] Availink cites provisions of the Adopter Agreement as the exclusive basis for its Counterclaims, and so the Court may consider the provisions of the Adopter Agreement on a motion to dismiss under Rule 12(b)(6) under the "incorporation by reference" doctrine. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"Certain Founders have developed a digital media interface specification: *High-Definition Multimedia Interface*™ *v. 1.x (or 'HDMI*™*')* and are offering a non-discriminatory license to implement HDMI. This is a license agreement for parties wishing to adopt the HDMI Specification." Ex. B p. 1.

The Adopter Agreement grants Adopters licenses to three separate categories of intellectual property rights: (1) "to use the [HDMI] Specification" to make, have made, use, import, offer to sell, sell, lease, promote and otherwise distribute "Licensed Products"; (2) to use any of the Founders' Necessary Claims (i.e., claims of a patent that are necessarily infringed to implement and comply with the HDMI Specification) solely to make, have made, use, import, offer to sell, sell, lease, promote and otherwise distribute "Licensed Products"; and (3) to use trademarks and logos created by the Founders "in connection with the promotion of the [HDMI] Specification and the High-Definition Multimedia Interfaces and the sale, lease, promotion and distribution and use of Licensed Products." *Id.* ¶¶ 2, 4-5.

The Adopter Agreement limits each of the above-referenced licenses to uses solely in connection with Licensed Products. *Id.* The "Specification" is defined as the then-current version of the HDMI Specification 1.x (where "x" denotes a revision). *Id.* ¶ 1.20. "Licensed Product" lists six specific categories of products that must be "Fully Compliant" implementations of all relevant portions of the HDMI Specification. *Id.* ¶¶ 1.5-1.7, 1.11, 1.14, 1.17-1.19.

Each Adopter acknowledges that it has been offered the combination of licenses under the Adopter Agreement as a convenience, and that any Adopter has the right instead to obtain necessary license rights directly from each of the Founders. *Id.* ¶ 9.22.1 (acknowledging Adopter may obtain a direct license to each Founder's Necessary Claims); ¶ 9.22.2 (Adopter may directly license the HDMI Specification and certain trademarks). The Founders are identified in the Adopter Agreement. *Id.* ¶ 1.10. Availink does not allege that it ever attempted to license the technology directly from any Founder.

Any Adopter that believes it owns a Necessary Claim (as defined in the Adopter Agreement) may petition HDMI LA and the Founders for a share of future royalties collected from Adopters. *Id.* ¶ 9.23. Availink does not allege either that it owns a Necessary Claim or that it submitted such a petition.

Royalties for the rights licensed under the Adopter Agreement have remained constant since 2002, and have not increased with each new version of the HDMI Specification, the addition of any Necessary Claims, the adoption of additional HDMI trademarks, or inflation. Count. ¶¶ 45-46. The royalty schedule provides for a base rate of 15 cents per end-user Licensed Product, such as set-top boxes, DVD players, or digital TVs or computer displays. Ex. B, Attachment B, p. 54. The payment does not differentiate or allocate royalties among the three licensed rights, or the number or types of Licensed Products the Adopter makes, uses, or sells. *Id.* To encourage Adopters to help promote and build consumer awareness of the value and compatibility of HDMI technology, the royalty is discounted to 5 cents where the Adopter uses the licensed trademarks. *Id.* and Attachment A, Adopted Trademark and Logo User Guide, pp. 11-53.[4] Only one royalty must be paid from component to end-user Licensed Product, such that Adopters that make components (such as Availink's system-on-chip integrated circuits, "SoC ICs") that are intended to be incorporated into end-user Licensed Products need not pay any royalty where they can document that a downstream Adopter has paid the royalty. *Id.* Attachment B; Count. ¶ 87. Conversely, if the SoC IC manufacturer pays the royalty, HDMI LA will not collect a second royalty downstream. Ex. B Attachment B.

Availink manufactured components for end-user products that practiced the HDMI Specification 1.x. Count. ¶ 53. Availink does not allege that it paid royalties on any of the components it manufactured, or that it provided HDMI LA information as to any downstream Adopter that paid the single royalty due. Count. ¶ 54.

## IV.    LEGAL STANDARDS

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff or counterclaimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs must provide "more than labels and conclusions, and a

---

[4] To attract support from those whose content is transmitted using HDMI technology, Attachment B offers an additional 1 cent per-unit discount if the Adopter licenses content protection technology for copyrighted content transmitted over interfaces using the HDMI technology. *Id.*

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The facts as alleged must be sufficient to "raise a right to relief above the speculative level." *Id.* Moreover, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.,* 536 F.3d 1049, 1055 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The court is "'not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.'" *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted).

