**EPSTEIN DRANGEL LLP**
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

Kerry B. Brownlee (Pro Hac Vice)
kbrownlee@ipcounselors.com
Jason M. Drangel (Pro Hac Vice)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*HDMI Licensing Administrator, Inc.*

**CONSTANTINE CANNON LLP**
Seth D. Greenstein (Pro Hac Vice)
sgreenstein@constantinecannon.com
1001 Pennsylvania Ave., NW, 1300 N
Washington, D.C. 20004
Telephone: (202) 204-3500
Facsimile: (202) 204-3501

Ankur Kapoor (Pro Hac Vice)
akapoor@constantinecannon.com
335 Madison Avenue, Fl. 9
New York, NY 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>AVAILINK INC.,<br><br>Defendant and Counterclaim Plaintiff. | Case No. 4:22-cv-6947-HSG<br><br>**REPLY MEMORANDUM IN SUPPORT OF HDMI LICENSING ADMINSTRATOR, INC.'S MOTION TO DISMISS AVAILINK INC.'S COUNTERCLAIMS**<br><br>Hearing Date: January 18, 2024<br>Time: 2:00 PM<br>Place: Courtroom 2, 4th Floor |

i

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................2

  A.  Availink Fails to Plausibly Allege Any Violations of Federal Antitrust Laws. ...................2

    1.  The Adopter Agreement Is a Lawful License of a Bundle of IP Rights, Including Non-Patent Rights. ...................................................................................................2

      a.  Availink Fails to Plausibly Allege the Adopter Agreement Is Anticompetitive. ........2

      b.  Availink Fails to Refute That Direct Licensing Is Freely Available. .........................3

    2.  Availink's "Tying" Allegation Is Legally Baseless and Implausible............................4

      a.  The HDMI Specification and HDMI Trademarks Are Not Separate Products. ..........4

      b.  Adopters Are Not "Forced" to Use the HDMI Trademarks. .....................................5

    3.  The Adopter Agreement Is Not a Patent Pool License, and Collecting Royalties Is Permissible for the Use of the HDMI Specification and the Unexpired Patent Claims. ..........5

    4.  Availink Lacks Antitrust Standing to Challenge the Non-Assertion Provision of the Adopter Agreement.........................................................................................6

    5.  Availink Has Not Alleged Any Anticompetitive Effect.................................................8

  B.  Availink's State Law Claims Also Fail. ........................................................................9

    1.  California Law Claims..............................................................................................10

    2.  New York Law Claims .............................................................................................10

  C.  Availink Fails to State a Claim for Cancellation of the HDMI Trademarks. .....................11

    1.  Availink Lacks Standing to Bring a Cancellation Claim. ............................................11

    2.  Even If Availink Has Standing, It Has Failed to Properly Plead Factual Allegations Supporting Its Cancellation Claim.............................................................................13

  D.  Availink's Claim for Declaratory Relief Must Be Dismissed. .........................................14

III.   CONCLUSION ........................................................................................................................14

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

# TABLE OF AUTHORITIES

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595 (9th Cir. 2014) .......... 11

*Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 633 F. Supp. 201 (N.D. Ill. 1986).... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 8

*Beckman Instruments, Inc. v. Tech. Dev. Corp.*, 433 F.2d 55 (7th Cir. 1970)................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 8

*Boggild v. Kenner Prods.*, 776 F.2d 1315 (6th Cir. 1985) ............................................................. 6

*Broad. Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357 (D. Del. 1980) .......................................... 3

*Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1 (1979) ................................................................ 2

*Buffalo Broad. Co. v. Am. Soc. of Composers, Authors & Publishers*, 744 F.2d 917 (2d Cir. 1984) .. 3

*Chromalloy Am. Corp. v. Fischmann*, 716 F.2d 683 (9th Cir. 1983) .................................................. 6

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962)................................... 9

*Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) ........................................... 10

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023)............................................................ 2

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ................................................ 7

*Glob. Apogee v. Sugarfina, Inc.*, No. CV 18-05162-PSG-E, 2023 U.S. Dist. LEXIS 58599 (C.D. Cal. Mar. 31, 2023)........................................................................................................................ 13

*Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006) ............................................. 5

*In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2018 U.S. Dist. LEXIS 15015 (N.D. Cal. Jan. 30, 2018) ............................................................................................................................. 11

*In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987 (N.D. Cal. 2010) ............................................ 7

*Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) ..................................................... 4

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015) ............................................................ 6

*Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348 (9th Cir. 1982)............................................ 5

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015)...................................................... 7

*Nero AG v. MPEG LA, L.L.C.*, No. 10-cv-3672-MRP-RZ, 2010 WL 4366448 (C.D. Cal. Sep. 14, 2010) ...................................................................................................................................... 3

*Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365(11th Cir. 1983) ................................................ 6

*Postal Instant Press v. Clark*, 741 F.2d 256, 223 USPQ 281 (9th Cir. 1984) ................................. 12

*Princo Corp. v. Int'l Trade Com'n*, 616 F.3d 1318 (Fed. Cir. 2010) ................................. 8

