1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   HDMI LICENSING ADMINISTRATOR,           Case No. 22-cv-06947-HSG
    INC.,
8                                           **ORDER GRANTING MOTION TO**
                  Plaintiff,                **DISQUALIFY COUNSEL**
9
           v.                               Re: Dkt. No. 81
10
    AVAILINK INC.,
11
                  Defendant.
12

13          Before the Court is Plaintiff HDMI Licensing Administrator Inc.'s ("HDMI LA") motion

14   to disqualify King & Wood Mallesons LLP ("King & Wood") as counsel for Defendant Availink

15   Inc.  *See* Dkt. No. 81.  The Court held a hearing on Plaintiff's motion.  *See* Dkt. No. 101.  Having

16   reviewed the parties' arguments, the Court **GRANTS** the motion.

17   **I.     BACKGROUND**

18          This is a trademark infringement and antitrust case.  Plaintiff filed a complaint alleging that

19   Defendant infringed its High-Definition Multimedia Interface (HDMI) trademark.   Dkt. No. 1.

20   Defendant answered and filed antitrust counterclaims, alleging that Plaintiff restrained competition

21   in the consumer electronic HDMI market.  Dkt. No. 49.  Plaintiff now moves to disqualify King &

22   Wood on the basis that the firm previously represented Plaintiff in substantially similar matters.

23   Dkt. No. 81.

24          Attorneys in King & Wood's Beijing office previously represented Plaintiff in three

25   matters.  Beginning in 2010, Plaintiff (through its predecessor) retained King & Wood to assist in

26   collecting unpaid royalties in China under an HDMI Specification Adopter Agreement, and to

27   provide advice regarding the application and interpretation of the agreement under Chinese law.

28   Dkt. No. 81-1 ("Bordi Decl.") ¶¶ 6–9; Exs. A–B.  King & Wood attorneys Mr. Shi Yusheng and

United States District Court
Northern District of California

1   Ms. Kate Peng handled this matter.  Bordi Decl. ¶ 10.  In 2013, King & Wood represented

2   Plaintiff as local counsel in connection with an investigation and ultimate settlement involving

3   allegations that Plaintiff's Adopter Agreement violated China's Antimonopoly Law.  *Id.*  ¶11.  Ms.

4   Susan Ning, Mr. Sibo Gao, and Ms. Peng handled that representation.  *Id.*  And in 2019, while still

5   at King & Wood, Ms. Peng accompanied HDMI LA personnel to a meeting with China's antitrust

6   regulatory agency to discuss the company's business and the Adopter Agreement, and counseled

7   and represented Plaintiff with respect to those topics and the meeting.  *Id.*  ¶12.

8       In 2022 – three years after its representation of Plaintiff – King & Wood was asked to

9   represent Defendant Availink in the current suit.  *See* Dkt. No. 91-1 ("Utterback Decl.") ¶¶ 5, 11.

10  King & Wood found no conflict after conducting an internal conflicts check in December 2022

11  and accepted the representation.  *Id.* ¶ 11.  Notwithstanding this conflict check, Ms. Peng avers

12  that she had no knowledge of the present lawsuit until learning of it from defense counsel in this

13  case in late December 2023.  Dkt. No. 91-8 ("Peng Decl.") at ¶ 24.[1]  King & Wood made its initial

14  appearance on behalf of Defendant on March 29, 2023.  Dkt. No. 21.  On January 10, 2024,

15  Plaintiff moved to disqualify King & Wood on the basis that the firm had represented Plaintiff for

16  nearly a decade on matters substantially related to the facts in this case.  Dkt. No. 81 ("Mot.").

17  **II.   LEGAL STANDARD**

18      Whether to disqualify counsel is a decision committed to the discretion of the district

19  court.  *See Gas–A–Tron of Ariz. v. Union Oil Co. of Calif.,* 534 F.2d 1322, 1325 (9th Cir.1976).

20  The Northern District of California's Local Rules provide that every attorney that practices before

21  this Court must "comply with the standards of professional conduct required of members of the

22  State Bar of California . . . [and] with the Local Rules of this Court."  Civ. L.R. 11–4(a).

23  Accordingly, the Court applies California law in deciding the motion.  *See Genentech, Inc. v.*

24  *Sanofi-Aventis Deutschland GMBH*, No. 08-04909-SI, 2010 WL 1136478, at *4 (N.D. Cal. March

25  20, 2010).  In addition to the Rules of Professional Conduct of the State Bar of California,

26  California looks to the American Bar Association Model Code of Professional Responsibility and

27

28  _____
[1] In her declaration, Ms. Peng said that she planned to leave King & Wood in February 2024, after the pending motion was filed.  *See* Peng Decl. at ¶ 23.

