# GreenspoonMarder LLP

James J. McGuire
Partner
1345 Avenue of the Americas
22nd Floor
New York, NY 10105
Phone: 212.524.5000
Fax: 212.524.5050
Direct Phone: 212.524.5040
Email: james.mcguire@gmlaw.com

February 21, 2025

**BY CM / ECF**
Honorable Peter H. Kang
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom F – 15th Floor
San Francisco, California 94102

Re:   *HDMI Licensing Administrator, Inc. v. Availink Inc*., 22-cv-06947-EKL
        Joint Letter re: Discovery Dispute

Dear Judge Kang:

Pursuant to Your Honor's Standing Order, the parties submit this joint discovery dispute letter regarding Availink Inc.'s Second Set of Requests for Production. Lead trial counsel for both parties have conferred by videoconference (with their offices over 100 miles apart) and certify that they have concluded that no agreement or negotiated resolution can be reached.

**AVAILINK'S POSITION:** Availink seeks the Court's assistance to obtain discovery relevant to its antitrust counterclaims. *First*, Availink requests an Order compelling the production of documents responsive to its **Request No. 105**, which seeks documents summarizing meetings of the alleged co-conspirators (the "Founders"), including meeting minutes, "concerning the HDMI Specification, the licensing of the HDMI Specification, the Adopter Agreement, HDMI Licensing Administrator, Inc. [("HDMI LA")], HDMI Licensing, LLC, the HDMI Forum, the licensing of Necessary Claims, or the allocation of licensing revenue." HDMI LA produced the meeting minutes, including the associated "backup" (presentations and memoranda), **but only for the period** *after* **January 1, 2015**. The Counterclaims, however, allege "a decades-long conspiracy" to restrain competition, which began at least in 2002. (Dkt. 118, Counterclaims ¶¶ 1, 19, 139-144.) Discovery has shown that the challenged licensing scheme was developed early on, certainly before 2015.

The early meeting minutes and presentations among the conspirators are highly relevant. Antitrust analysis considers not only whether conspirators entered an agreement but also the *reasons*, *purposes*, and *effects* anticipated by the participants in the agreement. *See, e.g.*, *Sidibe v. Sutter Health*, 103 F.4th 675, 685 (9th Cir. 2024) (Court must "consider 'the purpose or end sought to be attained' by a challenged restraint" and the "anticompetitive purpose is a relevant factor"). Thus, minutes of meetings of conspirators discussing the challenged restraint are highly relevant. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 2019 U.S. Dist. LEXIS 188877, at *21-*24

(E.D. Pa. Oct. 31, 2019) (relying on meeting minutes to decide whether the purpose of an industry standard was legitimate or anticompetitive); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2024 U.S. Dist. LEXIS 177231, at *25, *72, *75, *90, *113 (N.D. Ill. Sep. 30, 2024) (citing the conspirators' meeting minutes for multiple issues decided by the jury); *see also*; *In re Nw. Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174, 200 (E.D. Mich. 2002) (denying summary judgment and finding meeting minutes could support a finding of collusive rather than independent action).

Despite the relevance of these materials, HDMI LA claims that production would be too burdensome. HDMI LA has therefore sought to limit production to materials that include "discussions of the terms of the Adopter Agreement or the Founder Agreement." Tellingly, HDMI LA also claims that it has only "sporadic" materials during this time period, reducing any burden. Further, the suggested limitation would exclude relevant materials, such as discussions of "the HDMI Specification, the licensing of the HDMI Specification, … HDMI Licensing Administrator, Inc., HDMI Licensing, LLC, the HDMI Forum, [and]the licensing of Necessary Claims." In addition, during this time period, the challenged licensing program was subject to an antitrust complaint and investigation in China regarding some of the very same provisions at issue here. The Court should compel HDMI LA to produce the minutes of the meetings of the Founders and associated backup materials from the start of the alleged conspiracy in 2002. To reduce any burden, HDMI LA may exclude discussions of "the allocation of licensing revenue."

