UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AVAILINK, INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-06947-EKL (PHK)<br><br>**ORDER RESOLVING DISCOVERY LETTER BRIEFS RE CERTAIN DOCUMENT REQUESTS AND LETTERS ROGATORY**<br><br>Re: Dkts. 143-44 |

## INTRODUCTION

This case has been referred to the undersigned for discovery. *See* Dkt. 123. Now pending before the Court is Defendant's motion to compel the production of certain documents sought by its Requests for Production ("RFP") Nos. 85, 104, and 105, and concurrently, Defendant's request for issuance of two letters rogatory. [Dkts. 143-44]. The Court finds these disputes suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

As background, this is a case involving consumer electronics products which implement a technical specification, the HDMI specification. The HDMI specification is a set of technical instructions for a way to connect consumer electronic products, such as by using a connector cable (known as an HDMI cable), for the communication of high-definition signals. [Dkt. 1 at ¶¶ 8-12]. A group of companies called the "Founders" developed the HDMI specification starting in 2002. *Id.*; *see also* Dkt. 1 at ¶ 8; Dkt. 49 at ¶ 19. Plaintiff HDMI LA is the entity responsible for entering into agreements with electronics manufacturers for their use and implementation of the HDMI specification in their devices. [Dkt. 1 at ¶¶ 13-14, 19]. HDMI LA is also responsible for

enforcing HDMI trademarks, which are licensed to so-called HDMI "Adopter" companies. *Id.* at ¶¶ 14-18. HDMI enters into Adopter Agreements with these Adopter companies, under which certain licenses are granted in exchange for a royalty. Defendant Availink was a licensed HDMI Adopter company as of June/July 2015. *Id.* at ¶ 24; *see also* Dkt. 49 at ¶ 113. In 2019, HDMI LA terminated Availink as an Adopter due to alleged breaches of the Adopter Agreement. In general, this lawsuit involves disputes over alleged breaches of the Adopter Agreement and unauthorized use of HDMI trademarks, as well as counterclaims challenging the HDMI licensing program.

## LEGAL STANDARD

With regard to the scope of discovery in federal civil actions, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

# DISCUSSION

I. **RFP Nos. 85, 104, and 105**

The first letter brief presents disputes concerning Availink's motion to compel HDMI LA to produce three categories of documents, generally grouped as (1) certain documents relating to Founder meeting minutes, (2) certain documents relating to communications with Chinese government agencies investigating antitrust issues involving HDMI LA, and (3) certain documents relating to other third-party companies which were terminated as Adopters under the HDMI Adopter Agreements. [Dkt. 143].

Founder Meeting Minutes

RFP No. 105 seeks meeting minutes from the Founder companies' meetings going back to 2002. *Id.* at 1. Availink complains that HDMI LA only produced meeting minutes from the period January 1, 2015 onward. *Id.* Availink argues that the counterclaims allege that the Founders' alleged anticompetitive conspiracy started decades ago, that the Founders started working together in 2002, and that the temporal limitation on HDMI LA's production should be overruled. *Id.* at 1-2. Availink seeks not only the production of Founder meeting minutes, but also all "associated backup materials" (which are not defined but appears to refer to "presentations and memoranda") for the meetings, from 2002 to present. *Id.* at 2.

Availink states that the subject matter scope of documents sought includes documents containing "discussions of 'the HDMI Specification, the licensing of the HDMI Specification, . . . HDMI Licensing Administrator, Inc., HDMI Licensing, LLC [the predecessor to HDMI LA], the HDMI Forum, [and]the [sic] licensing of Necessary Claims [patent claims considered necessary to implement the HDMI specification].'" *Id.* Availink complains that HDMI LA limited the subject matter to only documents that include "discussions of the terms of the Adopter Agreement or the Founder Agreement." *Id.* Availink limits its motion to exclude from the requested production documents which discuss "the allocation of licensing revenue." *Id.*

HDMI LA argues that requiring the production of Founder meeting minutes (and the unspecified "backup documents" also sought by Availink) from 2002 to the present is not proportional to the needs of the case. *Id.* at 3. HDMI LA argues that it came into existence in

2017 and that it lacks complete records from its predecessor entity which were created before 2017, and on that basis argues that searching for pre-2017 documents is burdensome and "unfruitful." *Id.*

