JAMES J. MCGUIRE (admitted *pro hac vice*)
james.mcguire@gmlaw.com
GREENSPOON MARDER LLP
1345 Avenue of the Americas, Suite 2200
New York, NY 10105
Telephone: (212) 524-5040
Facsimile: (212) 524-5050

SEAN P. GATES (Cal. Bar. No. 186247)
sean@illovskygates.com
ILLOVSKY, GATES & CALIA LLP
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
Telephone: (626) 508-1715
Facsimile: (626) 508-1730

ELLEN LONDON (Cal. Bar No. 3255580)
elondon@londonstoutlaw.com
LONDON & NAOR P.C.
1999 Harrison Street, Suite 655
Oakland, CA 94612
Telephone: (415) 862-8494
Facsimile: (415) 573-0995

*Attorneys for Defendant and Counterclaimant Availink Inc.*

JANET SATTERTHWAITE
jsatterthwaite@potomaclaw.com
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 204-3005
Facsimile: (202) 318-7707

*Trademark Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>AVAILINK INC.,<br><br>Defendant and Counterclaimant. | Case No. 5:22-cv-6947-EKL<br><br>**AVAILINK INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF LAW PROFESSOR JORGE L. CONTRERAS**<br><br>Hearing Date: October 15, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 7, Fourth Floor<br>Judge: Hon. Eumi K. Lee |

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on October 15, 2024, at 10:00 a.m. in Courtroom 7, Fourth Floor of the United States District Court for the Northern District of California, San Jose division, before the Honorable Eumi K. Lee, Defendant/Counterclaimant Availink Inc. ("Availink"), by and through undersigned counsel, will, and hereby does, move for an Order precluding all of the opinions of Prof. Jorge L. Contreras. Prof. Contreras's opinions must be excluded because they are legal conclusions, involve the application of legal authorities and principles to the facts of the case, or he lacks the expertise required to offer the opinions.

Availink's motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Sean Gates, Esq., dated August 13, 2025, and Exhibits annexed thereto; [Proposed] Order submitted herewith; and the remainder of the record of this matter. Availink respectfully requests an order pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993), precluding Prof. Contreras offering any opinions in this case.

Dated: August 15, 2025

Respectfully submitted,
GREENSPOON MARDER LLP

  /s/ James J. McGuire
James J. McGuire

*Attorneys for Defendant and Counterclaimant Availink Inc.*

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................................... 1

III. LEGAL STANDARD ........................................................................................................... 3

IV.  ARGUMENT ........................................................................................................................ 4

   A. Prof. Contreras Should Be Precluded from Testifying that HDMI Specifications Contain Trade Secrets ................................................................................................ 4

   B. Prof. Contreras Should Be Precluded from Testifying that the HDMI Adopter Agreement is "Reasonable," "Customary," or "Procompetitive." ............................ 6

   C. Prof. Contreras Should Be Precluded from Testifying that the Trademark Discount Structure Is a "Well-Known Promotional Strategy," "Procompetitive," or "Beneficial to Consumers." ............................................................................. 8

   D. Prof. Contreras Should Be Precluded from Testifying that the Different Terms Offered to Chinese Adopters and Non-Chinese Adopters Are "Nondiscriminatory," "Justified," or Not "Actionable." .................................... 9

V.   CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
  966 F.2d 443 (9th Cir. 1992) .................................................................................... 3, 4, 5, 10

*AirWair Int'l Ltd. v. Pull & Bear Espana SA*,
  2021 WL 2914082 (N.D. Cal. July 12, 2021) ..................................................................... 10

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
  2018 WL 8949299 (N.D. Cal. June 15, 2018) ...................................................................... 6

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) ................................................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................... 3

*Elsayed Mukhtar v. Cal. State Univ. Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ............................................................................................... 3

*Gable v. Nat'l Broad. Co.*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ...................................................................... 4, 5, 7, 8

*Google RTB Consumer Privacy Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ........................................................................ 5

*LD v. United Behavioral Health*,
  2023 WL 2806323 (N.D. Cal. Mar. 31, 2023) ...................................................................... 7