## V. ARGUMENT

### A. AVAILINK DOES NOT PLAUSIBLY ALLEGE A VIOLATION OF FEDERAL ANTITRUST LAW.

In Count I of the Counterclaims, Availink alleges HDMI LA violated Section 1 of the Sherman Antitrust Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. The Counterclaims contain no allegations of *per se* unlawful conduct,[5] so the allegations are assessed under the "rule of reason." *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2284 (2018). Under the rule of reason, the Court looks to "'the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed,' to determine the effect on competition in the relevant product market." *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) (quoting *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

"To state a claim under Section 1, a plaintiff must allege facts showing '(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . .; (3) which actually injures competition.'" *In re Dynamic Random Access Memory (DRAM)*, 28 F.4th 42, 46 (9th Cir. 2022).

Availink's allegations challenge the Adopter Agreement as an unlawful patent pool license.

---

[5] Per-se illegality under the Sherman Act encompasses "[a] small group of restraints," e.g., conspiracies to fix prices, that are unreasonable per se because they "always or almost always tend to restrict competition or decrease output." *Ohio*, 138 S. Ct. at 2283.

But by the plain terms of the Adopter Agreement and the plain language of Availink's allegations, it is neither a patent pool nor unlawful. It is an agreement that licenses a technical specification together with appurtenant patent and other intellectual property rights. This package licensing cannot violate federal antitrust law because—under the express terms of the Adopter Agreement—individual licensing is freely available. Even if the Adopter Agreement could be construed as a patent pool license, the license is lawful for that same reason and because Availink fails to plead anything else unlawful about it.

### 1. The HDMI Adopter Agreement Is a Lawful License of a Bundle of IP Rights, Including Non-Patent Rights, and Availink Cannot Plausibly Allege Otherwise.

Availink alleges that "[t]he Founders pooled their HDMI patents" and "devised a licensing scheme" "which includes extending the temporal scope of patents beyond the expiration date" and otherwise "bundling intellectual property rights."  Count. ¶¶ 3, 4; *see also id.* ¶¶ 31-32 (challenging "joint licensing scheme"), ¶¶ 39-42 (challenging royalty rate for "the pooled patents"). However, HDMI LA is not a "patent pool." The Adopter Agreement grants, to "parties wishing to adopt the HDMI Specification," the right to make products that use and comply with the confidential technical HDMI Specification, with accompanying licenses to trademark rights, necessarily-infringed patent claims, copyrights, and trade secrets owned by the Founders.  *Id.* ¶¶ 3, Adopter Agreement p.1 and §§ 2, 4. The Counterclaims acknowledge that the Adopter Agreement licenses trademark and other rights in addition to patents. *Id.* ¶¶ 3-4.

Even if the Adopter Agreement were considered a patent pool, Availink fails to allege non-conclusory facts showing that its license provisions are unlawful. The legal standard for antitrust claims premised on pooled intellectual property rights is set forth in *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979) ("*BMI*"), and its progeny. In *BMI*, the Supreme Court detailed the procompetitive benefits of pooled IP rights (in that case, "blanket" copyright licenses to musical compositions). Those procompetitive benefits include: solving for a need in the marketplace, *id.* at 20-21 (describing the blanket license as "an obvious necessity"); lowering costs, *id.* at 21-22 (noting the "substantial lowering of costs" accompanying the blanket license); enabling compensation for IP rights, which the Ninth Circuit recently recognized in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946,

986 (9th Cir. 2023) ("We have held that IP-compensation is a cognizable procompetitive rationale . . . ."); and creating a new product, one that can be "greater than the sum of its parts." *BMI*, 444 U.S. at 20-24. The *BMI* Court held that, given those procompetitive benefits, licenses to pooled IP rights are not *per se* unlawful and instead should be evaluated under antitrust's rule of reason, which weighs any anticompetitive effects against any procompetitive effects. *Id.* at 24. Antitrust plaintiffs challenging pooled IP rights therefore must plead nonconclusory facts plausibly demonstrating anticompetitive effects from the challenged conduct. Merely challenging the pooling of IP rights is insufficient as a matter of law because, contrary to *BMI*, that would make pooling *per se* unlawful.

Post-*BMI* cases establish that "the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available." *Buffalo Broad. Co. v. Am. Soc. of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2d Cir. 1984). The "antitrust plaintiff has the burden of pleading the nonavailability of options to acquire individual licensing." *See, e.g.*, *In re Pandora Media LLC*, No. 222CV00809MCSMAR, 2022 WL 19299126, at *9 (C.D. Cal. Oct. 26, 2022). Moreover, "[t]he burden of proving lack of a realistic opportunity to license directly cannot be met where a plaintiff never makes an inquiry or attempts to negotiate a single individual license." *Nero AG v. MPEG LA, L.L.C.*, No. 10-CV-3672-MRP-RZ, 2010 WL 4366448, at *6–7 (C.D. Cal. Sep. 14, 2010).