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26 (1998) ........................................ 10

*Radio Music License Comm., Inc. v. SESAC, Inc.*, 2 F. Supp. 3d 487 (E.D. Pa. 2014) ....................... 3

*Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS, 2021 U.S. Dist. LEXIS 227433(C.D. Cal. Oct. 3, 2021) ................................................................................ 14

*Samsung Elecs. Co. v. Panasonic Corp.*, No. C 10-03098 JSW, 2015 WL 10890655 (N.D. Cal. Sep. 30, 2015) ................................................................................ 4, 7

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, No. 18cv967-GPC(MSB), 2020 U.S. Dist. LEXIS 179341 (S.D. Cal. 2020) .......................................................... 11, 12

*St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309 (9th Cir. 1977) ................................. 6

*Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 (VB), 2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011) ................................................................................ 11

**Other Authorities**

Eric Hovenkamp & Herbert J. Hovenkamp, "Patent Pools and Related Technology Sharing" (2017), https://scholarship.law.upenn.edu/faculty_scholarship/1766 .......................................... 8

HDMI Forum, "FAQ" https://hdmiforum.org/about/faq/ ................................................... 9

Letter from Joel I. Klein, Assistant Att'y Gen., U.S. Dep't of Justice, Business Review Letter of DVD-ROM and DVD-Video, at 15 (June 10, 1999), available at https://www.justice.gov/sites/default/files/atr/legacy/2012/08/01/2485.pdf ........................ 7

VIA Licensing Alliance, https://www.via-la.com/licensing-2/, last visited Dec. 27, 2023 ................. 8

1

## I.    INTRODUCTION

This action began because Availink breached its license agreement with HDMI LA by refusing to pay for its use of the HDMI Specification and related rights.[1] Rather than remedy its breach, and despite having benefitted from licensing the HDMI Specification for years, Availink filed baseless Counterclaims contending in a conclusory fashion that the Adopter Agreement violated antitrust laws and licensed invalid trademarks (which Availink claims it never used). The Counterclaims are meritless, which is why HDMI LA promptly moved to dismiss them in their entirety. In Availink's Opposition (*Dkt. No. 79*; the "Opposition" or "Opp."), Availink fails to defend its failure to allege any facts to support its allegations and only reinforces that Availink's Counterclaims are not plausible.

As explained in HDMI LA's Motion and as further detailed herein, the Adopter Agreement is a lawful, procompetitive licensing arrangement through which Adopters obtain the rights to access and make products compliant with the trade-secret HDMI Specification. Adopters also receive the rights to practice all of the Founders' appurtenant necessary patent, copyright, and trademark rights— all in a single convenient license. The Adopter Agreement also makes clear each Founder's commitment to grant separate licenses to all these rights, which, under established law, means the Adopter Agreement does not restrain trade.

Availink's arguments to the contrary cannot avoid dismissal. Availink complains separate licensing wasn't "realistically available," yet admits it never attempted the direct licensing procedure explicitly provided in the Adopter Agreement. Availink's claim that the Adopter Agreement is a patent pool is facially refuted by the Adopter Agreement. Even if it were a pool, collecting royalties would still be permissible because—as Availink admits—the "pool" includes unexpired patents. Availink has no standing to assert many of its complaints about the Adopter Agreement, and has neither alleged any harm to competition nor stated a claim against the HDMI Trademarks. Likewise, its state law claims, under California and New York statutes, fail for the same reasons its federal-law claims fail. Availink's Opposition does not refute these fundamental points, and its Counterclaims should

---

[1] All capitalized terms used in this Reply Brief, unless otherwise indicated, should be understood as defined in HDMI LA's Motion to Dismiss Availink Inc.'s Counterclaims Pursuant to Rule 12(b)(6) (*Dkt. No. 72*) (the "Motion" or "Mot.").

therefore be dismissed in their entirety.