2

the Restatement in resolving issues not fully addressed in the California Rules. *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439–40 & n. 6 (9th Cir. 1983); *Dieter v. Regents of Univ. of California*, 963 F. Supp. 908, 910 (E.D. Cal. 1997).

This Court's duty to supervise the conduct of attorneys who practice before it includes the power to disqualify counsel if necessary. *See Tr. Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). When evaluating a motion to disqualify counsel,

> [t]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*In re Lee G.*, 1 Cal. App. 4th 17, 26 (1991) (internal quotation marks and alterations omitted); *see also Smith, Smith & Kring v. Superior Court*, 60 Cal. App. 4th 573, 70 (1997) (considering the "strong interest parties have in representation by counsel of their choice and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel"). Because motions to disqualify counsel are "often tactically motivated," a moving party carries a heavy burden and "disqualification motions [are subject] to particularly strict judicial scrutiny." *Kelly v. Roker*, No. C 11-05822 JSW, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012).

## III.   DISCUSSION

HDMI LA argues that King & Wood should be disqualified because there is a "substantial relationship" between the subject matter of the firm's representation of it in previous matters and what is at issue in this case, where the firm represents Availink and is adverse to HDMI LA. Mot. at 8. In response, Availink argues that HDMI LA's motion is untimely, that the past and current matters are not substantially related, and that King & Wood's New York-based litigation team in this case did not acquire any confidential information from the firm's prior representations involving attorneys in its Beijing office. Opp. at 10–23. The Court agrees with HDMI LA and grants the motion.

**A.    The motion to disqualify is not waived**

Defendant argues that Plaintiff's motion should be denied because Defendant waived the right to seek disqualification by not timely filing its motion.  Opp. at 10.  Defendant contends that Plaintiff "waited (at least) 8 months before raising the issue of a potential conflict of interest arising out of [King & Wood's] representation of Availink," and that "even then, it only raised it and threatened a disqualification motion at the end of December 2023."  *Id.*  Plaintiff argues that its motion is not untimely because the filing delay was "minor" and "not prejudicial to Defendant."  Reply at 2.

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Piper Aircraft Corp.*, 701 F.2d at 87.  Under California law, an "extreme or unreasonable" delay in filing a motion for disqualification can operate as a waiver.  *Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co.*, 194 Cal. App. 4th 839, 845 (2011); *see also I-Enter. Co. LLC v. Draper Fisher Jurveston Mgmt. Co. V, LLC*, No. C-03-1561, 2005 WL 8177426 at *1 (N.D. Cal. May 17, 2005) ("A motion to disqualify may be denied if there is 'evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client.'"); *River W., Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1309 (1987) ("Because of the law's concern for unhampered counsel on both sides of the litigation, 'mere delay' in making a disqualification motion is not dispositive. The delay must be extreme in terms of time and consequence.").

The Court finds that Plaintiff's delay in bringing the motion was not extreme or unreasonable.  This case was filed in November 2022.  Five months later, in March 2023, King & Wood made its initial appearance on behalf of Defendant.  Defendant is represented by several law firms in this case, and Plaintiff represents that it was uncertain what role King & Wood would play.  Reply at 2.  The record reflects that attorneys from a different law firm signed: (1) the waiver of service on January 13, 2023 (Dkt. No. 12); (2) the motion to dismiss counts II-IV of the Complaint on April 12, 2023 (Dkt. No. 30); (3) the Rule 7.1 corporate disclosures on April 18, 2023 (Dkt. No. 32); (4) the stipulated mediation statement on April 18, 2023 (Dkt. No. 33); (4) the

initial disclosures on April 21, 2023 (Brownlee Decl., ¶ 7); and (5) the reply in support of the motion to dismiss filed on May 3, 2023 (Dkt. No. 40).  As Plaintiff points out, these pleadings do not reference King & Wood.   Plaintiff also notes that "the parties did not exchange initial discovery demands until November 6, 2023," and responds that "only then, in reviewing the breadth of Defendant's demands, and collating responsive information documents, did counsel for Plaintiff become aware of the true concerning scope of the long-established attorney-client relationship between K&W and Plaintiff, and the relevancy of such representation to the Counterclaims, which were brought just a few months earlier."  Reply at 4.