*Second*, Availink seeks an Order compelling HDMI LA to produce non-privileged documents related to the antitrust investigation in China pursuant to **Request No. 104**. In its motion to disqualify prior counsel, HDMI LA revealed that its predecessor, HDMI LLC, had been the subject of an antitrust investigation by the National Development and Reform Commission (NDRC) in China, which was instigated by a complaint by the Chinese Video Industry Association (CVIA). Dkt. 81 at 9. According to HDMI LA, the NDRC investigation involved the very "types of claims now being lodged by Availink," and because of the "commonalities" between U.S. and Chinese antitrust law, the "legal issues" in the NDRC investigation and this action "are essentially the same." *Id.* at 16. The NDRC ordered HDMI LLC to negotiate a settlement of the antitrust complaint. *Id.* at 9; Dkt. 81-1 ¶ 11. Additionally, in 2018 or 2019, HDMI LA met with the Chinese State Administration for Market Regulation (SAMR), an antitrust enforcement agency, to discuss "HDMI LA's implementation of the settlement agreement with the CVIA." (Dkt. 92-1 ¶ 12.) The settlement with the CVIA apparently led to changes to two of the licensing provisions challenged by Availink, the non-assertion provision and the withholding of patent information, ***but only for Adopters in China***.

HDMI LA seeks to limit its production to only correspondence and presentations to the CVIA, withholding its correspondence and presentations with the antitrust agencies. But courts "generally permit discovery of documents and communications from foreign agencies when the requests are narrowed to specific countries, regulatory agencies, or subject areas." *FTC v. Amazon.com, Inc.*, 2024 U.S. Dist. LEXIS 233464, at *13 (W.D. Wash. Dec. 27, 2024). Because the NDRC and SAMR investigations and Availink's antitrust claims have a "significant legal and factual overlap," the discovery requests seek plainly relevant documents, and the Court should compel their production. *Rumble, Inc. v. Google LLC*, 2023 U.S. Dist. LEXIS 95164, at *21 (N.D. Cal. May 31, 2023) (compelling the production of documents from prior government antitrust investigations); *see also Kurin, Inc. v. ICU Med., Inc.*, 2024 U.S. Dist. LEXIS 214484, at *9 (C.D. Cal. Nov. 22, 2024) (applying standard and compelling discovery).

Honorable Peter H. Kang                                                                                                            Page 3
February 20, 2025

HDMI LA also contends that documents related to the NDRC and SAMR investigations are confidential and not subject to discovery. Not so. Chinese law and confidentiality regulations apply to the *agency*, preventing the agency from disclosing materials from its investigation. *See, e.g.*, *Vringo, Inc. v. ZTE Corp.*, 2015 WL 2380061, at *3-*4 (S.D.N.Y. May 14, 2015) (rejecting argument that Chinese antitrust law prevented disclosure of communications with agencies). The Court should direct HDMI LA to produce non-privileged documents relating to the NDRC and SAMR investigations (such as communications and presentations), the CVIA complaint, communications and presentations with the CVIA, and the resulting settlement.

**Third**, Availink seeks an Order compelling production correspondence and documents discussing the termination of certain Adopters, the entity's continuing manufacture of HDMI-compliant products, and the potential or actual reinstatement of the entity pursuant to **Request No. 85**. The listed entities continued to manufacture HDMI-compliant products after termination, and at least some have been reinstated as Adopters by HDMI LA. These entities are thus situated exactly as is Availink, making discovery regarding how HDMI LA dealt with the listed entities highly relevant. Availink has narrowed the request to the final termination notice and correspondence and documents related to the terminated company (including internal discussions) for the period starting 60 days prior to the termination and thereafter.

HDMI LA, however, refuses to produce anything other than "final termination notices," "external correspondence with the entities … post-dating the entity's termination and the internal HDMI LA termination approvals," claiming that the internal approvals summarize the reasons for termination. HDMI LA thus seeks to exclude pretermination correspondence and its *internal discussions* regarding the termination, the potential for reinstatement, reasons for reinstatement, terms of any reinstatement, etc. Such documents, however, are relevant to the rationale and terms of the terminations and reinstatements.

**HDMI LICENSING ADMINISTRATOR'S POSITION:** HDMI LA opposes Availink's motion. On each of the disputed issues, HDMI LA has offered reasonable proposals, appropriately tied to the relevant issues, avoiding undue burden, and facilitating the expeditious completion of fact discovery before the upcoming deadline.