HDMI LA further notes that Availink entered into the Adopter Agreement in 2015, and on that basis argues that documents from 2015 onward are relevant and proportional (thus justifying the chronological cutoff of its production of documents). *Id.* HDMI LA asserts that it agreed to produce "specific documents in its possession (such as agreements) going back to 2002, and would perform a search for and produce documents from January 1, 2015 forward." *Id.* HDMI LA represents that it "collected the HDMI Management Committee meeting minutes in its possession, custody, and control, and has produced all minutes and supporting documents beginning in January 1, 2015" and that it "was able to locate some meeting minutes from before 2015, though none before 2008." *Id.* HDMI LA's counsel represents to the Court that "HDMI LA has no knowledge whether meeting minutes were taken in 2002, . . . but in any event, if any such minutes existed, HDMI LA does not have them in its possession custody, or control." *Id.* at 3-4. HDMI LA argues further that its search and production parameters did not exclude or limit documents as to subject matter as Availink alleges, and that HDMI did provide documents which discuss "the licensing of the HDMI Specification" and the "licensing of the Necessary Claims." *Id.* at 4.

As to the temporal scope of documents sought, the Court **DENIES** Availink's motion to compel documents going back to 2002 because that time frame is not proportional to the needs of the case. The Court assumes without deciding that some of these older Founder meeting minutes could be within the relevant scope of discovery—but relevance alone does not compel production. Discovery must also be proportional to the needs of the case. *See* Fed R. Civ. P. 26(b)(1). Here, other than stating that these early Founder meeting minutes (and undefined "backup" documents) would be highly relevant, Availink provides no explanation as to why those documents are important to resolving issues in dispute. Further, other than stating the obvious that the early documents would shed light on the early days of the alleged anticompetitive conspiracy, Availink provides no explanation as to why such early documents are more important than the post-2008

documents HDMI LA has already produced (or agreed to produce) as well as the agreements dating from 2002 also produced, much less explain why the documents sought would not be duplicative. HDMI LA has collected and produced complete Founder meeting minutes dating back to 2015 and other meeting minutes dating back to 2008. HDMI LA has stated without qualification that it does not possess meeting minutes from 2002.

HDMI LA further explains that Founder meeting minutes require careful review prior to production in order to avoid inadvertent disclosure of attorney-client communications, which (given the nature of the HDMI licensing program) would be reasonably expected to be found in some of these documents. [Dkt. 143 at 4]. While such concerns could be alleviated with a clawback order specific to this production, that concern still raises the possibility of delay and burden, including the possibility of further disputes over privilege issues. Unpersuasively, Availink asserts that, if HDMI LA is correct that few if any pre-2015 documents exist in its possession, then the burden of production should be low. *Id.* at 2. However, that argument ignores the time, effort, and burden required to perform a new legally reasonable search for the documents in the first place. Availink does not explain why the benefits of the particular documents sought outweigh these burdens, particularly given that HDMI LA has collected and produced over ten years' worth of documents. Availink has not met its burden to show that requiring a search, collection, processing, and production of documents from 2002 onward—where the existence of such documents in HDMI LA's files is uncertain at best and where the scope of "backup documents" is vague—are discovery tasks which are proportional to the needs of the case.

With regard to the subject matter scope of Founder meeting documents to be produced, the record presented to the Court indicates that HDMI LA did not limit the subject matter to the limited scope Availink complains of. HDMI LA represents that it did produce Founder meeting minutes and backup documents which (1) discuss the reasons, purposes, or effects of the terms of the Adopted Agreement or the Founder Agreement, (2) discuss the licensing of the HDMI Specification, and (3) discuss the Licensing of the Necessary Claims. *Id.* at 4. While HDMI LA states that it collected all Founder meeting minutes from 2015 onward, as well as some from 2008

6

onward, it appears that HDMI LA excluded from production documents which discuss other topics sought by Availink: those which discuss (1) the HDMI Specification itself, (2) HDMI LA itself or its predecessor HDMI Licensing, LLC, or (3) the HDMI Forum (an organization which works on next generations of the HDMI Specification).