*Nationwide Transport Finance v. Cass Information Systems, Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ......................................................................................... 3, 10

*Pinal Creek Grp. v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ................................................................................... 7

*PolyOne Corp. v. Lu*,
  2018 WL 4679577 (N.D. Ill. Sept. 28, 2018) ....................................................................... 4

*Roblox Corp. v. WowWee Group Limited*,
  2024 WL 4057418 (N.D. Cal. Sept. 3, 2024) ................................................................ 4, 5, 7

*Skycam, Inc. v. Bennett*,
  2011 WL 2551188 (N.D. Okla. June 27, 2011) ................................................................... 4

*Sportvision, Inc. v. SportsMEDIA Tech. Corp.*,
  2005 WL 8177792 (N.D. Cal. Apr. 12, 2005) .................................................................. 1, 4

*Stilwell v. Smith & Nephew, Inc.*,
  482 F.3d 1187 (9th Cir. 2007) ............................................................................................... 3

*United States v. Brodie*,
  858 F.2d 492 (9th Cir. 1988) ................................................................................................. 3

*United States v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) ............................................................................................. 3, 4, 5, 8

**Rules**

Federal Rule of Evidence 702 ................................................................................................... 3

## I. INTRODUCTION

Federal courts "typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Sportvision, Inc. v. SportsMEDIA Tech. Corp.*, 2005 WL 8177792, at *2 (N.D. Cal. Apr. 12, 2005) (collecting cases). Here, HDMI LA seeks to offer the opinions of law professor Jorge L. Contreras interpreting what he believes is the relevant law and how that law should apply to the facts of this case. He seeks to offer legal conclusions based on his application of (1) positions taken by antitrust enforcement authorities in business review letters, (2) government antitrust enforcement guidelines, (3) licensing case law, and (4) legal propositions discussed in law review articles to the facts of this case. Further, he offers opinions on technical and economic issues, for which he has no expertise.

A long line of cases establishes that the law needs only one spokesperson—this Court, and that it is for the jury—not experts—to apply the law to the facts. Experts may only assist the jury to understand the factual evidence, a task for which they need the relevant knowledge, skill, experience, training, or education. Law professors cannot walk jurors (or the court) through the application of case law, the opinions of antitrust regulators on legal matters, or the application of legal principles to the facts. Nor may they offer opinions on technical and economic issues for which they have no training. The Court should preclude Prof. Contreras's opinions.

## II. FACTUAL BACKGROUND

Prof. Contreras is a lawyer by training. He was in private practice at WilmerHale and its predecessor firms from 1992 through 2009, where he "practiced transactional intellectual property law." (Ex. 1 [Contreras Report] ¶¶ 6, 14.)[1] Since 2010, he has been a law professor. (Ex. 1 ¶¶ 8-9.) He is currently the James T. Jensen Endowed Professor for Transactional Law and the Director of the Program on Intellectual Property and Technology Law at the University of Utah S.J. Quinney College of Law. (Ex. 1 ¶ 9.) He has published a law school case book regarding intellectual property licensing and describes himself as a "leading international authority on the law of technical standardization." (Ex. 1 ¶¶ 17-18.) He has published scholarly work on such legal topics in many law journals. (Ex. 1 ¶ 19.)

---

[1] All exhibit references are to the Declaration of Sean P. Gates in Support of Motion to Exclude Expert Testimony of Law Professor Jorge L. Contreras.

In this case, Prof. Contreras seeks to offer the overall conclusion that the licensing program administered by HDMI LA through a standard-form license (the "Adopter Agreement") does "not give rise to any claim for breach of contract, anticompetitive conduct, or discrimination." (Ex. 1 ¶ 102.) This opinion, in turn, is based on four subsidiary opinions that:

1. the HDMI Specifications "embody valuable proprietary information," including "trade secrets" (Ex. 1 ¶¶ 24, 99);

2. based on his reading of a handful of other licenses, the terms of the HDMI Adopter Agreement "are reasonable and customary" in the "industry" and "reflect procompetitive practices that have been recognized by U.S. antitrust enforcement agencies" (Ex. 1 ¶¶ 26, 100);

3. HDMI LA's trademark discount program is a "well-known promotional strategy" and is "both procompetitive and beneficial to consumers" (Ex. 1 ¶¶ 27, 94-95); and

4. the HDMI LA licenses are "non-discriminatory," as that term is defined in the case law, and that differences in the licenses given to Chinese licensees were "justified" to "secure legal compliance in a major market" such that the differences do not discriminate "against non-Chinese Adopters in any actionable manner." (Ex. 1 ¶¶ 25, 28, 101.)