Here, the unambiguous terms of the Adopter Agreement establish that there *are* alternative options to licensing the bundle of IP rights in and appurtenant to the HDMI Specification and, therefore, that Availink cannot state an antitrust claim as a matter of law. Section 9.22 ("Licensing Options") provides for alternative, separate licenses to each individual Founder's patent rights or to the HDMI Specification. Section 9.22.1 states that "each Founder is willing to provide separate patent licenses . . . on fair, reasonable and non-discriminatory terms and conditions. Any person or entity seeking such a separate license should contact the applicable Founder in writing." Section 9.22.2 similarly states, "if any person or entity desires to license the Specification and Adopted Marks without obtaining a [patent] license to Necessary Claims, the Founders are willing to provide a separate license to the Specification and . . . the Adopted Trademarks . . . under fair, reasonable and non-discriminatory

terms and conditions. Any person or entity seeking such a separate license should make a written request to the Agent." Availink has not pointed to any provision in the Adopter Agreement that restricts its ability to obtain an individual license. *Contrast with*, *In Re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1151 (reversing Rule 12(b)(6) dismissal where "[u]nder the terms of the Teams-NFL and NFL-DirecTV Agreements, no individual NFL team is permitted to sell its telecasting rights independently."); *Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 NRB, 2011 WL 856266, at *13 (S.D.N.Y. Mar. 9, 2011) (finding that individual licensing was not available because of restrictions in the plaintiffs' licensing contracts).

Availink's only allegation regarding the availability of individual licensing is that HDMI LA "refus[ed] to disclose the allegedly licensed patents" or the "owners of those patents." Count. ¶ 83. Even if true, which HDMI LA disputes, any argument that these allegations establish that individual licensing was unavailable is facially implausible. The Counterclaims acknowledge that it was "[t]he Founders" who "pooled their HDMI patents" to create the HDMI Specification. Count. ¶ 3. And Availink acknowledges who the Founders are—the Counterclaims and the Adopter Agreement list them by name. Count. ¶ 19; Ex. B ¶ 1.10. Despite knowing which entities to approach for individual licenses, Availink has not pleaded that it did so. Accordingly, Availink "never ma[de] an inquiry or attempt[ed] to negotiate a single individual license," which dooms its antitrust claim. *Nero AG*, 2010 WL 4366448, at *6–7.

### 2. Even if the Adopter Agreement Were a Patent Pool License, Continuing Royalties Would Be Lawful Because the Pool Contains Unexpired Patents.

As noted, the Adopter Agreement includes a license to access and use the HDMI Specification to make compliant Licensed Products, along with copyright, trademark rights, and a license to any patent Necessary Claims. Even analyzing HDMI LA's Adopter Agreement counterfactually as a patent pool license, Availink has not sufficiently pleaded an antitrust claim. Availink's only substantive allegation is that "the lack of step-down in the royalty rate" restrains competition because some patent claims necessary to the HDMI Specification have expired. Count ¶ 65; *see also id.* ¶¶ 44-46, 50. But continuing to require royalties in a patent pool after some patents in the pool have expired is not unlawful. In *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 454 (2015), the Supreme Court held

that royalties for a license that "covers either multiple patents or additional non-patent rights" "may run until the latest-running patent covered in the parties' agreement expires." And as Availink's pleading readily acknowledges, there remain unexpired patents licensed by the Adopter Agreement. *See* Count. ¶ 61 (noting additional patents on new features in HDMI Specification) and ¶ 62 (noting, on information and belief, that only that "a number" of patents covering older HDMI specifications have expired). Under *Kimble*, there is nothing unlawful about royalties continuing to accrue under the Adopter Agreement.

Moreover, it is insufficient for Availink to plead only that the absence of a step-down royalty is anticompetitive or patent misuse. *See Beckman Instruments, Inc. v. Tech. Dev. Corp.*, 433 F.2d 55, 61 (7th Cir. 1970); *Hull v. Brunswick Corp.*, 704 F.2d 1195, 1202 (10th Cir. 1983). "[A] package license agreement, voluntarily entered into, which requires the payment of royalties beyond the expiration of some, but not all, of the licensed patents is valid." *Beckman*, 433 F.2d at 61; *see also Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10-945 CW, 2013 WL 12324116, at *11 (N.D. Cal. Apr. 15, 2013) ("Courts have approved of contract provisions such as these when an agreement was entered into voluntarily . . . ."). Accordingly, the absence of a step-down royalty is not anticompetitive or patent misuse, "*as it does not require payment for expired patents*." *Hull*, 704 F.2d at 1202 (emphasis added). Availink has not alleged anything suggesting the license was not voluntarily entered into by the more than 1,900 electronics manufacturers taking the license. Accordingly, Count I of its Counterclaims fails. *See Well Survs., Inc. v. Perfo-Log, Inc.*, 396 F.2d 15, 18 (10th Cir. 1968) ("The relative importance of patents has no significance if a licensee is given the choice to take a patent alone or in combination on reasonable terms. Freedom of choice is the controlling question."); Count. ¶ 35.