## II.    ARGUMENT

**A.   AVAILINK FAILS TO PLAUSIBLY ALLEGE ANY VIOLATIONS OF FEDERAL ANTITRUST LAWS.**

### 1.   The Adopter Agreement Is a Lawful License of a Bundle of IP Rights, Including Non-Patent Rights.

#### a.   *Availink Fails to Plausibly Allege the Adopter Agreement Is Anticompetitive.*

A fundamental problem gutting Availink's entire Opposition is that it treats the Adopter Agreement as a patent pool license—a characterization flatly refuted by the plain language of that agreement. The title, the opening paragraph, and the terms of the Adopter Agreement demonstrate that the primary intellectual property ("IP") asset being licensed thereunder by the Founders is the right to receive, and to make Licensed Products that use and comply with, the confidential trade secret HDMI Specification. Complaint Ex. B (Adopter Agreement) p.1. To the extent practicing the HDMI Specification by making Licensed Products infringes Necessary Claims of the Founders' patents or any copyrights in the HDMI Specification, those rights also are expressly granted under the Adopter Agreement. Count. ¶ 3; Complaint Ex. B p.1 and §§ 2, 4. Additionally, the Adopter Agreement grants the right to use the HDMI Trademarks on Licensed Products. Such an arrangement is entirely permissible. Package licenses to IP rights have procompetitive benefits, as recognized by the United States Supreme Court in *BMI* and its progeny. *See Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 20-24 (1979). Combining all potentially necessary IP rights into a single license can solve marketplace needs, lower administrative costs for licensees *and* licensors, and create a new product that is "greater than the sum of its parts." *Id.* Moreover, such arrangements enable compensation for intellectual property rights, a "cognizable procompetitive rationale" in the Ninth Circuit. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 986 (9th Cir. 2023). Accordingly, blanket licenses to IP rights are evaluated under the rule of reason, which requires courts to weigh any anticompetitive effects against any procompetitive effects of a challenged practice. *BMI*, 441 U.S. at 24. Availink never addresses, much less refutes, these procompetitive benefits of licensing both the HDMI Specification and all the Founders' other necessary intellectual property rights in a unitary Adopter Agreement.

### b.   Availink Fails to Refute That Direct Licensing Is Freely Available.

Availink cannot plausibly allege that the Adopter Agreement restrains trade because all Adopters always have the option to license the specific rights they require directly from each Founder. "[T]he opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire individual rights is realistically available." *Buffalo Broad. Co. v. Am. Soc. of Composers, Authors & Publishers*, 744 F.2d 917, 925 (2d Cir. 1984). Here, the Adopter Agreement commits that the Founders are "willing to provide separate patent licenses to any Necessary Claims" and to the HDMI Specification and HDMI Trademarks on fair, reasonable, and non-discriminatory terms. Complaint Ex. B § 9.22.1-9.22.2. The Adopter Agreement further specifies that anyone seeking a separate license for these rights "should contact the applicable Founder in writing." *Id.* Availink admits it never asked *any* of the Founders for a direct license. *See* Opp. at 14-15; Count. ¶¶ 71-74. That alone dooms its Section 1 claim. *See Nero AG v. MPEG LA, L.L.C.*, No. 10-cv-3672-MRP-RZ, 2010 WL 4366448, at *6–7 (C.D. Cal. Sep. 14, 2010).

Availink likewise offers no well-pleaded facts to support its contention that individual licensing is "illusory." Opp. at 12-14. To the contrary, to obtain by direct licensing all the rights it needed, all Availink had to do was to ask HDMI LA for contact information for the seven Founder companies listed by name in the Adopter Agreement and on the HDMI LA website, and email them. Count. ¶ 19; Complaint Ex. B ¶¶ 1.10, 9.22. Availink concedes it never even tried. Such minimal effort cannot possibly render the availability of separate licensing "illusory."

The cases Availink cites are easily distinguishable. They involved blanket licenses to many hundreds of thousands of songs by tens of thousands of songwriters. *See Radio Music License Comm., Inc. v. SESAC, Inc.*, 2 F. Supp. 3d 487, 490 (E.D. Pa. 2014) (blanket licenses like SESAC's "offer consumers the opportunity to purchase the rights to thousands of musical works"); *Broad. Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357, 367 (D. Del. 1980) ("thousands of users, thousands of copyright owners, and millions of compositions") (quoting *BMI*, 441 U.S. at 1562). Even BMI, ASCAP, and SESAC did not know with certainty every artist covered by their blanket licenses. *See, e.g.*, *SESAC*, 2 F. Supp. 3d at 492 ("Although SESAC's website contains a list of its works, it disclaims 'SESAC, Inc. makes no representations and/or warranties with respect to the accuracy or completeness of the

information,' and plaintiff alleges that the database 'is updated regularly and may change on a daily basis.'"). In *Samsung Elecs. Co. v. Panasonic Corp.*, No. C 10-03098 JSW, 2015 WL 10890655 (N.D. Cal. Sep. 30, 2015), only some, but not all, rights granted by the pool were available by direct licensing; and the plaintiff in *Samsung Elecs.* alleged that "each member of the [] Group represented that it lacks the authority to negotiate individually". 2015 WL 10890655, at *5. Here, every Founder agreed to directly license *all* the rights available through the Adopter Agreement. Complaint Ex. B ¶ 9.22.

Moreover, nothing HDMI LA did "obscured" individual licensing. The whole point of the Adopter Agreement is to efficiently grant Adopters *all* rights owned by the Founders that would necessarily be infringed by practicing the HDMI Specification—including a license to *every* Necessary Claim, whether identified on a patent list or not. More detailed information, if desired, was always available from HDMI LA and the Founders—information Availink never sought.

### 2.  Availink's "Tying" Allegation Is Legally Baseless and Implausible.

Availink's argument that HDMI LA "ties" licenses to the HDMI Specification and HDMI Trademarks fails.  First, the allegedly "tied" and "tying" rights are not separate products. Second, Availink cannot allege any coercion by HDMI LA to take the "tied" rights.