While it is something of a close call, the Court finds that Plaintiff's delay was not extreme or unreasonable.  When King & Wood first appeared, this was solely a breach of contract and trademark infringement case.  Plaintiff alleged that Defendant breached an agreement by failing to pay annual fees and infringed Plaintiff's trademark by manufacturing, marketing, and selling its HDMI product without authorization.  Compl. ¶¶ 45, 52.  Though King & Wood previously represented Plaintiff, the core of Plaintiff's allegations in this case do not directly relate to the antitrust matters that the firm handled for Plaintiff in China.  It is true that California does not impose "a lifetime prohibition against representation adverse to a former client."  *Khani v. Ford Motor Co.*, 215 Cal. App. 4th 916, 921 (2013) (internal quotations omitted).

But the conflict from King & Wood's representation of Defendant clearly manifested by September 2023, when the firm filed antitrust counterclaims attacking the legality of the same agreement that it had previously defended on Plaintiff's behalf.  That development broadened the scope of the case from solely breach of contract and trademark infringement theories to encompass a direct challenge to the lawfulness of Plaintiff's practices under antitrust law.   Therefore, though Plaintiff had knowledge of King & Wood's involvement in March 2023 and did not file this motion to disqualify until January 2024, the fundamental problem stemming from the firm's representation did not become clear until September 2023.   Plaintiff filed its motion in early January 2024.  Accordingly, the Court finds that Plaintiff's delay was not extreme or unreasonable so as to constitute waiver.  *Cf. Liberty Nat'l*, 194 Cal.App.4th at 848 (finding unreasonable delay where the movant waited two years after being put on notice of the conflict to file the motion to

disqualify); *River W.*, 188 Cal.App.3d at 1312 (finding a delay of over three years extreme).

Moreover, even if the delay had been unreasonable, Defendant has failed to explain how it has resulted in extreme prejudice. Defendant argues that if King & Wood is disqualified, it will have to "find new lead counsel after a lengthy pleading stage, extensive settlement negotiations and mediation, and with just 6 months remaining of discovery." Opp. at 13. However, Defendant is represented by several other law firms, one of which was lead counsel in the case prior to King & Wood's appearance in March 2023. And the trial in this case is scheduled for March 2025, which allows enough time to adjust the schedule if needed. *Cf. Piper*, 701 F.2d at 88 (affirming district court's ruling that disqualification motion was waived when filed 33 days before trial because "Trust Corp.'s failure to timely object and its lengthy delay in filing a motion to disqualify cannot be tolerated where, as here, disqualification would certainly cast a shadow over the trial"). The Court can consider whether some extension of any interim deadlines is necessary based on what happens next in the case. And in any event, as explained below, the serious nature of the conflict here requires disqualification. Accordingly, the Court finds that Plaintiff's motion is not waived.

**B.** **The prior and current representations are substantially related**

Plaintiff argues that King & Wood should be disqualified because "[d]espite its prior representation of Plaintiff against substantively the same allegations," it "now represents the opposite positions against Plaintiff on behalf of Defendant." Mot. at 10. The Bordi Declaration directly avers that "K&W partners Shi Yusheng, Susan Ning and Kate Peng were privy to substantial amounts of highly confidential material, including sensitive information related to HDMI LA's licensing policies and practices, competitive tactics, business strategy, pricing, and litigation strategies—information directly relevant to this lawsuit." Bordi Decl. ¶ 13. Defendant responds that the fact that it has previously "presented a position that may be different from the current position taken . . . in this action falls far short of satisfying the 'substantial relationship' requirement." Opp. at 16.

Under California Rule of Professional Conduct 3–310(e), "[a] member shall not, without the informed, written consent of the client or former client, accept employment adverse to the

client or former client where, by reason of the representation of the client or former client the member has obtained confidential information material to the employment." This is known as the rule barring successive representation, designed to promote an attorney's ongoing duty to keep a former client's information confidential. *Flatt v. Superior Court,* 9 Cal.4th 275, 283 (1994). Thus, a former attorney must be disqualified if the court finds that a "substantial relationship" exists between the prior and current representations. *ViChip Corp. v. Lee*, No. C-04-2914-PJH, 2004 WL 2780170 at *at 2 (N.D. Cal. Dec. 3, 2004). A substantial relationship exists "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in [the] later, adverse representation." *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980); *see also H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 1454, (1991) (matters are "substantially related" when "confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation"). Where a substantial relationship exists, an attorney's access to confidential information is presumed, and disqualification of the attorney is required. *Flatt,* 9 Cal.4th at 283.