*First*, the Court should deny Availink's motion for an additional twelve years of meeting minutes of the HDMI Founders as grossly disproportionate to the needs of the case and unduly burdensome. Availink obtained a license ("Adopter Agreement") to make and sell products using the HDMI technology specification in July 2015, which it terminated in 2018. As HDMI LA explained to Availink, HDMI LA, Inc. came into existence in 2017 and does not have complete records from before that period, which makes searching for pre-2017 documents burdensome and often unfruitful. Nevertheless, HDMI LA and Availink reached a compromise whereby HDMI LA would produce specific documents in its possession (such as agreements) going back to 2002, and would perform a search for and produce documents from January 1, 2015 forward – so as to provide Availink a snapshot of its licensing activities at the time Availink became an Adopter. HDMI LA conducted a reasonable search and collected the HDMI Management Committee meeting minutes in its possession, custody, and control, and has produced all minutes and supporting documents beginning in January 1, 2015. In a further effort to reach compromise, HDMI LA was able to locate some meeting minutes from before 2015, though none before 2008. HDMI LA has no knowledge whether meeting minutes were taken in 2002, when the Founder

Honorable Peter H. Kang  Page 4
February 20, 2025

Agreement was first executed, but in any event, if any such minutes existed, HDMI LA does not have them in its possession, custody, or control. HDMI LA therefore offered to produce pre-2015 meeting minutes related to Availink's stated justification for its discovery request—*i.e.*, the reasons, purposes, or effects of the terms of the Adopter Agreement or the Founder Agreement (other than royalty allocations, which are not relevant to this case).

Availink's demand for additional documents is burdensome, unreasonable and unjustified. First, pre-2015 minutes have minimal if any relevance. The HDMI Specification Adopter Agreement remained substantively the same from 2002 to 2015. The only significant amendments came during the period for which HDMI LA has already produced documents. Second, Availink wrongly complains about certain topics in pre-2015 minutes being "excluded" when they would, in fact, fall under HDMI LA's offer. For instance, the "licensing of the HDMI Specification" and the "licensing of the Necessary Claims" are both effectuated *under the Adopter Agreement* and are thus encompassed by HDMI LA's proposal. This further illustrates that HDMI LA's offer of production captures relevant materials without imposing an unreasonable burden. Finally, reviewing meeting minutes and attachments for production is time-consuming and burdensome. Founder discussions regularly involve legal advice and lawyers typically attended all meetings. As with the documents already produced from 2015 forward, producing these minutes requires careful redactions for privilege—often by lawyers who were present for the meetings. For these reasons, the Court should deny Availink's motion on this issue.

*Second*, the Court should deny Availink's motion for documents exchanged with Chinese government agencies, which are irrelevant, confidential, and unnecessary in light of HDMI LA's offer to produce documents concerning the settlement reached with the Chinese Video Industry Association (CVIA). Courts in this district recognize that "[t]he moving party needs to explain why documents concerning foreign activities are relevant to U.S. claims or defenses, and the Court must conduct a careful analysis to determine if the foreign documents actually would be relevant." *Epic Games, Inc. v. Apple Inc.*, 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020). Here, the industry allegations lodged with the National Development and Reform Commission (NDRC) and the State Administration for Market Regulation (SAMR) in China have no relevance to Availink's claims under U.S. antitrust law. China's Anti-Monopoly Law ("AML"), applies an "abuse of dominance" standard that differs significantly from U.S. antitrust law. *See* Chinese Anti-Monopoly Law (2022 Edition), Art. 3; Alan B. Freedman & Molly Ma, *In Review: Abuse of Dominance in USA*, LEXOLOGY (Sept. 28, 2023). Moreover, the NDRC itself described the matter as a "policy-based mediation" between HDMI LLC and the CVIA. *See* https://www.ndrc.gov.cn/xwdt/xwfb/201508/t20150817_955696.html (translation). The ultimate settlement between HDMI LA and CVIA therefore reflected Chinese commercial policy considerations, with no adjudication of liability under the AML.