Because the dispute between the Parties concerns the licensing of the HDMI Specification and because HDMI LA and its predecessor are or were the specific entities tasked with carrying out those licensing efforts, Founder meeting minutes (and presentations and memoranda used at or discussed at those meetings) which are directed to licensing would be within the scope of relevance for discovery purposes. Because HDMI LA and its predecessor were responsible for licensing, it follows that Founder meeting minutes which discuss HDMI LA or its predecessor are within the scope of relevance for discovery purposes.

However, documents which might generally discuss the HDMI Specification or the HDMI Forum, without further limitations on subject matter, are likely to encompass an overly broad range of irrelevant or at best marginally relevant documents. Availink fails to explain why the HDMI Forum in particular is relevant for purposes of this motion to compel. Because the HDMI Forum is directed to developing newer versions of the HDMI Specification, it is unclear and unexplained why Founder meeting minutes for the HDMI Forum would be proportional to the needs of the case. Similarly, the HDMI Specification is a highly technical document which, like most technical specifications and standards, would run hundreds of pages long, is updated periodically, and shared with Adopters widely. Availink has not argued why Founder meeting minutes that happen to discuss the HDMI Specification in any way would be proportional to the needs of the case. Accordingly, Availink's motion to compel production of such documents is not shown to be within the proper scope of relevance for purposes of discovery, nor are such broad topics proportional to the needs of the case.

Accordingly, the Court **GRANTS IN PART** Availink's motion with regard to some of the subject matter scope of documents to be produced. As discussed above, HDMI LA need not perform a new search for Founder meeting minutes (or backup documents) for the time period prior to 2008. However, of the documents already searched for and collected by HDMI LA,

7

1  HDMI LA is **ORDERED** to re-review (using keywords, manual review, or any other reasonable
2  procedure) and produce any non-privileged documents which were not already produced and
3  which discuss either HDMI LA or HDMI Licensing, LLC.

<u>Chinese Government Agencies</u>

The next dispute centers on Availink's request for documents relating to HDMI LA's communications with Chinese government agencies investigating antitrust issues involving licensing of the HDMI Specification. [Dkt. 143 at 2]. Availink argues that its RFP No. 104 seeks non-privileged communications between Chinese government entities and HDMI LA. *Id.* The Parties agree that two Chinese agencies are at issue: the National Development and Reform Commission (NDRC)—which initiated an investigation based on a complaint by the Chinese Video Industry Association (CVIA)—and the State Administration for Market Regulation (SAMR). *Id.* at 2, 4. Availink argues that, in a prior motion to disqualify Availink's previous counsel, HDMI LA admitted that the NDRC investigation's subject matter overlapped with the current issues in dispute here. *Id.* at 2. Availink complains that HDMI LA only agreed to produce its correspondence and presentations to the industry association which initiated the complaint in China, the CVIA, relating to that NDRC investigation. *Id.* Availink seeks an order confirming HDMI LA should produce at least what it agreed to produce (correspondence with the CVIA), as well as compelling the production of all correspondence with and presentations made to the NDRC and SAMR in connection with their respective investigations, the CVIA complaint which allegedly initiated the NDRC investigation, and the alleged settlement agreement between HDMI LA and the CVIA (which apparently resolved the NDRC investigation). *Id.* at 2-3.

HDMI LA argues that the NDRC and SAMR investigations and the settlement with the CVIA are all irrelevant because the antitrust laws of China use different legal standards than United States law. *Id.* at 4. Further, HDMI LA argues that it entered into "express, mutual assurances of confidentiality" with the NDRC and SAMR, citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) as support for why production should not be compelled in light of those confidentiality concerns. *Id.*

Whether documents subject to foreign secrecy laws are subject to disclosure in discovery

8

requires a multi-factor analysis which ultimately weighs the foreign government's secrecy interests against the interests of the United States and the moving party in obtaining the information.  *See Richmark*, 959 F.2d at 1474 (discussing *Societe International Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197 (1958)).  Factors relevant in deciding whether foreign statutes excuse noncompliance with discovery orders include: the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.  *Id.* at 1475 (quotation marks and citation omitted).  Other relevant factors include "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person," and "the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."  *Id.* (citation omitted)

       While HDMI LA refers to "assurances of confidentiality," nowhere in HDMI LA's briefing does it allege that Chinese law, statute, regulation, or court order impedes the production of the documents sought.  And while HDMI LA cites *Richmark*, HDMI LA's briefing notably ignores discussion of the relevant factors, except for the confidentiality "assurance" as a factor opposing the production.  [Dkt. 143 at 4-5].  As an initial matter, HDMI LA has not supported its objection by citing to *Richmark*, because it is questionable whether the "foreign law" concerns and factors in *Richmark* even apply here.