Prof. Contreras repeats these opinions throughout both his opening and rebuttal reports. (*See*, *e.g.*, Ex. 1 ¶¶ 58, 60, 64, 65, 68, 79, 85; Ex. 2 [Contreras Rebuttal Report] ¶¶ 2, 12, 18, 24-26, 33-35, 37, 41, 51.)

In support of his opinions, Prof. Contreras cites law review articles, case law, and legal authorities published by antitrust regulators (such as business review letters, guidance, and reports). (*See, e.g.*, Ex. 1 nn. 3-4, 6-7, 16-17, 20-22, 25-27, 30, 40, 46, 48-50, 53, 56-67, 75-85, 88, 93, 95, 99, 100; *see also* Ex. 3 [Contraras Deposition] at 194:2-10.) But his factual investigation was limited to reviewing contracts and deposition testimony. He did not conduct any interviews of market participants. (Ex. 3 at 115:7-15.) He did not determine how the contracts he reviewed were actually carried out in practice. (Ex. 3 at 68:1-69:15.) He did not study any of the patents necessary to the HDMI Specifications or the various versions of the Specifications. (Ex. 3 at 76:1-77:9, 90:24-92:20.)

Other than the legal precedent he cited, Prof. Contreras provided no study or calculation to support his opinions. He did not conduct any empirical study. (Ex. 3 at 115:7-116:7.) He made no effort to calculate the value of the various provisions available to Chinese licensees, to calculate the value of the numerous necessary patents that have expired since 2002, or to justify why it was appropriate for the HDMI

royalty rate for electronic components to remain constant since 2002. (*See*, *e.g.*, Ex. 3 at 73:22-75:2, 129:4-130:9, 132:2-20, 135:10-136:14, 139:13-19.)

### III. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The Rule, thus, "embodies the twin concerns of reliability... and helpfulness." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (internal quotations omitted). Accordingly, expert testimony is admissible only if the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). To qualify as an expert, therefore, "a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (quoting Fed. R. Evid. 702).

"[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.*, an opinion on an ultimate issue of law." *Elsayed Mukhtar v. Cal. State Univ. Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law."). This is because experts are to "interpret and analyze factual evidence"; "it is the judge's duty to inform the jury about the law that is relevant to their deliberations." *United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988). Applying these principles, the Ninth Circuit has routinely upheld the exclusion of expert testimony containing legal conclusions and explanations. *See*, *e.g.*, *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1057-59 (9th Cir. 2008) (affirming exclusion of "legal explanations and conclusions" from UCC expert); *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir. 1992) ("district court properly excluded" expert opinions that workers' reliance was "reasonable" and "foreseeable").

## IV. ARGUMENT

The Court should exclude Prof. Contreras's opinions. While Rule 702 provides for the admission of expert testimony to assist the trier of fact in understanding the evidence or to determining a fact in issue, "matters of law" are "for the court's determination" and are "inappropriate subjects for expert testimony." *Aguilar*, 966 F.2d at 447. Under these well-established rules, "federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Sportvision, Inc.*, 2005 WL 8177792, at *2. Moreover, Prof. Contreras does not have "knowledge, skill, experience, training, or education" necessary to help the jury understand the evidence for the few opinions he offers that are not legal conclusions. *Chang*, 207 F.3d at 1172; *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833-35 (C.D. Cal. 2010).