### 3. Availink Fails to Plead Anticompetitive Effects Resulting From the Adopter Agreement.

Nothing in Availink's Counterclaims plausibly alleges that the Adopter Agreement has any anticompetitive effect. Availink alleges, in a conclusory fashion, that the Adopter Agreement results in supra-competitive prices. *See* Count. ¶ 124. Although "supra-competitive prices to consumers are a cognizable form of antitrust injury," Availink "must allege facts demonstrating that there is a causal connection between the alleged anti-competitive actions . . .  and the alleged supra-competitive

prices." *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV07-00043MMMSSX, 2007 WL 4976364, at *14 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x 571 (9th Cir. 2009); *see also Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. C 01-4925, 2007 WL 2318903, at *15 (N.D. Cal. Aug. 13, 2007), *aff'd*, 301 F. App'x 959 (Fed. Cir. 2008).

Availink's only substantive, non-conclusory allegation about the effect of the Adopter Agreement is that the lack of step-down royalty artificially raises prices. Count. ¶ 65. Because, as discussed above, the absence of a step-down royalty by itself is legally deficient to state a claim, Availink fails to plead a cognizable case of anticompetitive effects.

Moreover, Availink's Counterclaim fails to allege that the pooling of rights in the Adopter Agreement caused higher prices. For that to be true, the Adopter Agreement would have had to create a supra-competitive price that was higher than the price of individually licensing the components of the HDMI Specification that Availink needed. But nothing in the Counterclaim plausibly suggests that. The mere fact of bundling IP rights does not establish that the bundled price was supra-competitive. To the contrary, a lawful bundled license fee is not necessarily proportional or even related to the number of patents in the bundle. *See U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1191 (Fed. Cir. 2005) ("[T]he royalty rate did not vary depending on whether the licensees used only the essential patents or used all of the patents in the package.").

*BMI* and its progeny describe the procompetitive benefits of bundled licenses—all of which are embodied in the Adopter Agreement at issue here and are acknowledged by Availink in its pleading. For example, the blanket licenses for musical compositions in *BMI* solved for a need in the marketplace; similarly, the Counterclaim here acknowledges that HDMI was "the first standard to combine audio and video." Count. ¶ 21. *BMI* held that the blanket licenses also created new products, separate and apart from the licenses to individual musical compositions; likewise, the Counterclaim here acknowledges that the HDMI Specification has been "extremely successful." *See* Count. ¶ 35 (noting "over 1,900 of the largest and most innovative electronics and PC manufacturers worldwide . . . have manufactured over 11 billion products using the HDMI Specification."). And the Adopter Agreement enables a single "one-stop shop" license and compensation for all the Founders'

intellectual property rights in this highly successful and innovative technology, which is also procompetitive. *Epic Games*, 67 F.4th at 986.

Finally, Availink's allegations about the HDMI Trademarks, far from establishing *anticompetitive* effects, in fact reinforce the *procompetitive* nature of the Adopter Agreement. The Adopter Agreement offers lower royalties for end-user products that use the HDMI Trademarks, Count. ¶¶ 85-87, and thereby promotes the HDMI technology. Ex. B ¶ 5 (granting "license to use the Adopted Trademarks in connection with the promotion of the [HDMI] Specification" and the sale of HDMI-compliant products). Offering lower prices for promoting a trademark or brand is a classic procompetitive business practice, not anticompetitive "coercion." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Lower prices are almost always procompetitive."). In addition to lowering prices, promotion of the HDMI technology facilitates interbrand competition, another classic procompetitive effect. *See, e.g.*, *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007) (describing protecting the "promotion of interbrand competition" as part of "the primary purpose of the antitrust laws"); *AAA Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 705 F.2d 1203, 1208 (10th Cir. 1982) ("The record establishes that the discount program had the effect of lowering retail prices to consumers and increasing interbrand competition."); *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, No. CIV.A.3:95-CV-1010-G, 1997 WL 671323, at *4 (N.D. Tex. Oct. 20, 1997), *aff'd*, 145 F.3d 320 (5th Cir. 1998) ("The effect of the discount program is to lower retail prices to customers and increase interbrand competition."). Therefore, providing lower royalties to users who incorporate the HDMI Trademarks is procompetitive, which defeats Availink's Federal antitrust claim.

### 4.   Availink Lacks Antitrust Standing To Assert "Grantback" Allegations.

Availink alleges that a supposed "grantback" of licensees' patent rights to HDMI LA is anticompetitive. Here again, Availink is wrong on both the facts and the law. There is no "grantback" of licensees' patents in the HDMI Specification. Even if there was, Availink lacks antitrust standing because it has not alleged that it has any patents that would be covered by the challenged provision.