### a.   The HDMI Specification and HDMI Trademarks Are Not Separate Products.

Availink's "tying" allegation fails because the HDMI Specification and HDMI Trademarks— the allegedly "tying" and "tied" rights, respectively—are not separate products. An antitrust "tying" claim requires a showing that the "tying" and "tied" product are, in fact, two separate products. *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 19 (1984). "[T]he answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." *Id.* For example, tying is not present when "the arrangement d[oes] not link two distinct markets for products that were distinguishable in the eyes of buyers." *Id.* at 19-20.

As the Ninth Circuit has held, "the tie-in doctrine can have no application where the trademark serves only to identify the alleged tied product. *The desirability of the trademark and the quality of*

*the product it represents are so inextricably interrelated in the mind of the consumer as to preclude any finding that the trademark is a separate item for tie-in purposes.*" *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1354 (9th Cir. 1982) (emphasis added). So too here. The HDMI Trademarks identify to the public that Licensed Products bearing the HDMI Trademarks use the HDMI Specification, and have passed the requisite compliance testing. The goodwill in the HDMI Trademarks exists primarily because of the success of the technology defined in the HDMI Specification. Availink's tying allegation therefore fails as a matter of law.

### b.   *Adopters Are Not "Forced" to Use the HDMI Trademarks.*

Availink also cannot allege "coercion" because Adopters may make and sell Licensed Products that practice the HDMI Specification without using the HDMI Trademarks. As the Supreme Court has held, "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product *to force the buyer into the purchase of a tied product* that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 34-35 (2006) (emphasis added). Here, Adopters are not forced to use the HDMI Trademarks. Adopters can license the HDMI Specification, not use the HDMI Trademarks, and still perfectly comply with the Adopter Agreement. Availink concedes it did not use the HDMI Trademarks, thus proving that Adopters are not "forced" to use them. Count. ¶ 53.

Rather than coercion, the Adopter Agreement offers an economic incentive—a discounted royalty rate—to "encourage Adopters to make use of the Adopted Trademarks." Complaint Ex. B, Attachment ("Att.") B. HDMI LA reduces the license fee as consideration for Adopters' promotion of the HDMI ecosystem, which increases consumer demand for the HDMI technology. Accordingly, offering separate licenses without the HDMI Trademarks would not lower costs; *using* the licensed HDMI Trademarks is what lowers costs. Availink's implicit argument that discounting constitutes coercion defies both common sense and the purposes of antitrust law.

### 3.   The Adopter Agreement Is Not a Patent Pool License, and Collecting Royalties Is Permissible for the Use of the HDMI Specification and the Unexpired Patent Claims.

Under the plain language of the Adopter Agreement, the per-unit royalty reflects the

marketplace value of the use of the HDMI Specification to make Licensed Products, and all appurtenant rights provided under the Adopter Agreement. Even assuming, counterfactually, that the Adopter Agreement was a patent pool license, HDMI LA would still be perfectly within its rights to collect royalties because the "pool" contains unexpired patents.

Even where some pool patents expire, licensors of a patent pool may lawfully continue collecting royalties "until the latest-running patent covered in the parties' agreement expires." *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 454 (2015); *see also Beckman Instruments, Inc. v. Tech. Dev. Corp.*, 433 F.2d 55, 61 (7th Cir. 1970) ("a package license agreement, voluntarily entered into, which requires the payment of royalties beyond the expiration of some, but not all, of the licensed patents is valid."). Here, Availink acknowledges that the Adopter Agreement continues to license unexpired patents. Count. ¶¶ 61-62.

Availink's argument relies solely on cases where *no* valid patents remained. *See Boggild v. Kenner Prods.*, 776 F.2d 1315 (6th Cir. 1985) (rejecting agreement to pay royalties on expired and never-issued patents); *Chromalloy Am. Corp. v. Fischmann*, 716 F.2d 683 (9th Cir. 1983) (expiration of a single patent); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365 (11th Cir. 1983) (full royalty obligation unenforceable after last patent expired). In *St. Regis Paper Co. v. Royal Indus.*, the relevant license was for *one patent* which expired, and for related know-how that "was not essential to the manufacture" of the patented plastic tie strips. 552 F.2d 309, 315 (9th Cir. 1977). Here, by contrast, the focus of the license is the HDMI Specification, without which an Adopter cannot make Licensed Products on an ongoing basis, and a separate license to numerous unexpired patents, copyrights, and trademarks. Nothing in Availink's arguments refutes the central legal principle that HDMI LA may collect per-unit royalties upon unexpired patents.

### 4. Availink Lacks Antitrust Standing to Challenge the Non-Assertion Provision of the Adopter Agreement.

Availink challenges the non-assertion provision in Section 3 of the Adopter Agreement, which applies to Adopters with "Necessary Claims that they may now or in the future own or control . . . ." Count., Ex. B § 3. But Availink has not alleged it owns any patents with Necessary Claims, and admits that it "did not have patents directly affected by the grantback requirement." Opp. at 27. That should

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

1   be the end of it: Availink has no antitrust standing to challenge the non-assertion provision, and cannot

2   have suffered any antitrust injury attributable to a contract provision that does not apply to it.