The Court agrees with Plaintiff that King & Wood's prior representations are substantially related to the current case. The firm's representation of Plaintiff in two antimonopoly matters in China involving Plaintiff's Adopter Agreement overlaps with the factual and legal issues in this case. In its counterclaims, Defendant alleges that it intends to "expose a decades-long conspiracy and anticompetitive conduct restraining competition in markets that include billions of consumer electronic devices using the High-Definition Multimedia Interface (HDMI) standard." Dkt. No. 49 at ¶ 1. Defendant raises an affirmative defense that Plaintiff's "Adopter Agreement is violative of antitrust and unfair practice laws, including the Sherman Act, the Cartwright Act and the Donnelly Act." *Id*. at 6; *see also id*. at ¶ 126 ("HDMI LA and the Founders have agreed among themselves to combine their intellectual property, including patents necessary to make, use, or sell HDMI-compliant components, HDMI SoC ICs, and HDMI-compliant end-user products, and to license those combined rights under the Adopter Agreement, which is a conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1."). In short, King & Wood previously defended against antitrust scrutiny the practices by its former

United States District Court
Northern District of California

client concerning the Adopter Agreement that it now contends are unlawful.

Though the firm represented Plaintiff in antitrust matters in China rather than the United States, those matters still centered on whether the Adopter Agreement and Plaintiff's practices were anticompetitive. In the current case, Defendant claims that Plaintiff's licenses and Adopter Agreement violate United States antitrust law. While the Chinese and American antitrust laws no doubt differ in some particulars, there clearly is a reasonable probability that confidential information King & Wood learned while representing Plaintiff in China could now be used against Plaintiff. From 2013 to 2018, Ms. Peng (and other King & Wood attorneys) assisted Plaintiff in settlement negotiations to resolve antitrust-related complaints. Bordi Decl. ¶ 11. During that same time, Ms. Peng represented Plaintiff in a Chinese agency investigation concerning Plaintiff's Adopter Agreement and other antitrust practices. *See id*. After that, Ms. Peng continued to represent Plaintiff and attended meetings with China's antitrust authorities to discuss the Adopter Agreement. *See id*. at ¶ 12. Notwithstanding any differences in American and Chinese anticompetition law, these representations squarely implicated the same Adopter Agreement and related practices involved in this case. The matters are substantially related given that attorneys at King & Wood likely have gained confidential information material to the current dispute by virtue of their prior representation *See Trone*, 621 F.2d at 998; *See also Farris v. Fireman's Fund Ins. Co.,* 119 Cal.App.4th 671, 683 (2004) (noting that it is irrelevant whether attorney is in actual possession of confidential information if he had access and a substantial relationship exists between the two matters). And Ms. Peng's seemingly carefully-worded and caveated averments to the contrary in her declaration, some of which hinge on the claim that relevant confidential information was not exchanged because the earlier cases involved Chinese rather than U.S. anticompetition claims, do not change that conclusion. *See* Peng Decl. ¶ 10 ("The agency did not inquire into HDMI LLC's licensing practices in the context of other jurisdictions' antitrust law, including the United States."); ¶ 13 ("[King & Wood] Beijing did not provide comprehensive legal analysis regarding whether Silicon Image and HDMI LLC's licensing scheme used in China complied with PRC competition law."); ¶ 17 ("We did not acquire any confidential information in regard to HDMI LA's competition, or litigation strategy as a result of this representation.").

**C.    The conflict of the attorneys who worked on the prior matters is imputed to the entire firm**

Defendant argues that Plaintiff's motion should be denied because King & Wood's New York office (where Defendant's current litigation team is based) did not know and would not have access to confidential information that attorneys in the firm's Beijing office gained in their representation of Plaintiff in the Chinese antitrust matters.  Opp. at 20.  To support this position, Defendant argues that "California has adopted the view that the presumption of vicarious disqualification 'is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case.'"  Opp. at 21 (citing *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 801 (2010)).  Defendant contends that the Court should not impute any conflict of King & Wood's Beijing attorneys to the firm's current New York case team because an effective ethical screen was put in place to ensure that the team in this case was not exposed to confidential information.