Importantly, HDMI LA interacted with NDRC and SAMR under express, mutual assurances of confidentiality. In assessing the strength of a foreign government's interest in preventing a disclosure, the Ninth Circuit looks to, among other factors, "indications of the foreign state's concern for confidentiality *prior to the controversy*." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992) (emphasis in original). Here, the Chinese government made clear to HDMI LA its interest in keeping the proceedings confidential, years before the present controversy arose. Should the Court require additional information or proceedings, HDMI LA will submit declarations from the principals involved describing these

mutual assurances of confidentiality. This case is thus far different from *Vringo Inc. v. ZTE Corp.*, 2015 WL 2380061 (S.D.N.Y. May 14, 2015), where the gravamen of the complaint concerned whether the defendant violated its obligations to the plaintiff by disclosing to the Chinese government confidential communications *between the two parties*. *Id.* at *1. Nothing remotely similar occurred here.

Notwithstanding, HDMI LA has told Availink it is willing to produce documents exchanged between HDMI LA and the CVIA, a non-governmental entity. Specifically, HDMI LA has offered to produce (1) the settlement with the CVIA which terminated the preliminary NDRC investigation referenced in Availink's request, (2) the changes to the Adopter Agreement implemented as a result of the CVIA settlement, and (3) correspondence between HDMI LA and the CVIA after the settlement was executed. Accordingly, Availink will receive discovery regarding the resolution of the CVIA-initiated investigation. Indeed, as a Chinese Adopter, Availink received contemporaneously the limited changes to the Adopter Agreement pursuant to the settlement. HDMI LA further notes that, because Availink is a Chinese Adopter, Availink has no standing to challenge provisions implemented "only for Adopters in China" pursuant to Chinese law.

Availink's relevance argument turns largely on HDMI LA's motion to disqualify King & Wood Mallesons as counsel, but the issues here are materially different. The disqualification motion was based on KWM receiving confidential information about HDMI LA's licensing policies in the course of representing HDMI LA, LLC. But to establish relevance of foreign documents to the merits of the underlying case, Availink "must show relevance as to the specific competition regulations and investigations." *Fed. Trade Comm'n v. Amazon.com, Inc.*, 2024 WL 5238834, at *3 (W.D. Wash. Dec. 27, 2024). Availink has not done so, for the reasons discussed above.

***Third***, the Court should deny Availink's motion for additional documents regarding 23 terminated adopters because, here again, HDMI LA has offered to produce, or already produced, documents that sufficiently capture the information requested, without imposing an undue burden on HDMI LA late in discovery. HDMI LA's offer consists of (1) letters informing the Adopters listed in Availink's document request that they were in breach of their Adopter Agreements, (2) subsequent termination notices for these Adopters, (3) internal HDMI LA termination approvals, and (4) external correspondence with the listed Adopters post-dating the termination. Taken together, these documents provide Availink with the notice and explanation of reasons for the breach, a summary of Adopters' responses or lack of responses to HDMI LA during the cure period, correspondence effectuating and explaining the termination, and any correspondence following the termination, including regarding whether to reinstate the Adopter. To illustrate, a representative breach letter indicates that adopter "failed to submit payments for Annual License Fees and/or Royalties in accordance with Section 7.1 of the Adopter Agreement." The termination letter for the same Adopter shows that it "failed to cure the breach within the notice period." The internal termination approval HDMI LA produced includes a "termination list" with notes summarizing the interactions with a terminated Adopter prior to termination (*e.g.*, "multiple reminders sent without reply"). HDMI LA's proposal would allow for expeditious production of responsive documents and facilitate depositions and any remaining fact discovery. HDMI LA's proposal therefore avoids imposing an undue burden on HDMI LA and ensures timely completion of the fact discovery schedule. The motion should be denied.

Honorable Peter H. Kang  Page 6
February 20, 2025

| | |
|---|---|
| /s/ James J. McGuire | /s/ Seth D. Greenstein |
| James J. McGuire | Seth D. Greenstein |
| GREENSPOON MARDER LLP | CONSTANTINE CANNON LLP |
| 1345 Avenue of the Americas | 1001 Pennsylvania Avenue NW |
| Suite 2200 | Suite 1300N |
| New York, NY 10105 | Washington, DC 20004 |
| 212-524-5040 | 202-204-3514 |
| james.mcguire@gmlaw.com | sgreenstein@constantinecannon.com |
| *Counsel for Availink, Inc.* | *Counsel for HDMI LA, Inc.* |

cc:    All Counsel of Record (via electronic filing)