       Even assuming the *Richmark* factors applied in this case, Availink has sufficiently demonstrated that the facts here warrant production of the documents and HDMI LA has failed to persuasively oppose the production.  Unlike the parties opposing discovery in *Richmark* and *Societe Internationale*, HDMI LA here does not allege that it would be subject to prosecution by Chinese authorities if it produced the documents, nor has any Chinese agency filed anything with this Court indicating concern (much less opposition to) the production sought here.  "In disputes such as this one, the Ninth Circuit has made clear, 'The party relying on foreign law has the

burden of showing that such law bars production.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2015 WL 13756256, at *3 (N.D. Cal. Dec. 17, 2015) (citing *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981)). Indeed, the record presented here is much like the situation in *CRT Antitrust*, where the parties opposing the discovery cited "no secrecy law, foreign statute, or other governmental statement pertaining to the discovery sought;" there was "no objection or expression of interest in the underlying motions to compel from any foreign authority;" and where, absent such authority, it was "nearly impossible for the Court to prevent discovery given that . . . the 'balance of national interests' is 'the most important factor.'" *Id.* (citing *Richmark*, 959 F.2d at 1477). Here, as in *CRT Antitrust*, the party opposing discovery has failed to meet its burden to demonstrate that foreign law bars the production.

While HDMI LA offers to submit declarations to further explain the "mutual assurances of confidentiality," the Court assumes that such assurances exist, and thus, that the Chinese agencies expressed an interest to keep the documents confidential at the time. However, the Court notes that HDMI LA established previously in this very case that the NDRC investigation dates back to at least 2013. *HDMI Licensing Admin., Inc. v. Availink Inc.*, 730 F. Supp. 3d 1026, 1029 (N.D. Cal. 2024) ("In 2013, King & Wood represented Plaintiff [HDMI LA] as local counsel in connection with an investigation and ultimate settlement involving allegations that Plaintiff's Adopter Agreement violated China's Antimonopoly Law."). That NDRC investigation appears to have settled in or around 2016. *See* HDMI Licensing in talks with China Video Industry Association to resolve antitrust issues in China, MLex, https://www.mlex.com/mlex/articles/2069952/hdmi-licensing-in-talks-with-china-video-industry-association-to-resolve-antitrust-issues-in-china (last visited Mar. 11, 2025). And the SAMR investigation dates back to 2018-2019. [Dkt. 143 at 2]. There is no showing by HDMI LA that these Chinese agencies consider HDMI LA's correspondence from those investigations—resolved over seven years ago—to be confidential today.

Further, the Court notes that there appear to be no other sources for (and insufficient time left in the fact discovery period for) Availink to seek this correspondence by any third-party discovery. The NDRC and SAMR are outside this Court's geographic range for subpoenas. And

presumably HDMI LA, which is based in the United States, would (either itself or through its counsel) have possession or control over its correspondence with these agencies. *See Richmark*, 959 F.2d at 1474 (identifying factors for considering compelling discovery to include "whether the information originated in the United States" and "the availability of alternative means of securing the information"). Because the information here originated in the United States and there also appear to be no identifiable alternative sources for this information, these factors favor compelling the production. Certainly, HDMI LA fails to argue otherwise.

Additionally, the request here is reasonably specific, which further favors compelling production: Availink seeks HDMI LA's correspondence with and presentations made to the NDRC and SAMR in connection with the two identified antitrust investigations, as well as the documents involving the CVIA which HDMI LA already committed to produce—namely, the settlement agreement with the CVIA which settled the NDRC investigation, changes to the Adopter Agreement implemented as a result of the CVIA settlement, and correspondence between HDMI LA and the CVIA after the settlement was executed. [Dkt. 143 at 2-3, 5]. The specificity here further favors compelling the production. *Richmark*, 959 F.2d at 1474 (identifying factors to include "the degree of specificity of the request").