### A. Prof. Contreras Should Be Precluded from Testifying that HDMI Specifications Contain Trade Secrets.

Prof. Contreras opines that the HDMI Specifications "embody valuable proprietary information," including "trade secrets" (Ex. 1 ¶ 99), and that the HDMI Specifications are "protected by trade secret law." (Ex. 3 at 82:11-16.)  He further explains, "[I]n my view at least HDMI Specification 1.4b, all versions of the HDMI 2.x Specification, and all versions of the [HDMI Compliance Test Specification] ***legally constitute*** confidential and proprietary information and trade secrets. (Ex. 1 ¶ 51 (emphasis added).) These are inadmissible legal conclusions. *See, e.g.*, *Roblox Corp. v. WowWee Group Limited*, 2024 WL 4057418, at *8-9 (N.D. Cal. Sept. 3, 2024) (excluding law professor's testimony about whether Roblox had "legally protectible trade dress"); *PolyOne Corp. v. Lu*, 2018 WL 4679577, *9 (N.D. Ill. Sept. 28, 2018) (expert not permitted to "testify to what is and is not a trade secret, because it is a legal conclusion"); *Skycam, Inc. v. Bennett*, 2011 WL 2551188, at *5 (N.D. Okla. June 27, 2011) (expert not "permitted to opine that the information was 'trade secret' or 'confidential proprietary information'").

Further, Prof. Contreras seeks to give opinions about whether HDMI LA took "reasonable measures" to protect its alleged trade secrets, opinions for which he has no training, expertise, or basis. During his deposition, he explained that "[t]rade secrecy law" requires "maintaining the confidentiality of information," including by taking "reasonable precautions to maintain its secrecy." (Ex. 3 at 83:21-85:6.) But he acknowledged that some versions of the Specifications have been made public, including through

4

what he calls "unauthorized releases." (Ex. 3 at 85:24-86:21.) He does not know, and did not investigate, how long those disclosures were publicly available. (Ex. 3 at 86:16-87:10, 100:15-101:5.) He has "no independent knowledge of the steps HDMI took to safeguard" the Specification. (Ex. 3 at 93:17-24.) As a result of the public disclosures, he acknowledged that "in theory, it's possible that there are portions of [the Specifications] that may no longer have trade secret protection"; he only "assume[s]" that "some of it does," but can't say which parts of the Specifications might be protected by trade secret law. (Ex. 3 at 100:10-13, 103:16-104:2.) Prof Contreras nevertheless seeks to offer his "understanding" that "HDMI LA took reasonable measures to get those disclosures taken down." (Ex. 3 at 86:16-21.)

But Prof. Contreras is not an information security specialist. Moreover, all that Prof. Contreras knows about the prior public disclosures he learned from "reading the depositions" of two fact witnesses—Trudi Bordi and Robert Tobias. (Ex. 3 at 57:9-20, 92:17-24.) He even stated that he was relying "exclusively on the testimony of the licensing experts from HDMI LA." (Ex. 3 at 102:15-19.) Given this, he wants to testify that his "reading of the testimony … suggested to [him]" that the actions HDMI LA took "were prompt and reasonable in the face of these disclosures." (Ex. 3 at 88:13-17.)

This unsupported opinion is not admissible. It invades the province of the Court to instruct the jury and the province of the jury to apply that law to the facts. *See*, *e.g.*, *Aguilar*, 966 F.2d at 447 (affirming exclusion of expert about whether workers' reliance would be "reasonable" or "foreseeable" because it would be "utterly unhelpful" and therefore "inadmissible"); *Roblox Corp. v. WowWee Group Limited*, 2024 WL 4057418, at *7-9 (N.D. Cal. Sept. 3, 2024) (excluding expert testimony about whether Roblox had "legally protectible trade dress" and whether certain works were "derivative works"); *In re Google RTB Consumer Privacy Litig.*, 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024) (excluding expert testimony about whether Google violated privacy rights of account holders); *Gable*, 727 F. Supp. 2d at 835 (excluding testimony of David Nimmer in a copyright case regarding whether two works were substantially similar).

Further, Prof. Contraras does not have the expertise to help the jury understand whether HDMI LA's precautions were "reasonable" or adequate. *See*, *e.g.*, *Chang*, 207 F.3d at 1172-73 (district court properly found international finance expert was not qualified to render an opinion regarding authenticity of securities certificate where he had no training in identification of counterfeit securities); *Gable*, 727 F.