A "grantback" is an agreement "by which a licensee extends to the licensor the 'right to use the licensee's improvements to the licensed technology.'" U.S. DEP'T OF JUSTICE & FED. TRADE

COMM'N, ANTITRUST ENFORCEMENT AND INTELLECTUAL PROPERTY RIGHTS: PROMOTING INNOVATION AND COMPETITION (2023 update) ("DOJ/FTC Report") p. 80. The Adopter Agreement does not require any licensees to grant or license any patents they may have covering the HDMI Specification to the Founders or other Adopters. Section 3 requires only that the licensees may not assert any necessarily-infringed patent claims to prevent other licensees from using the HDMI Specification. Ex. B.

Such narrow non-assertion provisions are procompetitive because they prevent licensees from taking the benefits of the Adopter Agreement while excluding competition from other Adopters.  In reviewing a grantback provision for a package license of DVD specifications, the Department of Justice found that "[t]he procompetitive effects of such a requirement are clear. It ensures that no party to the pool will be able to benefit from the pool while blocking other parties from utilizing the Standard Specifications." Letter from Joel I. Klein, Assistant Att'y Gen., U.S. Dep't of Justice, Business Review Letter of DVD-ROM and DVD-Video (June 10, 1999), *available at* https://www.justice.gov/sites/default/files/atr/legacy/2012/08/01/2485.pdf. *See also* Letter from Joel I. Klein, Acting Assistant Att'y Gen., U.S. Dep't of Justice, Business Review Letter of MPEG LA, L.L.C. (June 26, 1997), *available at* https://www.justice.gov/sites/default/files/atr/legacy/2006/10/17/215742.pdf (finding that a grantback provision was not anticompetitive because "any firm that wishes to take advantage of the costs savings afforded by the Portfolio license cannot hold its own essential patents back from other would-be manufacturers of MPEG-2 products"); DOJ/FTC Report pp. 80-81 (noting that grantbacks of nonexclusive rights limited to essential patents "are unlikely to raise competitive concerns."). Should any licensee wish to be compensated for any necessary patent claim that it believes covers the HDMI Specification, it may receive a reasonable allocation of royalty payments under Section 9.23. *See* Ex. B.

In short, Availink and Adopters *benefit* from the non-assertion provision, which clears the patent thicket and thereby facilitates market entry and competition. Availink and Adopters may also benefit from royalty payments for any Necessary Claims that licensees have which cover the technology.

In any event, Availink has not pleaded that it has a patent subject to a "grantback" or for which it should be compensated. Availink has thus not pleaded any injury from these provisions, and therefore, has not alleged either Article III or antitrust standing to challenge them. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021) (no antitrust standing where allegations that the Raiders would have stayed in Oakland absent the alleged horizontal conspiracy were speculative); *In re Zappos.com, Inc.,* 888 F.3d 1020, 1024 (9th Cir. 2018) (no Article III standing where plaintiff could not show, *inter alia,* an injury in fact that is "concrete and particularized and (b) actual or imminent, not conjectural or hypothetical") (citations omitted).

**B.      FOR THE SAME REASONS, AVAILINK'S CLAIMS UNDER NEW YORK AND CALIFORNIA STATE ANTITRUST LAWS AND CAL. BUS. & PROF. CODE § 17200 ALSO FAIL.**

Using the same factual allegations, Availink also brings claims under California and New York state antitrust laws (Counts III and V), and a claim for unfair competition under California law (Count IV). But California and New York antitrust laws are construed in accordance with federal law unless there is an expressed departure from federal law. "Under New York law, the state and federal antitrust statutes 'require identical basic elements of proof.'" *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 332-33 (S.D.N.Y. 2003); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021). Similarly, in California, "[b]ecause the Cartwright Act has objectives identical to the federal antitrust acts, the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act." *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (1995); *In re Cipro Cases I & II*, 61 Cal. 4th 116, 146 (2015) (finding that both the Cartwright Act and the Sherman Act "carry forward the common law understanding that only unreasonable restraints of trade are prohibited" (internal citation omitted)); *see also Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1048 (N.D. Cal. 2021) (dismissing plaintiff's Cartwright Act claims because its Sherman Act claims failed and the plaintiff had "not identified any specific and material differences between the Cartwright Act and the Sherman Act"). As discussed above, Availink fails to state a claim under the Sherman Act; for the same reasons, it fails to state a claim under either New York or California state law.