3          Availink's claim that it suffered antitrust injury simply as "a consumer in the market for HDMI

4   technology" is conclusory, speculative, and insufficient. *See In re Webkinz Antitrust Litig.*, 695 F.

5   Supp. 2d 987, 997 (N.D. Cal. 2010) ("Conclusory allegations of anticompetitive effect are insufficient

6   without supporting facts as to how competition in the [alleged] markets has actually been reduced or

7   harmed."). Further, Availink's alleged "injury" is inconsistent with its own "supracompetitive pricing"

8   allegations. If any Adopter could assert its patents against other Adopters, the costs of practicing the

9   HDMI Specification would increase to Adopters' detriment, as would the cost of Licensed Products

10  to consumers' detriment. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1043 (9th Cir.

11  2015) ("patent pools generally license at lower rates than might be achieved in a bilateral agreement,

12  because a company receives value from pool membership that goes beyond royalty payments —

13  principally, grant-back licenses and promotion of the standard"); Letter from Joel I. Klein, Assistant

14  Att'y Gen., U.S. Dep't of Justice, Business Review Letter of DVD-ROM and DVD-Video, at 15 (June

15  10, 1999), *available at* https://www.justice.gov/sites/default/files/atr/legacy/2012/08/01/2485.pdf

16  ("Further, by bringing other 'essential' patents into the portfolio, the requirement lowers licensees'

17  costs in assembling the patent rights they need to comply with the Standard Specifications.");

18  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (noting that "[p]atent hold-

19  up" can result in patent holders "demand[ing] excessive royalties").

20         Availink's case law again is distinguishable. In *Samsung Elecs.*, the plaintiff plausibly alleged

21  that the license included *un*necessary patent claims (which led to supracompetitive pricing and

22  constraints on innovation) and did not provide direct licensing of all rights. *Id.*, 2015 WL 10890655

23  at **5, 7. None of these allegations applies to the Adopter Agreement here.

24         Separately, *Samsung Elecs.* never addressed whether a licensee with no necessary patents had

25  antitrust standing to challenge an "unequal" grantback provision. *Id.*, 2015 WL 10890655, at *7.

26  Regardless, the Adopter Agreement's "Non-Assertion" clause applies symmetrically to all Adopters,

27  including the Founders, and the Adopter Agreement allows Adopters to receive a share of royalties

28  for their Necessary Claims. Complaint Ex. B, §§ 3, 9.23. Availink therefore cannot allege either

antitrust standing or injury from contract provisions that—by Availink's own admission—could only have benefitted Availink and could not have caused it any injury.

### 5.   Availink Has Not Alleged Any Anticompetitive Effect.

HDMI LA's Motion explained why Availink did not adequately plead any anticompetitive effect from the Adopter Agreement. Availink's Opposition fails to establish otherwise.

Availink makes conclusory assertions of "supracompetitive prices," but has not alleged anything to suggest that the licensing rate under the Adopter Agreement would be higher than license rates for its individual components. For more than 20 years, Adopter Agreement royalty rates under the Adopter Agreement have neither increased nor decreased with the number of Necessary Claims licensed. Royalties reflect the market value for the right to create Licensed Products, which is a common licensing practice.[2] *See Princo Corp. v. Int'l Trade Com'n*, 616 F.3d 1318, 1323 (Fed. Cir. 2010) (noting it is not anticompetitive to charge a uniform fee for the right to use any of the patents in a pool at the licensee's option). In this sense, the HDMI Specification's bundle of rights, as scholars have observed of patent pools, resembles an all-you-can-eat restaurant buffet: "Each consumer takes a subset of the available options, and the price will reflect the average cost of such subsets—not the cost of providing every food option to every consumer. . . . In the context of patent pooling, this suggests that prices do not reflect the value of all pooled patents, but rather the value of a representative application, most of which rely on only a subset of the patents."[3] *Cf. Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1203–04 (9th Cir. 2012) (no injury to competition from "packaging low- and high-demand" cable television channels).

Availink's other allegations of anticompetitive effect are conclusory and entitled to no weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *First*, Availink's claim that HDMI LA "compels royalties for non-infringing products," Opp. at 10, is not true. Royalties apply to every Licensed Product which, by definition, practices a portion of the

---

[2] *See, e.g.*, VIA Licensing Alliance, which explains in the "FAQ" for each of the eight licensed Video patent pools (and for other non-video technologies) that "royalties payable under the License do not increase or decrease because of an increase or decrease in the number of … Essential Patents . . . ."). https://www.via-la.com/licensing-2/, last visited Dec. 27, 2023.
[3] Eric Hovenkamp & Herbert J. Hovenkamp, "Patent Pools and Related Technology Sharing" at 9 (2017), https://scholarship.law.upenn.edu/faculty_scholarship/1766.