The California Court of Appeal has held that a court assessing a disqualification motion "should presume knowledge is imputed to all members of a tainted attorney's law firm."  *Kirk*, 183 Cal. App. 4th at 801.[2]  In the proper circumstances, "the presumption of vicarious disqualification is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case."  *Id.*   *Kirk* makes clear that

---

[2] As noted by another California Court of Appeal decision, "[i]t is safe to say that *Kirk* is by far the most thoughtful and well researched California appellate opinion on the topic of California law in regard to the topic of the vicarious disqualification of an entire law firm based on the employment of one disqualified attorney."  *Fluidmaster, Inc. v. Fireman's Fund Ins. Co.*, 25 Cal. App. 5th 545, 551 (2018).  However, the "case law is mixed regarding whether vicarious disqualification of the entire firm is automatic" or can be avoided by the implementation of an effective ethical screen.  *Sierra v. Costco Wholesale Corp.* 603 F. Supp. 3d 1199, 1206 (N.D. Cal. 2022).  Where, as here, there is no California Supreme Court precedent clearly on point, this Court may treat California Court of Appeal decisions as definitive interpretations of California law unless something suggests that the state supreme court would take a different approach.  *See Norcia v. Samsung Telecomms. America, LLC*, 845 F.3d 1279 (9th Cir. 2017) ("If the California Supreme Court has not directly addressed the question before us, we must predict how it would decide the issue. . . .  We generally will follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it."); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 408 F. App'x. 45, 47 (9th Cir. 2011) ("Given the uncertainty as to the status of California law" on vicarious disqualification after *Kirk*, "the district court wouldn't have been clearly erroneous, whichever course it adopted on the disqualification motion").  Seeing no basis to conclude that the California Supreme Court would disagree with the approach in *Kirk*, the Court applies that case's rebuttable presumption framework.

though the "specific elements of an effective screen will vary from case to case," "two elements are necessary." *Id*. at 810. "First, the screen must be timely imposed; a firm must impose screening measures when the conflict first arises." *Id*. Second, the firm must impose "preventative measures to guarantee that information will not be conveyed." *Id*. "The typical elements of an effective ethical wall are: [1] physical, geographic, and departmental separation of attorneys; [2] prohibitions against and sanctions for discussing confidential matters; [3] established rules and procedures preventing access to confidential information and files; [4] procedures preventing a disqualified attorney from sharing in the profits from the representation; and [5] continuing education in professional responsibility." *Id*. at 810–11. Ultimately, in assessing a disqualification motion, a court does not just "determine whether all of a prescribed list of elements have been established," but instead conducts a "case-by-case inquiry focusing on whether the court is satisfied that the tainted attorney has not had and will not have any improper communication with others at the firm concerning the litigation." *Id*. at 811.

Considering these principles, the Court finds that Defendant has not rebutted the presumption of vicarious disqualification. First, even assuming that an ethical screen could be a basis for rebutting that presumption, Defendant fails to show that King & Wood timely screened its Beijing attorneys from this case. Defendant argues that "on January 5, 2024, the firm established an ethical screen between its Beijing and New York Offices," and that from then on "any communications relating to this litigation and the instant disqualification motion were screened." Mot. at 8. This case was filed in November 2022, and King & Wood first appeared in March 2023. King & Wood filed the answer and antitrust counterclaims in September 2023. Given that the screen was implemented well after the firm became involved in this case, it provides no basis for departing from the default rule that knowledge of confidential information is imputed to all members of a law firm. As *Kirk* makes clear, in order to rebut the presumption of vicarious disqualification, it is "necessary" that the "screen [] be timely imposed." Courts often disqualify counsel for failing to meet this first requirement of an effective screen. *See Signature MD, Inc. v. MDVIP, Inc.*, No. 14-cv-5453-DMG (SSx), 2015 WL 12781603, at *3 (C.D. Cal. Jan. 20, 2015) (granting motion to disqualify counsel where plaintiff's counsel implemented an ethical

1    screen two days after taking the representation); *see also Glaxo Group Ltd. v. Genentech, Inc.*, No.