Finally, to the extent HDMI LA relies exclusively on the alleged confidentiality concerns, those concerns are mitigated by the existence of the Protective Order in this matter. *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2025 WL 470482, at *6 (N.D. Cal. Feb. 12, 2025). HDMI LA fails to address why the Protective Order here is inadequate to satisfy any such confidentiality concerns, and fails to argue whether the Protective Order is inadequate to address any such concerns. Indeed, one of the purposes of a protective order is to maintain the confidentiality of and prevent the unwarranted dissemination of otherwise confidential information. Again, as with HDMI LA's failure to address the *Richmark* factors, this failure by HDMI LA to address the Protective Order's applicability undercuts its objections to the motion to compel.

Accordingly, the Court **GRANTS** Availink's motion as discussed herein.

Third-Party Companies Terminated as Adopters

Availink also moves to compel HDMI LA to produce documents concerning other third-party companies which were terminated as Adopters under the HDMI Adopter Agreements. [Dkt. 143 at 3]. Availink argues that its RFP No. 85 seeks correspondence and internal documents regarding the termination of other companies as Adopters. *Id*. Availink narrows its request here to seek production now only of the final termination notice and correspondence, as well as "documents related to the terminated company (including internal discussions) for the period starting 60 days prior to the termination and thereafter." *Id*. Availink argues that those other third-party companies are analogous to Availink because they are "situated exactly as is Availink, making discovery regarding how HDMI LA dealt with the listed entities highly relevant." *Id*.

HDMI LA notes that the request encompasses twenty-three other companies and argues that the burden of producing the entire range of documents sought is undue (and presumably not proportional to the needs of this case). *Id.* at 5. HDMI LA has committed to produce, as a compromise, "(1) letters informing the Adopters listed in Availink's document request that they were in breach of their Adopter Agreements, (2) subsequent termination notices for these Adopters, (3) internal HDMI LA termination approvals, and (4) external correspondence with the listed Adopters post-dating the termination." *Id*.

While Availink has offered to narrow its request as discussed above, nowhere in its briefing does Availink expressly argue why even that scope of discovery is proportional to the needs of the case. Even assuming without deciding that the discovery sought would be within the scope of relevance for discovery, as noted above, that alone does not end the inquiry—the discovery sought must also be proportional to the needs of the case. *See S.H. Silver Co. v. Sentinel Ins. Co.*, No. 24-cv-00017-AMO (PHK), 2025 WL 517741, at *5 (N.D. Cal. Feb. 18, 2025) (citing Fed. R. Civ. P. 26(b)(1)) ("[R]elevance alone does not end the inquiry; relevant discovery must also be proportional to the needs of the case."). Here, the temporal scope of the documents (including HDMI LA's internal documents) sought by Availink are unlimited with regard to the period after any termination of any of the third parties—Availink's narrowing of the temporal scope only applies to the past period, not the future. While Availink argues that HDMI LA refuses

to produce "internal discussions" regarding terminations and refuses to produce documents on the "potential for reinstatement" and "reasons for reinstatement," given the potentially broad temporal scope of Availink's request, the failure to address proportionality in its briefing undercuts Availink's motion.  Further, HDMI LA represents that its proposed compromise scope (which include post-termination correspondence) will not impose undue burden while also providing Availink "with the notice and explanation of reasons for the breach, a summary of Adopters' responses or lack of responses to HDMI LA during the cure period, correspondence effectuating and explaining the termination, and any correspondence following the termination, including regarding whether to reinstate the Adopter."  [Dkt. 143 at 5].  Availink's briefing does not directly address HDMI LA's arguments, which include a detailed explanation as to why the documents HDMI LA agrees to produce would address Availink's purported need for the discovery within the bounds of proportionality.

Accordingly, Availink's motion to compel is **GRANTED IN PART**.  The Court **ORDERS** HDMI LA to produce (1) all letters informing the Adopters listed in Availink's document request that they were in breach of their Adopter Agreements, (2) all subsequent termination notices for these Adopters, (3) all internal HDMI LA termination approvals, and (4) all external correspondence with the listed Adopters post-dating the termination including but not limited to all correspondence regarding the potential for or any actual reinstatements of any Adopters.  Availink's motion is **DENIED** in all other respects because the Court finds that Availink has failed to demonstrate why the broad scope of documents sought under RFP No. 85 (even as narrowed by Availink for purposes of this motion) would be proportional to the needs of the case.