5

Supp. 2d at 833-35 (famous copyright lawyer's legal expertise did not qualify him to testify as a literary expert because he lacked "experience, knowledge, training or education in the literary field"); (Ex. 3 at 102:3-17 (testifying that he has no experience removing unauthorized disclosures from Internet but "[t]here are lots of things, of course, that none of us have done personally but we still have opinions about")). The Court should preclude Prof. Contreras from testifying that the HDMI Specifications embody protectible "trade secrets."

### B. Prof. Contreras Should Be Precluded from Testifying that the HDMI Adopter Agreement is "Reasonable," "Customary," or "Procompetitive."

Prof. Contreras opines that the licensing program administered by HDMI LA is "procompetitive" and does "not give rise to any claim for breach of contract, anticompetitive conduct, or discrimination." (Ex. 1 ¶ 102.) He further opines that the terms of the HDMI Adopter Agreement "are reasonable and customary" in the "industry" and "reflect procompetitive practices that have been recognized by U.S. antitrust enforcement agencies." (Ex. 1 ¶ 100.) These are legal conclusions that the Court should exclude.

Whether a restraint is "procompetitive" is generally an economic question, but even economists cannot provide legal opinions. *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *5-*6 (N.D. Cal. June 15, 2018). Prof. Contreras has no expertise in economics. (Ex. 3 at 23:18-24:22.) He does not "claim any expertise in the definition of markets through econometric or other techniques." (Ex. 3 at 24:3-9.) As part of his work in this case, he did not "analyze markets, define them, put numbers on them, and so forth." (Ex. 3 at 24:18-22.) Thus, he cannot say that HDMI LA's conduct was "procompetitive" with respect to any particular relevant market. (Ex. 3 at 25:4-27:15.) Nor has he ever been permitted to testify that a "licensing arrangement for standards-essential patents had procompetitive or anticompetitive effects." (Ex. 3 at 45:9-17.)

Prof. Contreras is also not an expert in any relevant "industry." He is a lawyer who read a sampling of agreements. (Ex. 3 at 68:10-23.) He did not consider how any of those agreements "were actually implemented or carried out." (Ex. 3 at 68:24-69:25.) He did not interview or survey anyone. (Ex. 3 at 115:7-11.) He contends that the relevant industry is the "information and communications technology" sector or "ICT." (Ex. 3 at 76:2-13, 196:2-18.) He admits that this is a "broad sector comprising many companies and many products" and that there are "hundreds of thousands of standard-essential patents in

this sector." (Ex. 3 at 76:14-77:9.) Yet, he did not study any of those patents for his work in this case, and he looked at only a handful of licensing arrangements. (*Id.*)

Instead, as a lawyer, Prof. Contreras looked at legal authorities to make legal arguments about whether legal documents are "reasonable," "customary," or "procompetitive" on paper. His main authorities are what he calls "agency interpretations" of those agencies' "view of the antitrust laws" that he says "are viewed as fairly authoritative by market actors," but which he admits are "not [the] law, per se." (Ex. 3 at 191:1-4.) The agency interpretations that Prof. Contreras relies on are primarily set forth in the handful of Business Review Letters and guidance documents listed in his report and then cited repeatedly in the footnotes. (Ex. 1 ¶¶ 56, 68, 70, 72-73, 80, 91.) Yet, he insists that he is not providing a "legal brief" (Ex. 3 at 192:8-12.)