Availink's alleged claim under Cal. Bus. & Prof. Code § 17200 is also largely founded upon the same set of facts, and the purported violations of the Sherman, Cartwright, and Donnelly Acts and/or patent misuse. Counter. ¶¶ 143-145. Given Availink's failure to make out any such claims, its claim under Cal. Bus. & Prof. Code § 17200 should likewise be dismissed. *See, e.g.*, *Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 U.S. Dist. LEXIS 173607 (N.D. Cal. Jan. 21, 2011) (dismissing California unfair competition claim after dismissing Sherman Act claim, given the failure to state a violation of the Sherman Act or any other unlawful business practice); and *Patt v. Antech Diagnostics, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2019 U.S. Dist. LEXIS 213021 (C.D. Cal. July 30, 2019) (dismissing California unfair competition claim because the plaintiff failed to adequately assert predicate violations of the federal Sherman Act and Clayton Act, as well as analogous portions of California's Cartwright Act).

## C.   AVAILINK FAILS TO STATE A CLAIM FOR CANCELLATION OF THE HDMI TRADEMARKS.

Likewise, in Count II of its Counterclaims, Availink fails to state a claim for cancellation of the HDMI Trademarks "on the grounds that the marks they cover are generic and do not function as trademarks". Count. ¶ 130. Under the Lanham Act, "[t]he party seeking cancellation must prove two elements: '(1) that it has standing; and (2) that there are valid grounds for canceling the registration.'" *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP (SSx), 2014 U.S. Dist. LEXIS 117623, at *18 (C.D. Cal. Aug. 22, 2014), citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). Under 15 U.S.C. § 1064(3), any claim for cancellation for genericness must be supported by factual allegations, rather than merely conclusory statements. *See id.*

Given HDMI LA's ownership of the HDMI Registrations, HDMI LA is entitled to the presumption that the HDMI Trademarks are valid and not generic, and the onus is on Availink to demonstrate otherwise. *POM Wonderful LLC v. Hubbard*, No. 13-06917 RGK (JPRx), 2016 U.S. Dist. LEXIS 86970, at *17 (C.D. Cal. June 29, 2016); 15 U.S.C. § 1057(b).

Marks that are generic are those that "are not capable of receiving protection because they identify the product, rather than the product's source." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). "The question in any case alleging genericide is

1    whether a trademark has taken the 'fateful step' along the path to genericness . . .[t[he mere fact that

2    the public sometimes uses a trademark as the name for a unique product does not immediately render

3    the mark generic." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1156 (9th Cir. 2017).

4         **1.   Availink Lacks Standing to Bring a Cancellation Claim.**

5         As a threshold matter, given this Court's dismissal of Plaintiff's claims for trademark

6    infringement, and that Plaintiff has chosen not to amend its pleading at this time, Availink lacks

7    standing to bring any claim for cancellation of the HDMI Trademarks. "A party has standing and may

8    bring a petition to cancel a trademark if it 'is or will be damaged by the registration of [the] mark'",

9    and "must have standing at all stages of the litigation." *Glob. Apogee v. Sugarfina, Inc.*, No. CV 18-

10   05162-PSG-E, 2023 U.S. Dist. LEXIS 58599, at *20 (C.D. Cal. Mar. 31, 2023) (dismissing claim for

11   cancellation, finding a lack of standing because the defendants had "no mark which conflicts with, or

12   any actual or pecuniary interest in" the plaintiff's mark, and the defendants' "generic use" of the mark

13   did not create a likelihood of confusion or infringe the plaintiff's registered rights).

14        In the Counterclaims, Availink alleges, in a conclusory manner, that the continued registration

15   of the HDMI Trademarks "threaten[s] Availink's right to use the term HDMI fairly to describe its

16   goods as compatible with HDMI specifications," but such a purported harm simply does not represent

17   cognizable harm, and is insufficient to state a claim. *See Glob. Apogee*, 2023 U.S. Dist. LEXIS 58599,

18   at *20 . It is well-established that that "[c]ancellation under 15 U.S.C. § 1119 is a remedy dependent

19   on the valid challenge to a trademark", and since Plaintiff's trademark claims have been dismissed,

20   Availink's cancellation claim should be as well. *Vital Pharm. v. Phd Mktg., Inc.*, No. CV 20-6745-

21   RSWL-JC, 2021 U.S. Dist. LEXIS 253938, *14 (C.D. Cal. Mar. 3, 2021) (granting motion to dismiss

22   cancellation claim because trademark infringement claim had been dismissed, and there was no

23   independent cause of action concerning the trademark registration that the defendant sought to cancel)

24   (collecting cases).