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

HDMI Specification—and only those products. *See* Complaint Ex. B. §§ 1.6. 1.11. 1.14. Availink lacks standing to complain about licensing terms for HDMI 2.0, *e.g.*, Count. ¶ 80, since Availink contends it used only the HDMI 1.x Specification, *id.* ¶ 62. Nevertheless, HDMI 2.0 was developed by the *HDMI Forum*, not the Founders; adopting HDMI 2.0 is completely voluntary; and no annual fee or royalty is required for HDMI 2.0.[4] *Second*, Availink falsely claims HDMI LA "compels royalties for . . . invalid trademarks." *Id.* Registered trademarks are presumptively valid, and Availink has failed to allege facts to rebut that presumption. 15 U.S.C. § 1115(a); *see infra* Section VII. *Third*, Availink's claim that HDMI LA "compels royalties for . . . products that do not use the trademarks" is demonstrably false. *Id.* The Adopter Agreement requires a per-unit payment for all Licensed Products, regardless of whether they use the HDMI Trademarks. Complaint Ex. B, Att. B. Using the HDMI Trademarks, or ensuring a downstream user incorporates the HDMI Trademarks, results in a discounted royalty. *Id.* What Availink proposes—an Availink-specific exemption from this fee requirement—would be unfair to Adopters who use (or ensure the use of) the HDMI Trademarks, and to the Founders who would be denied consideration from either the use of the HDMI Trademarks or the non-discounted royalty.

Availink cannot remedy the deficiencies in its allegations by pointing the Court to the "cumulative effect of the alleged conduct," citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962). Availink has not put forward *any* allegations of anticompetitive effect that satisfy *Twombly*'s pleading standard—its arguments are just as weak in combination as they are individually. "[Z]ero plus zero plus zero still equals zero." *Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 633 F. Supp. 201, 216 (N.D. Ill. 1986).

**B.    AVAILINK'S STATE LAW CLAIMS ALSO FAIL.**

In Availink's Opposition, Availink erroneously contends its state law claims could survive even if its federal claims fail. In the end, Availink's claims all fail for the same fundamental reasons.

---

[4] *See* HDMI Forum, "FAQ" https://hdmiforum.org/about/faq/, noting that Adopters who sign an Addendum to the Adopter Agreement can use the HDMI 2.x Specification with no additional fee or royalty.

### 1. California Law Claims

*Cartwright Act.* Availink's vague gestures to the Cartwright Act's "broader range" are insufficient. *See* Opp. at 19. Availink must identify "specific and material differences" from the Sherman Act for its claim to survive. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1048 (N.D. Cal. 2021) (rejecting "conclusory statements about the broader 'reach' of the Cartwright Act relative to the Sherman Act"). Moreover, Cartwright Act claims require allegations of damage resulting from the wrongful acts of the alleged conspiracy. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 47 (1998). Availink makes zero non-conclusory allegations of such damage.

*Section 17200.* Availink has not pled any "unlawful, unfair or fraudulent business act or practice" under California Business & Professions Code § 17200. First, the Adopter Agreement is not "unlawful." It is a lawful license to practice the HDMI Specification, bundled with licenses to unexpired patents and other IP rights; it is neither patent misuse nor an antitrust violation. Second, Availink's contention that the Adopter Agreement is "unfair" relies on the same conclusory allegations of anticompetitive effect, which are insufficient under *Twombly*.

Lastly, Availink cannot claim that HDMI LA was "fraudulent" by "representing that the HDMI license is necessary for manufacturers who produce components compatible only with HDMI 1.0, who do not use the HDMI trademark, and whose customers do not use the HDMI trademark, without disclosing that some or all of the patents necessary for HDMI 1.0 have expired." Opp. at 21-22. The requirement to sign an Adopter Agreement to practice the HDMI Specification is the same for all Adopters. *See* Complaint Ex. B (noting the Founders "are offering a non-discriminatory license to implement HDMI" for "parties wishing to adopt the HDMI Specification"). Availink essentially claims HDMI LA "fraudulently" did not disclose an exception to this requirement, when no such exception exists. That is not and cannot be fraud.

### 2. New York Law Claims

*Donnelly Act.* Availink admits that its Donnelly Act allegations are the same as those for its Sherman Act claim, and it offers no separate support for its Donnelly Act claim. Opp. at 22. Thus, the claim should fail for the same reasons the Sherman Act claim fails.

*Section 349.* Claims under New York General Business Law § 349 require harm to consumers

in New York, which Availink has not alleged. Availink waves vaguely to its allegations concerning a "worldwide market," but the only sentence it cites about consumer harm is purely conclusory, and does not even mention New York: "[a]s a proximate result of HDMI LA's deceptive acts, consumers have been harmed by the restriction of competition in the markets for HDMI-compliant components, HDMI SoC ICs, and HDMI- compliant end-user products." Count. ¶ 156. This is the exact type of insufficient allegation that should be disregarded under *Twombly* and *Iqbal*. It is well-settled that "Section 349 does not protect consumers from out-of-state deceptive business practices", but instead requires that specific transactions and harm occur in New York. *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2018 U.S. Dist. LEXIS 15015, at *14 (N.D. Cal. Jan. 30, 2018). Since the Counterclaims are entirely devoid of any factual allegations pertaining to conduct or harm specific to New York, Count VI must be dismissed. *See also, e.g., Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 (VB), 2011 U.S. Dist. LEXIS 153011 (S.D.N.Y. Dec. 16, 2011).