2    10-cv-2764-MRP (FMOx), 2010 WL 2787917, at *4 (C.D. Cal. July 13, 2010) (disqualifying firm

3    where "the ethical screen of Bunsow, which was put in place weeks after the representation

4    commenced, was not timely imposed and therefore inadequate").  On its own, King & Wood's

5    failure to impose a timely ethical screen is a sufficient basis to impute the conflict of the firm's

6    Beijing attorneys to the entire firm.

7            In addition, the Court rejects Defendant's argument that the firm imposed sufficient

8    preventative measures to guarantee that confidential information was not conveyed.  To make this

9    point, Defendant argues that because the firm's New York office is geographically isolated from

10   its Beijing office, and each of its offices "operates as independent legal entity," disqualification is

11   not appropriate.  Opp. at 22–23.  Defendant submitted declarations from two attorneys in King &

12   Wood's New York Office, and one attorney (Ms. Peng) in its Beijing office.  Broadly, the

13   declarations from the New York attorneys assert what Defendant argues in its opposition: that the

14   New York and Beijing offices are "geographically isolated" such that no confidential information

15   was shared.  *See* Utterback Decl.; 91-3 ("Filardo Decl.").  Ms. Peng's declaration largely attempts

16   to make the point that the work she did in Beijing is not related to this litigation.  *See* Peng Decl. ¶

17   26 ("I do not think the work KWM Beijing did in relation to the NDRC investigation and related

18   matters would give King & Wood Mallesons LLP ("KWM New York") a substantial advantage in

19   this litigation. Most of Availink's counterclaims are unique to this litigation.").

20           But these assertions do not satisfy Defendant's burden of showing that "the practical effect

21   of formal screening has been achieved."  *Kirk*, 183 Cal. App. 4th at 810.  First, "the target firm

22   should, at the very least, provide declarations from each member of its team working on the

23   former client's matter."  *Fluidmaster*, 25 Cal. App. at 552.  Though Ms. Peng provided a

24   declaration, the several other Beijing attorneys who previously represented Plaintiff have not.

25   Further, Ms. Peng's declaration is not "sufficient to exclude any possibility of shared confidences"

26   because it does not squarely and definitively aver that no confidential information was shared.

27   *See, e.g.,* Peng Decl. ¶ 23 ("After my departure, all the attorneys who had handled detailed

28   information in the NDRC Investigation would have left [King & Wood] Beijing.  The risk of us

United States District Court
Northern District of California

1    sharing any confidential information with Mr. Filardo's team is further diminished, given that I

2    have never disclosed any detailed information concerning HDMI LA's license scheme to our US

3    team, and will be further prevented from sharing confidential client information (if any) after I

4    leave the firm."); *cf. Fluidmaster*, 25 Cal. App. at 552 ("The *Kirk* court opined that the target law

5    firm needs to provide declarations sufficient to exclude any possibility of shared confidences—the

6    declaration of the disqualified attorney is not sufficient.").  Beyond a single sentence asserting that

7    "No one from [King & Wood] New York was involved in any of these matters or had any

8    knowledge of them at any time prior to making their inquiry of me as a result of Plaintiff's

9    assertions and motion," Peng Decl. ¶ 27, Ms. Peng's declaration provides no supporting facts or

10   documents sufficient to show that there was no possibility that confidential information was

11   exchanged.  Defendant also argues that the firm's offices operate independently, such that no

12   confidential information could be shared.  But beyond this representation, Defendant provides no

13   specific policies, protocols, or procedures that support this conclusion.  *See Vankiet Tran, an*

14   *individual Plaintiff, v. Costco Wholesale Corp.*, No. 23-cv2057-GPC(BLM), 2024 WL 1421735,

15   at *8 (S.D. Cal. April 2, 2024) (holding that law firm did not rebut the presumption of vicarious

16   disqualification because it "fail[ed] to provide specific policies and procedures or other supporting

17   documentation" to supplement the allegations made in its declarations).

18          Neither an ethical wall implemented several months after the litigation commenced nor a

19   statement that each of the firm's offices operate as "independent legal entities" satisfies

20   Defendant's burden on this record.  King & Wood has not shown that it implemented a timely

21   screen or proper preventative measures, and therefore it has not met its burden to rebut the

22   presumption against vicarious disqualification.  *See Vaxmonsky v. Costco Wholesale Corp.*, No.