## II.   Letters Rogatory

The Parties' second joint letter brief concerns Availink's request for the issuance of two letters rogatory seeking documents from entities located in Europe.  [Dkt. 144].  The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 8, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Hague Convention"), provides a procedure under which a federal district court may transmit a "letter of request" seeking evidence abroad, addressed to the

1    Central Authority of another Contracting Party to the Hague Convention for execution. *See* Hague

2    Convention, Art. 2; 28 U.S.C. § 1781(b)(2).

3          Here, Availink seeks letters rogatory directed to the judicial authorities of France (in order

4    to obtain their assistance to obtain certain documents from a company called Vantiva SA) and the

5    Netherlands (in order to obtain their assistance to obtain certain documents from a company called

6    Koninklijke Philips N.V.). [Dkt. 144 at 2]. The United States, France, and the Netherlands are all

7    signatories to the Hague Convention. *See* Hague Conference on Private International Law, Status

8    Table for the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or

9    Commercial Matters, available at https://www.hcch.net/en/instruments/conventions/status-

10   table/?cid=82 (last visited March 11, 2025). The requested letters rogatory seek certain meeting

11   minutes (and related documents such as presentations at the meetings) of meetings from 2002 to

12   2014 of the so-called "Founders," a group of companies (which includes Vantiva and Philips)

13   which developed the HDMI specification starting in 2002. [Dkt. 144 at 2]. The requested letters

14   rogatory also seek documents relating to antitrust investigations in China concerning HDMI

15   Licensing, LLC (the predecessor entity to Plaintiff HDMI LA). *Id.* Availink argues that the

16   documents it seeks are relevant to its antitrust counterclaims in this suit. *Id.*

17         HDMI LA filed its Complaint in this action on November 7, 2022, alleging that Availink

18   breached its obligations under the HDMI Adopter agreement entered into in 2015. [Dkt. 1].

19   Availink filed its Answer and Counterclaims on September 1, 2023. [Dkt. 49]. The original fact

20   discovery cutoff date was August 26, 2024. [Dkt. 67]. By Order dated May 15, 2024, the fact

21   discovery cutoff date was extended to March 26, 2025. [Dkt. 108]. All discovery issues and

22   disputes were referred to the undersigned on August 19, 2024. [Dkt. 123].

23         Availink first made this request for letters rogatory by a motion filed on February 7, 2025.

24   [Dkt. 136]. Because Availink failed to file this request in conformity with this Court's discovery

25   dispute resolution procedures, on February 12, 2025, the undersigned denied Availink's motion.

26   [Dkt. 138]. The Court ordered the Parties to meet and confer promptly and then file a joint letter

27   brief if the dispute remained unresolved. *Id.* The Parties met and conferred on February 17, 2025,

28   but were unable to resolve this dispute. [Dkt. 144 at 1]. The Parties filed the instant joint letter

brief on February 24, 2025. *Id.*

Between the time this dispute was first raised and the filing of the instant letter brief, on February 12, 2025, the Parties filed a Joint Updated Case Management Conference Statement. [Dkt. 140]. In that filing, Availink requested that the District Judge extend the fact discovery cutoff by ninety days, arguing in part that the extension was justified because of the instant dispute regarding the letters rogatory now sought. *Id.* at 4. At the CMC held on March 5, 2025, the District Judge granted a thirty-day extension of fact discovery. [Dkt. 146]. Thus, the current fact discovery cutoff date is April 25, 2025.