The Court should not permit Prof. Contreras to walk jurors through these legal authorities any more than it would permit him to walk jurors through a Supreme Court decision or a Department of Justice amicus brief. Courts routinely exclude such testimony. For example, in *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1045-46 (D. Ariz. 2005), the court precluded two antitrust law professors from offering legal conclusions, including about the views of antitrust enforcement authorities. Likewise, in *Roblox*, the court ruled that the expert at issue "may not testify about what the law is, state the legal standards, or opine on whether the evidence presented does or does not establish secondary meaning and likelihood of confusion." 2024 WL 4057418, at *9. The expert was not permitted to "explain the law or make legal arguments." *Id.* In *Gable*, the court refused to allow David Nimmer, a highly regarded copyright professor, to weigh the similarity of two works against his comprehensive review of Ninth Circuit jurisprudence because his opinion "constitutes a legal conclusion and is not admissible." 727 F. Supp. 2d at 835-36 ("portions of Nimmer's report read much like a third legal brief"); *see also LD v. United Behavioral Health*, 2023 WL 2806323 (N.D. Cal. Mar. 31, 2023) (rejecting "thinly disguised attempt to submit what is essentially an amicus brief as an expert report"). Likewise, the Court should preclude Prof. Contreras from testifying that the terms of the HDMI Adopter Agreement "are reasonable and customary" in the "industry" and "reflect procompetitive practices that have been recognized by U.S. antitrust enforcement agencies." (Ex. 1 ¶ 100.)

**C. Prof. Contreras Should Be Precluded from Testifying that the Trademark Discount Structure Is a "Well-Known Promotional Strategy," "Procompetitive," or "Beneficial to Consumers."**

Prof. Contreras opines that HDMI LA's trademark discount program is a "well-known promotional strategy" and is "both procompetitive and beneficial to consumers." (Ex. 1 ¶¶ 27, 94-95; Ex. 2 ¶ 2b.) His opinions about what conduct is "procompetitive" are inadmissible legal conclusions for the reasons discussed above. But, beyond that, Prof. Contreras lacks the "knowledge, skill, experience, training, or education" necessary to give opinions about the merits of promotional strategies or their effects on consumers. *See Chang*, 207 F.3d at 1172; *Gable*, 727 F. Supp. 2d at 833-35.

Prof. Contreras is not an expert in marketing or consumer psychology. He did not interview any consumers, conduct any market research or surveys, or do any other empirical analysis to determine how consumers may have processed marketplace information about HDMI. He does not cite any academic literature about how consumers perceive marketplace information. He did nothing to study how common trademark discounts are as promotional strategies. Nor does he have the expertise to perform such a study.

Instead, Prof. Contreras simply analogizes to one famous marketing campaign that began in 1991—"Intel Inside"—and cites one licensing administrator that has recently offered a royalty discount in connection with trademark usage. (Ex. 1 ¶ 95.) He offers no analysis of the history of the "Intel Inside" promotional strategy. He did not study Intel's advertising spending or any marketing research regarding the reasons for the apparent success of the Intel campaign.

Similarly, Prof. Contreras offers no details about Access Advance's royalty discount program. (Ex. 1 ¶ 95 & n. 103.) Giving an example of one licensing administrator offering a royalty discount out of an industry that Prof. Contreras concedes includes "many companies and many products" and that there are "hundreds of thousands of standard-essential patents" (Ex. 3 at 76:14-77:9) is plainly insufficient to support an opinion that "such brand incentives are employed by a range of technology vendors." (Ex. 1 ¶ 95.)

Prof. Contreras did not do any of the work necessary to support reliable opinions about commonness or effectiveness of such promotional strategies. Such work would be far outside his realm of expertise as a law professor. Experts are not permitted to testify about fields in which they do not have the requisite "experience, knowledge, training or education." *Chang*, 207 F.3d at 1172. Under these principles, the copyright lawyer in *Gable* was excluded from testifying about his literary analysis because he had never

"worked as a film critic, a publisher, an English professor, an editor or director." 727 F. Supp. 2d at 833-34. There, the court found that expert testimony on such topics might be within the qualifications of an English professor, an expert with a film degree, or a screen credit arbitrator, but not a copyright lawyer. *Id.* at 834. For the same reasons, Prof. Contreras cannot testify about topics that are outside his field of expertise, but possibly could be addressed by marketing experts and consumer psychologists. The Court should exclude Prof. Contreras from testifying about promotional strategies or their effects on consumers.

### D. Prof. Contreras Should Be Precluded from Testifying that the Different Terms Offered to Chinese Adopters and Non-Chinese Adopters Are "Nondiscriminatory," "Justified," or Not "Actionable."