25        **2.   Even If Availink Had Standing, It Has Failed to Properly Plead Factual Allegations
          Supporting Its Cancellation Claim.**

26

27        Further, Availink's Counterclaims are rife with conclusory, self-serving statements regarding

28

1   the purported genericness and/or invalidity of the HDMI Trademarks, none of which are to be accepted

2   as true. *See* Count. ¶¶ 15 (referring to HDMI as a "generic term" that "no longer functions as a brand"),

3   56 (referring to HDMI as a "generic term" that is allegedly "not protectable as a trademark"), and 103

4   (referring to marks as invalid and generic). Availink contends, once again without any factual support,

5   that "[o]n information and belief, third parties commonly use the term HDMI simply to refer to a

6   connector or matching input port having a specific physical configuration." Count. ¶ 109; *see also* ¶

7   133. It grasps at straws by alleging a fictious scenario that:

> [w]hen a[n] [unspecified] consumer buys a new television, for example, the [unspecified] salesperson or [unspecified] online retail site will remind them to purchase 'HMDI [sic] cables.' Television specifications on [unspecified] retailer websites include the number of 'HDMI inputs.' On information and belief, the term HDMI is often depicted by [unspecified] online retailers without a TM or R symbol denoting that it is a registered trademark.

Count. ¶ 110. Exhibit 1 then consists of "a set of screenshots from major online retailers using the

term HDMI in a generic sense." *Id.* In actuality, Exhibit 1 consists of: 1) a listing for a VIZIO television

on Walmart.com wherein it refers to "HDMI ports" and "HDMI 2.1" (*Dkt. No. 49-1*, pp. 2-9, 23-30[6]);

2) a listing for a onn. 4' HDMI Cable on Walmart.com (*id.* at pp. 10-11, 31-32); 3) a listing for a

Monoprice Ultra 8K High Speed HDMI Cable on Amazon.com (*id.* at pp. 12-17, 33-38);[7] 4) a listing

for a BENFEI HDMI to HDMI Cable on Amazon.com (*id.* at pp. 18-22, 39-43); and 5) an article on

Home Cinema Guide, entitled "HDMI Cables & Connections: All You Need to Know" (*id.* at 44-89).

While some of these usages do not contain "a TM or R symbol denoting that it [HDMI] is a registered

trademark" (Count. ¶ 110), the absence of a TM or R symbol alone does not in fact signify that a mark

is generic. *See, e.g., Axon Enter. v. Luxury Home Buyers, LLC*, No. 2:20-cv-01344-JAD-VCF, 2023

U.S. Dist. LEXIS 125043 (D. Nev. July 19, 2023) (finding that a handful of people used the Taser

name without attaching a trademark symbol did not establish that primary significance of "Taser" in

the mind of the general public refers to CEWs broadly and not the plaintiff's Taser-branded weapons);

---

[6] Each of the product listings is replicated twice on Exhibit 1.
[7] On the Monoprice listing, there is a specific "from the manufacturer" section that has a banner that denotes: "8K Ultra High Speed HDMI® Cable", which contradicts Availink's allegation that HDMI was used in a generic sense.

*Sensory Path Inc. v. Fit & Fun Playscapes LLC*, No. 3:19-CV-219-GHD-RP, 2021 U.S. Dist. LEXIS 197315, 2021 WL 4768247, at *14 (N.D. Miss. Oct. 12, 2021) ("Defendants fail to present a case in which the lack of the registered trademark symbol TM indicates that a term is generic; indeed, unregistered trademarks exist throughout society and common law"). Availink further alleges that: "[m]anufacturers of HDMI-compliant televisions and cables, for example, also use the term HDMI generically," and that Exhibit 2 consists of "screenshots from Samsung's and LG's websites using HDMI generically." In Exhibit 2, Availink has highlighted references to HDMI, such as "[n]umber of HDMI Inputs." In making these allegations, however, Availink does not mention whether any of these third parties are Adopters, which are licensed to use the HDMI Trademarks and using the same pursuant to said license, but presumptively states that all are being used "generically". In fact, earlier in the Counterclaims themselves, Availink admits that Samsung is an Adopter (Count. ¶ 35). This case is akin to *Gibson Brands, Inc.*, 2014 U.S. Dist. LEXIS 117623, at *20 wherein the Court granted the plaintiff's motion to dismiss the defendant's counterclaims, noting:

> The Counterclaims, however, all fail to plausibly state a claim for genericness. In each of the counterclaims, Defendants merely assert: 'For decades, countless other manufacturers have manufactured and sold in the United States electric guitars incorporating a body shape identical or substantially similar to [the disputed guitar body design].' . . .From this assertion, Defendant then concludes, '[a]s a result of the foregoing, [the disputed guitar body design] is a generic electric guitar shape' and 'does not function as a source identifier.' . . .Defendant does not, however, name any of the 'countless other manufacturers' who have manufactured or sold guitars with 'identical or substantially similar' body designs. As Plaintiff points out, these 'other manufacturers' could be Gibson licensees or subsidiaries, which would defeat Defendant's assertion that the marks have attained 'generic' status. Nor does Defendant specify the time period or 'decades' during which the purported similar guitars were 'manufactured and sold.' This information is necessary to state a plausible claim for a generic mark because Defendant must show that the allegedly similar and/or identical guitars were being sold at the date when Defendant 'entered the market with the disputed mark or term.'