## C.   AVAILINK FAILS TO STATE A CLAIM FOR CANCELLATION OF THE HDMI TRADEMARKS.

### 1.   Availink Lacks Standing to Bring a Cancellation Claim.

In the Opposition, Availink asserts—in a conclusory, self-serving fashion, without an iota of legal support—that "[e]ven after the dismissal of HDMI LA's trademark claims, a registered trademark is still 'involved' in this case." Opp. at 22. However, Availink conveniently overlooks that "'[i]nvolving' [as to § 1119] cannot mean the mere presence of a registered trademark, but must be read as involving the right to use the mark and thus the right to maintain the registration." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, No. 18cv967-GPC(MSB), 2020 U.S. Dist. LEXIS 179341, at *18 (S.D. Cal. Sept. 20, 2020) (internal citation omitted). "Because the plain language of § 1119 states that cancellation is available in 'any action involving a registered mark', cancellation is not available as an independent cause of action and 'may only be sought if there is already an ongoing action that involves a registered mark.'" *Id.* at *19-20 (internal citations omitted). This narrow interpretation of 15 U.S.C. § 1119 "helps preserve the use of actions before the USPTO Trademark Board as the primary vehicle for cancellation." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 599 (9th Cir. 2014).

In an attempt to escape this, Availink characterizes Plaintiff's breach of contract claim as a "breach of a trademark license agreement." Opp. at 22. Contrary to what Availink contends in the trademark portion of its argument,[5] the Adopter Agreement is much more than a trademark license— it is a license to a bundle of intellectual property rights. *See supra* at 2. Regardless, the primary acts giving rise to Plaintiff's breach of contract claim are not trademark related at all, but instead, involve Defendant's failure to pay annual fees and report royalties. *See, e.g.*, Complaint, ¶¶ 23-27, 45. At this juncture, Plaintiff's sole claim is for breach of contract, and the mere fact that the Adopter Agreement touches upon Plaintiff's HDMI Trademarks does not convert this action into one that involves a registered mark within the meaning of 15 U.S.C. § 1119. As such, Availink lacks standing on that basis alone. *See, e.g., San Diego Cty. Credit Union*, 2020 U.S. Dist. LEXIS 179341, at *25 (noting that while the "independent action involving § 1119 need not concern an infringement action regarding a registered mark", there must be a close nexus and overlap in factual and legal issues between the underlying claim and the cancellation counterclaim); *see also Postal Instant Press v. Clark*, 741 F.2d 256, 257, 223 USPQ 281, 281 (9th Cir. 1984) (finding, in a dispute over a franchise agreement involving a trade name that "the mere existence of the protected trade name and attendant symbol herein does not provide a basis for federal jurisdiction").

Further, Availink's allegations that it purportedly will be harmed by the continued registration of the HDMI Trademarks are conclusory at best. First, ironically, Availink claims that "[s]ince Availink makes chips that are HDMI compliant, it has a competitive need to be able to refer to that generic standard." Opp. at 23. That attestation stands at odds with Availink's admission that "it does not use the trademark." Counterclaims, ¶ 72. In fact, in its motion to dismiss (*Dkt. No. 30*), Defendant stated that "Availink never used any HDMI marks on its goods and removed all references to any HDMI marks from its website and marketing materials upon being terminated from the Adopter Agreement [in 2019]" (*Dkt. No. 30*, p. 4), and this was reiterated in the Opposition (p. 23). If Availink "never used" the HDMI Trademarks either while or after its Adopter Agreement was in effect, its

---

[5] Notably, in the Counterclaims, and in other portions of Availink's own argument in the Opposition, Availink concedes that the Adopter Agreement is more than a trademark license. *See, e.g.*, Counterclaims ¶¶ 42, 44 (claiming the Adopter Agreement licenses a pool of rights).

1    asserted "competitive need" to do so now is disingenuous, at best.

2          Second, Availink claims that it is "harmed because HDMI LA's breach of contract claim seeks

3    damages for Availink's alleged use of these generic marks" and would be "accountable for royalties

4    for use of the HDMI trademark"; however, this is not so. The damages relating to Plaintiff's breach of

5    contract claim—Plaintiff's sole claim remaining in this action—are the annual license fee, and

6    outstanding royalties, none of which are based on usage of the HDMI Trademarks. *See* Complaint. To

7    the contrary, had Availink properly used the HDMI Trademarks, under the Adopter Agreement it

8    would have received a *discount* on the royalties it owes. Complaint, Ex. B, Att. B.