23   8:22-cv-00098-JVS-DFM, 2022 WL 20955638 at *5 (C.D. Cal. July 27, 2022) ("Since there were

24   no additional preventative measures outside of the software change, and the change in software

25   was implemented in an untimely manner, the ethical wall in this case is insufficient.").  The Court

26   is not "satisfied that the tainted attorney[s] ha[ve] not had and will not have any improper

27   communication with others at the firm concerning the litigation," with the consequence that

28   Defendant has not rebutted the presumption of vicarious disqualification.  *Kirk*, 183 Cal. App. 4th

at 811.  Accordingly, the Court concludes that King & Wood is disqualified from representing the

Defendant in this case.[3]

### IV.   CONCLUSION

       For the reasons discussed, the Court **GRANTS** Plaintiff's motion to disqualify King &

Wood.

       The Court further **SETS** a telephonic case management conference for May 7, 2024 at

2:00pm.  The Court further **DIRECTS** the parties to submit a joint case management statement by

April 30, 2024.  All counsel shall use the following dial-in information to access the call:

       Dial-in: 888-808-6929

---

[3] The California Court of Appeal has suggested that when a tainted lawyer has left the firm, the vicarious disqualification and ethical screen analysis changes from considering whether there was a *possibility* that the tainted lawyer could share any confidential information to whether the lawyer *actually* shared anything confidential.  *See Fluidmaster*, 25 Cal. App. 5th at 552 ("[T]he *Kirk* court explained that once a disqualified attorney leaves the target firm, the only real question is whether any confidences were shared with the target firm."); *Kirk*, 183 Cal. App. 4th 185–86 ("[O]nce the tainted attorney has left the firm . . . [t]he trial court should not consider the *risk* of transmitting information from the tainted attorney to those involved in the challenged representation, but, instead, whether the tainted attorney *actually* conveyed confidential information.").  The Court is not certain whether this alternate standard applies in the current situation, in which an attorney performed the work creating the conflict while at the firm now adverse to the former client, as opposed to the circumstance in *Fluidmaster* and *Kirk*, where the attorney did the conflict-creating work at another firm and then moved laterally.  But the Court need not apply this alternate standard here in any event for a more basic reason:  the record does not establish that Ms. Peng actually left King & Wood, and the other conflicted attorneys are still there.  Ms. Peng's February 9, 2024 declaration states that she planned to leave the firm that month.  *See* Peng. Decl. ¶ 23 ("I am leaving KWM in February 2024.").  However, neither Ms. Peng nor King & Wood has submitted any evidence that she ever *did* leave the firm.  As of the date of this order, Ms. Peng is still listed on King & Wood's website as a lawyer at the firm who specializes in competition law.  *See* King & Wood Mallesons, Peng Heyue (Kate), https://www.kwm.com/cn/en/people/kate-peng.html (last visited April 22, 2024).  Moreover, even if Ms. Peng is no longer at the firm, she is not the only tainted attorney.  At least three other King & Wood lawyers previously represented Plaintiff in China in antitrust and other matters involving the legality of the Adopter Agreement and likely gained access to confidential information.  *See* Bordi. Decl. ¶ 13 (averring that along with Kate Peng, Shi Yusheng and Susan Ning represented Plaintiff and "were privy to substantial licensing policies and practices, competitive tactics, business strategy, pricing, and litigation strategies information directly relevant to this lawsuit"); ¶ 11 (averring that along with Ms. Peng, Susan Ning and Sibo Gao "represented, prepared for, and appeared on behalf of Plaintiff at an NDRC hearing in a dispute where a PRC trade association representing numerous Adopters").  According to Plaintiff (and without dispute by Defendant), at least two of those lawyers are still at King & Wood.  *See* Mot. at 4 ("Shi Yusheng, Susan Ning and Kate Peng are all still partners at K&W").  Accordingly, this case is different than *Kirk* and *Fluidmaster* because tainted attorneys are still at the firm, such that the Court need not consider whether confidential information was *actually* shared.

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  All attorneys appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD.  The parties should be prepared to discuss how to move this case forward efficiently. [4]

**IT IS SO ORDERED.**

Dated:   4/22/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Plaintiff has filed a motion to dismiss Defendant's counterclaims.  *See* Dkt. No.  72.  Those counterclaims are heavily premised on Plaintiff's alleged antitrust violations.  The Court has determined that King & Wood is disqualified from representing Defendant in this matter given its likely access to confidential information relevant to the antitrust issues surrounding Plaintiff's Adopter Agreement and related conduct.  But this also raises a serious question as to whether even successor counsel could permissibly pursue these counterclaims, given King & Wood's obvious and pivotal involvement in researching and asserting them.  The parties should be prepared to discuss this issue at the case management conference.

United States District Court
Northern District of California