From this chronology and background, the following are evident: Availink has been aware of the HDMI Specification, the HDMI trademarks, and the Adopter Agreement since 2015. From the date Availink first raised its antitrust counterclaims in this case, there was approximately one and a half years for the fact discovery period. At a general level, Availink's counterclaims allege that the Founders and HDMI LA have "engaged in decades-long conspiratorial conduct to restrain competition relating to devices using the HDMI standard." [Dkt. 144 at 2]. Availink argues that the Founder meeting documents sought from the two Founder companies in Europe "will shed light on the reasons, purposes, and effects of the challenged [HDMI Adopter Agreements]" and the documents relating to the Chinese antitrust investigations "involved many of the same types of claims asserted by Availink against HDMI LA." *Id.* at 2-3. Availink argues that although it has attempted to obtain discovery of these same categories of documents directly from HDMI LA and by using Rule 45 subpoenas directed to the United States subsidiaries of the Founder companies, it has not received in response to those discovery efforts all the documents it now seeks. *Id.* at 2.

For purposes of resolving the instant dispute, the Court assumes without deciding that the documents Availink seeks are within the scope of relevance for purposes of discovery. The flaw underlying Availink's request is the lack of proportionality. As discussed above, even if the discovery sought is relevant, that does not end the inquiry—the discovery must also be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In particular, in evaluating proportionality, the Court must consider the importance of the discovery sought *vis-a-vis* the issues at stake in the action, the importance of the discovery in resolving the issues, and whether

the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

As detailed above, Availink does not presently argue that the Founder meeting documents are vital, critical, or even important to *resolve* Availink's counterclaims. Rather, Availink argues that the discovery sought is "distinctly relevant" to its counterclaims and that "[t]hese materials will shed light on" the challenged HDMI licensing agreements. [Dkt. 144 at 2]. Availink has been pressing its counterclaims for over a year and a half—if these Founder meeting documents were important to resolving Availink's counterclaims (and not merely relevant), then Availink surely would have sought letters rogatory long ago.

Similarly, Availink fails to argue that the documents regarding the China antitrust matters are vital, critical, or in any identified way important to *resolving* Availink's antitrust counterclaims here. *Id.* at 3. Availink represents that the claims and legal issues overlap between the Chinese actions and its counterclaims, which may establish relevance. *Id.* But notably absent from Availink's briefing is any detailed argument as to why these documents are important to resolving its counterclaims.

The amount of time that it typically takes for foreign judicial authorities to process letters rogatory is well-known. The United States Department of State website notes that "[e]xecution of letters rogatory may take a year or more." *See* Preparation of Letters Rogatory, U.S. Department of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last visited March 11, 2025). The State Department's Foreign Affairs Manual further notes that "[l]etters rogatory *may* take from 6 months to a year to execute, *and foreign courts are under no obligation to execute them.*" *See* 7 Foreign Affairs Manual (FAM) § 931.1, available at https://fam.state.gov/fam/07fam/07fam0930.html (emphasis in original). The undersigned has personal experience seeking discovery of documents via letters rogatory and—while admittedly anecdotal—that experience is wholly consistent with the State Department's guidance on the issue.

Issuing the letters rogatory here would require Availink, the French judicial authorities, and the responding foreign third parties to engage in burdensome efforts to somehow seek to

expedite processing the requests and obtaining any documents within the short time remaining in the fact discovery period (even as extended).  Because the time for compliance with a letter rogatory is likely at least six months, the Court is cognizant that issuing the letters rogatory here would impose substantial burdens on all entities involved, including the foreign judicial authorities and government officials, as well as the third-party Founder companies, with no indication as to the benefits of proceeding with the letters rogatory other than the potential receipt of potentially relevant (but not important) documents.

Availink's briefing does not discuss the burdens at all and, at best, posits that the potential to receive relevant documents would be the benefit.  However, Availink admits that it has received some Founder meeting minutes and documents in discovery from HDMI LA (although not the full universe of documents now sought).  [Dkt. 144 at 2].  With regard to at least the Founder meeting documents, Availink has failed to demonstrate why the letters rogatory seek documents whose importance outweighs the burdens of the letters rogatory, particularly where at least some discovery has already been received.

Accordingly, in light of the circumstances and the record presented, the Court **FINDS** that Availink has failed to meet its burden to demonstrate that the requested letters rogatory are proportional to the needs of the case.  Availink has not shown (and failed to expressly establish) that the documents sought are sufficiently important to resolve the issues raised by the counterclaims, nor has Availink shown that the burdens involved in the letters rogatory would be outweighed by the benefits of the discovery sought.