Prof. Contreras opines that the terms offered to Adopters based in China "do not differ significantly from those offered to other Adopters" and that any differences were "justified" to "secure legal compliance in a major market"; thus, HDMI LA has not "discriminated against non-Chinese Adopters in any actionable manner." (Ex. 1 ¶ 101.) This opinion, too, is chock-full of impermissible legal conclusions, rather than the sort of reliable methodology on which permissible expert opinion must be based.

To start, Prof. Contreras seeks to offer a legal opinion as to the definition of "non-discriminatory." He seeks to testify that "in the patent licensing context, when we talk about nondiscriminatory terms, we're talking about terms that apply in a similar manner to similarly situated licensees." (Ex. 3 at 127:4-13.) This is a legal conclusion that Prof. Contreras adopts from case law. He opines that "[s]everal courts and commentators … are of the view that discrimination with respect to royalty rates and other license terms should be prohibited only as to 'similarly situated' licensees." (Ex. 1 ¶ 85c.) For this proposition, Prof. Contreras relies on *TCL v. Ericsson* (Ex. 1 ¶ 85c), where the court interpreted a contractual commitment in a standards organization policy to license on non-discriminatory terms. *TCL Commc'n Tech. Holdings, LTD v. Ericsson*, 2018 U.S. Dist. LEXIS 234535 at *178 (C.D. Cal. Mar. 9, 2018). He also relies on *Unwired Planet* (Ex. 1 ¶ 85c), a UK judicial decision interpreting a similar contractual commitment. *Unwired Planet*, [2020] UKSC 37, ¶¶ 8, 113-119.  Prof. Contreras does not mention that each case turned on the specific facts, such as the drafting history of the particular policy.

Further, Prof. Contreras seeks to offer a legal opinion, which he thinks is "fairly defensible" and "probably" "relatively well-established," that China and the rest of the world are sometimes divided into categories such that licensees in each place might not be "similarly situated." (Ex. 3 at 127:14-128:5.) His

9

opinion is based on a few courts, "both in the U.S. and the U.K." (Ex. 3 at 127:14-128:5), "adjudicating FRAND licensing cases" (Ex. 1 ¶ 85d.) He also testified that the "the definition of nondiscrimination in the context of FRAND is somewhat contentious" but he thinks, based on "[c]ourts analyzing non-discrimination obligations" (Ex. 1 ¶ 85e), there is a "strong sense" that a "nondiscrimination obligation is not a most-favored customer, most-favored licensee requirement," which would be a "more stringent standard." (Ex. 3 at 157:14-158:1.) Thus, he thinks that "nondiscrimination" is "viewed by many" as being "triggered only when … a party is seriously disadvantaged." (Ex. 3 at 158:2-5.) Accordingly, he opines that "you can have discrimination as long as it's not unfair discrimination." (Ex. 3 at 158:6-12.)

These opinions based on the application of case law, the relative stringency of different legal standards, and the application of legal concepts such as whether two groups of Adopters are "similarly situated" or whether discrimination constitutes "unfair discrimination" are plainly matters of law and inadmissible. *See*, *e.g.*, *Aguilar*, 966 F.2d at 447 (affirming exclusion of expert about whether workers' reliance would be "reasonable" or "foreseeable" because it would be "utterly unhelpful" and therefore "inadmissible"); *Nationwide Transport Finance*, 523 F.3d at 1058-59 (affirming exclusion of UCC expert who sought to apply law to facts of case, discuss legal duties, and label parties' actions as "wrongful" or "intentional"); *AirWair Int'l Ltd. v. Pull & Bear Espana SA*, 2021 WL 2914082, at *5-6 (N.D. Cal. July 12, 2021) (excluding opinions that trade dress at issue was "unambiguous, valid, and protectable"). The Court should preclude Prof. Contreras from offering his legal opinions about the different terms available to Chinese Adopters for the same reasons.

## V.   CONCLUSION

For the reasons stated above, Availink respectfully requests that the Court preclude Prof. Contreras from providing opinions in this case.

Dated: August 15, 2025

Respectfully submitted,
GREENSPOON MARDER LLP


 /s/ James J. McGuire
James J. McGuire

*Attorneys for Defendant and Counterclaimant Availink Inc.*