(internal citation omitted). In sum, the Counterclaims for trademark cancellation are based solely on conclusory statements rather than factual allegations and, as such, Count II should be dismissed. *See also Entrepreneur Media, Inc. v. Dermer*, No. SACV 18-1562 JVS (KESx), 2019 U.S. Dist. LEXIS 164858, at *16 (C.D. Cal. July 22, 2019) (granting motion to dismiss cancellation counterclaim,

finding that the defendants failed to plausibly allege how the "mark is generic beyond the bare-bones, conclusory allegation that the mark is generic").

### D.   AVAILINK FAILS TO STATE A CLAIM UNDER NEW YORK GENERAL BUSINESS LAW § 349.

Availink's claim under N.Y. Gen. Bus. L. § 349 (Count VI) must also be dismissed. Under N.Y. Gen. Bus. L. § 349(a), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* [New York] are hereby declared unlawful." (emphasis added). "To establish a *prima facie* case for a claim of deceptive trade practices under NY GBL § 349, a claimant must allege that: '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F.Supp.2d 269, 273 (S.D.N.Y. 2003) (internal citations omitted). While corporate competitors may be able to bring such claims, the "gravamen" of any such claim must be "consumer injury or harm to the public interest" in New York. *Id.* (internal citations omitted).

In its Counterclaims, Availink's sole reference to New York is that the Adopter Agreement is governed by New York law. Counter. ¶¶ 148, 153. The Counterclaims are otherwise devoid of any allegations relating to *conduct* in New York, or harm to consumers in New York. In fact, Availink only alleges harm to its own business and property, not public harm. *Id.* at ¶ 155. Moreover, the sole basis for Availink's purported claim is an alleged representation by HDMI LA that "the HDMI license is necessary for manufacturers who produce components compatible only with HDMI 1.0, who do not use the HDMI trademark, and whose customers do not use the HDMI trademark, without disclosing that some or all of the patents necessary for HDMI 1.0 have expired." *Id.* ¶¶ 145, 154. Even assuming the truth of that statement, Availink fails to allege any cognizable acts affecting the public at large. *See, e.g., Gucci Am., Inc.*, 277 F. Supp. 2d at 273 (collecting cases dismissing § 349 claims that were premised upon disputes between competitors where a lack of consumer harm was alleged, and dismissing claim because all that was alleged was "harm to a business as opposed to the public at large").

### E. AVAILINK'S CLAIM FOR DECLARATORY RELIEF IS REDUNDANT AND SHOULD BE DISMISSED.

Finally, Availink's claim for declaratory relief (Count VII) merely recites issues that are already before this Court, and as such, they should be dismissed. *See, e.g., UMG Recordings, Inc. v. DIVX, Inc.*, No. CV 07-06835 AHM (AJWx), 2008 U.S. Dist. LEXIS 128844 (C.D. Cal. Aug. 22, 2008) (dismissing defendant's counterclaim for declaratory relief where it did not allege any issue that would not already be litigated in the case in chief or the defendant's affirmative defenses thereto, and collecting cases where redundant or mirror image counterclaims have been dismissed); and *Atl. Recording Corp. v. Serrano*, No. 07-CV-1824 W (JMA), 2007 U.S. Dist. LEXIS 95203, at *12 (S.D. Cal. Dec. 27, 2007) (dismissing counterclaims as redundant and unnecessary, given that they merely restated issues before the court as part of the plaintiff's affirmative case).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Availink's Counterclaims should be dismissed in their entirety.

**CONSTANTINE CANNON LLP**

BY: *S/ Seth D. Greenstein*
Seth D. Greenstein
sgreenstein@constantinecannon.com
1001 Pennsylvania Ave., NW
1300N
Washington, D.C. 20004
Telephone: (202) 204-3500
Facsimile: (202) 204-3501
*Pro Hac Vice Application Pending*

BY: *S/ Ankur Kapoor*
Ankur Kapoor
akapoor@constantinecannon.com
335 Madison Avenue, Fl. 9
New York, NY 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701
*Pro Hac Vice Application Forthcoming*

*Attorneys for HDMI Licensing Administrator, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EPSTEIN DRANGEL LLP**

BY: *S/ Kerry B. Brownlee*
Kerry B. Brownlee (*Pro Hac Vice*)
kbrownlee@ipcounselors.com
Jason M. Drangel (*Pro Hac Vice*)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

BY: *S/ Peter J. Farnese*
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

*Attorneys for HDMI Licensing
Administrator, Inc*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify the on October 23, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

DATED: October 23, 2023          By:     *S/ Kerry B. Brownlee*
                                         Kerry B. Brownlee (*Pro Hac Vice*)
                                         Epstein Drangel LLP

                                         *Attorneys for Plaintiff*
                                         *HDMI Licensing Administrator, Inc.*