9          Finally, Availink's suggestion that a "risk of litigation" amounts to legally cognizable harm

10   caused by the registration of the HDMI Trademarks is entirely unfounded, and unsupported by any

11   legal precedent. Currently, there is no longer any trademark infringement claim in this lawsuit, and a

12   party "must have standing at all stages of the litigation."[6] *Glob. Apogee v. Sugarfina, Inc.*, No. CV 18-

13   05162-PSG-E, 2023 U.S. Dist. LEXIS 58599, at *20 (C.D. Cal. Mar. 31, 2023).

14        **2.  Even If Availink Has Standing, It Has Failed to Properly Plead Factual Allegations
          Supporting Its Cancellation Claim.**

15        Nonetheless, even if Availink has standing, its cancellation claim should still be dismissed for

16   failure to state a plausible claim for relief. In an attempt to avoid dismissal, Defendant alleges that it

17   "provided numerous examples, not mere conclusory allegations, of non-trademark use" and "concrete

18   examples." Opp. at 24. Availink fails to appreciate that its "examples" do not provide a factual

19   foundation for its merely conclusory allegations. For example, Defendant avers (Opp. at 24) that

20   Samsung, one of Plaintiff's Adopters, made "generic" usage of the HDMI Trademarks by using

21   "HDMI cable" and "HDMI port" to refer to products that have passed HDMI LA's compliance

22   testing.[7] Even if it were true that Samsung or other Adopters at some point have incorrectly used the

23

24

25   ---

     [6] If Defendant has truly not used the HDMI Trademarks as it attests then its fear of being sued for
26   trademark infringement is not a bona fide one. Defendant's suggestion that Plaintiff would be
     precluded from seeking leave to amend if additional facts become known during discovery is not only
     untrue (Opp. at 23 n.3), but also undercuts Defendant's own argument.
27   [7] In its Counterclaims, Defendant has not only sought to cancel U.S. Trademark Registration No.
     3,268,924, covering the word mark "HDMI", but also U.S. Trademark Registration No. 3,443,135,
28   covering "HDMI" in a stylized form. Defendant has not plausibly alleged that either of the HDMI
     Trademarks is generic, but its allegations relating to Plaintiff's design mark are woefully deficient.

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

HDMI Trademarks, this does not lead to any plausible inference "that Plaintiffs' trademarks have become generic" (i.e., that the "'primary significance' of the term in the public mind has become the product, and no longer the producer."). *Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS, 2021 U.S. Dist. LEXIS 227433, at *7 (C.D. Cal. Oct. 3, 2021) (granting motion to dismiss counterclaim based on genericness, finding that the defendant did not allege any facts, such as results of consumer surveys or dictionaries, that would support the conclusion that the trademarks had become generic in the mind of the public). Since Defendant's Counterclaim for cancellation is replete with such merely conclusory statements, with no factual support, Count Two of its Counterclaims should be dismissed.

**D.   AVAILINK'S CLAIM FOR DECLARATORY RELIEF MUST BE DISMISSED.**

As for Availink's claim for declaratory relief, Availink concedes that it is "based in part" on its other claims, but contends that it is not subject to dismissal because said claim also relates to "additional disputes and controversies". Such an argument strains credulity, given that it cannot reasonably be disputed that each of the bases for Count VII restate issues that are already before this Court.

**III.   CONCLUSION**

For the foregoing reasons, HDMI LA respectfully submits that Availink's Counterclaims should be dismissed in their entirety.

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

January 5, 2024

Respectfully submitted,

**CONSTANTINE CANNON LLP**

BY: *S/ Seth D. Greenstein*
Seth D. Greenstein (Pro Hac Vice)
sgreenstein@constantinecannon.com
1001 Pennsylvania Ave., NW 1300N
Washington, D.C. 20004
Telephone: (202) 204-3500
Facsimile: (202) 204-3501
*Pro Hac Vice*

BY: *S/ Ankur Kapoor*
Ankur Kapoor (Pro Hac Vice)
akapoor@constantinecannon.com
335 Madison Avenue, Fl. 9
New York, NY 10017
Telephone: (212) 350-2700
Facsimile: (212) 350-2701

*Attorneys for HDMI Licensing Administrator, Inc.*

**EPSTEIN DRANGEL LLP**

BY: *S/ Kerry B. Brownlee*
Kerry B. Brownlee (Pro Hac Vice)
kbrownlee@ipcounselors.com
Jason M. Drangel (Pro Hac Vice)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, New York 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

BY: *S/ Peter J. Farnese*
Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 356-4668
Facsimile: (310) 388-1232

*Attorneys for HDMI Licensing Administrator, Inc.*

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG

## CERTIFICATE OF SERVICE

I hereby certify the on January 5, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

DATED: January 5, 2024

By:      *S/ Kerry B. Brownlee*
Kerry B. Brownlee (Pro Hac Vice)
Epstein Drangel LLP

*Attorney for Plaintiff*
*HDMI Licensing Administrator, Inc.*

HDMI LA's Reply Brief
Case No. 4:22-cv-6947-HSG