HDMI LA argues that the request for the letters rogatory should be denied because of the untimeliness of the request, in light of the discovery cutoff date.  *Id.* at 3-4.  Civil Local Rule 37-3 states that "[d]iscovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown."  Here, Availink filed its initial motion seeking issuance of the letters rogatory on February 7, 2025.  [Dkt. 136].  That motion was denied.  [Dkt. 138].  The instant joint letter brief was filed on February 24, 2025.  [Dkt. 144].  Availink has been aware of the identities of the Founders, aware of the issues raised by its counterclaims, and aware of any need for discovery from Vantiva and Philips for well

over a year. Availink does not explain why it waited until the end of fact discovery to raise this issue, other than to make irrelevant arguments about HDMI LA's alleged delay in producing its own documents. There was nothing in HDMI LA's responses to discovery which impeded Availink from seeking letters rogatory much earlier during the fact discovery period, and under Rule 26, Availink was always free to seek discovery using alternative methods. *See* Fed. R. Civ. P. 26(d)(3)(A) ("Unless the parties stipulate or the court orders otherwise . . . methods of discovery maybe used in any sequence[.]"). Even giving Availink the full benefit of the doubt and crediting the February 7, 2025 filing as the date for considering whether this issue was timely raised, that February 7, 2025 filing gave less than two months from the then-effective discovery cutoff deadline for a response to letters rogatory which would take six months to a year (or more) for compliance. Even if the Court was to consider the newly extended April 25, 2025 discovery cutoff date as operative, the February 7, 2025 filing afforded less than three months for a response to the letters rogatory. Even under the most leniently construed timeline, the letters rogatory would result in responses after the fact discovery cutoff (even as extended). Accordingly, Availink's request for issuance of letters rogatory is untimely. *See* Civil L.R. 37-3; *see also Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 8231158, at *3 (N.D. Cal. Dec. 19, 2016).

Finally, the Court is fully cognizant that Availink raised this request for these letters rogatory shortly in advance of its request in the Updated CMC Statement to extend the fact discovery deadline by ninety days (which would likely have required extending other case deadlines, including potentially delaying trial). In the CMC Statement, Availink expressly argued to the District Judge that this very dispute was one of the reasons justifying pushing out the case deadlines yet again (as noted above, the fact discovery cutoff had already been extended previously once before in this case). The Court is not blind to the tactical use made by Availink's timing of raising this dispute. As noted above, the Court has broad discretion to manage the timing and sequence of discovery. In the exercise of its discretion, the Court concludes that denial of the motion is appropriate, in light of the belated filing of the motion coupled with the use of the motion to argue for delaying the case further.

**CONCLUSION**

As discussed above, under applicable legal standards, the Court has broad discretion to manage discovery, including scheduling and timing issues. In the full exercise of the Court's discretion, the Court accordingly **ORDERS** as follows:

1) Availink's motion to compel the production of certain documents in response to RFP Nos. 105, 104, and 85 [Dkt. 143] is **GRANTED IN PART** and **DENIED IN PART**, as discussed herein.

2) Availink's request for issuance of certain letters rogatory [Dkt. 144] is **DENIED**.

As a final note to counsel—The Parties should focus on completing discovery soon in this case. The District Judge made clear that no further extensions for fact discovery will be granted. [Dkt. 146]. The Court accordingly encourages the Parties to use their efforts and resources focused on completing discovery and to work diligently to negotiate and attempt to resolve any discovery disputes going forward. The Court may consider consequences for demonstrated failures to reasonably and professionally negotiate disputes that experienced counsel are normally expected to resolve without the need for judicial intervention. For example, the Court may consider imposing additional meet and confer procedures for future discovery disputes, including but not limited to requiring any counsel directly involved in any of the meet and confers to meet and confer in person; requiring in-person meet and confers by lead trial counsel with no other attorneys present regardless of lead counsels' geographic proximity; requiring meet and confers to take place in-person at the San Francisco courthouse or other location; requiring in-house counsel, a Party, or Party representatives (including officers and/or directors) to attend all meet and confers; and/or any other procedures the Court deems appropriate in the circumstances.

This **RESOLVES** Dkts. 143 and 144.

**IT IS SO ORDERED.**

Dated: March 13, 2025

_____
PETER H. KANG
United States Magistrate Judge