HDMI LICENSING ADMINISTRATOR, INC.,

Plaintiff,

v.

AVAILINK INC.,

Defendant.

Case No. 22-cv-06947-EKL

**ORDER DENYING MOTION FOR LEAVE**

Re: Dkt. Nos. 219, 222

On December 31, 2025, the Court issued an Order on the parties' cross-motions for summary judgment. ECF No. 218 ("MSJ Order"). Now before the Court is Defendant Availink Inc.'s motion for leave to file a motion for reconsideration of that Order. ECF No. 219 ("Motion"). The Court ordered Plaintiff HDMI Licensing Administrator, Inc. ("HDMI LA") to file a response. ECF Nos. 220, 221. Availink filed a further motion for leave to file a reply brief, which substantively responded to HDMI LA's brief. ECF No. 222. Having carefully reviewed the parties' submissions, the Court finds this matter suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the following reasons, Availink's motion for leave is DENIED.[1]

## I. LEGAL STANDARD

A party may file a motion for reconsideration of an interlocutory order only after obtaining leave of court. Civil L.R. 7-9(a). A party seeking leave to file a motion for reconsideration must show diligence in bringing the motion and one of the following:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of

---

[1] The parties are familiar with the facts of the case, the arguments raised at summary judgment, and the Court's rulings – which are detailed thoroughly in the MSJ Order.

reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b). "No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civil L.R. 7-9(c).

Whether to grant leave to file under Local Rule 7-9 is committed to the Court's sound discretion. *See Montebueno Mktg., Inc. v. Del Monte Corp.*, 570 F. App'x 675, 676 (9th Cir. 2014). Reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration is appropriate only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## II. DISCUSSION

Availink argues that it should be granted leave to file a motion for reconsideration to address a "manifest failure by the Court to consider material facts or dispositive legal arguments." Mot. at 1. First, Availink identifies several perceived errors in the Court's analysis of HDMI LA's breach of contract claim. Second, Availink raises certain affirmative defenses that it never mentioned during the summary judgment proceedings and asks the Court to clarify whether it may present the defenses at trial. The Court addresses these issues in turn.

### A. HDMI LA's Breach of Contract Claim

Availink raises several arguments to support its request for leave. Most of these points improperly rehash Availink's unsuccessful summary judgment arguments, which the Court already considered. *See* Civil L.R. 7-9(c); *Meas v. City & Cnty. of S.F.*, 681 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010). Availink also makes a new argument that contradicts the position it advanced at summary judgment, which is improper. Nonetheless, the Court considers these arguments in depth for the sake of completeness.

2

First, Availink argues that the Court "did not determine whether Availink's proffered interpretation of" language in the Adopter Agreement "was reasonable." Mot. at 1. This is incorrect. At summary judgment, Availink argued that the plain language of the Adopter Agreement was "clear" and "unambiguous." Availink Reply at 6, ECF No. 200-2. The Court agreed. MSJ Order at 7. Based on the clear and unambiguous language of the Adopter Agreement, the Court set forth the ***only*** reasonable interpretation of the key terms relating to Availink's royalty, annual fee, and confidentiality obligations. *Id*. at 8-12. The Court directly addressed Availink's reading of key terms and explained why Availink's positions had no basis in, or were contradicted by, the plain language of the Adopter Agreement. *Id*. at 10 (explaining that "[n]othing in the Adopter Agreement supports Availink's position," and that the "plain language of the Adopter Agreement" expressly forecloses Availink's position that no royalties were due post-termination); *see also id*. at 12 (rejecting Availink's interpretation of the confidentiality term). Availink's disagreement with these conclusions is not a basis for granting leave, or for reconsidering the Court's holding.

Second, Availink argues that its products are Components, not "end-user Licensed Products," and thus they are not subject to royalties. Mot. at 4-5. The Court considered and rejected this argument. *See* MSJ Order at 10-11. The relevant term states that:

> Manufacturers of Components, Cables and Connectors will pay no per unit royalty to the extent such Components, Cables and Connectors are incorporated into ***end-user Licensed Products subject to royalty*** hereunder. Components, Cables and Connectors ***sold otherwise*** shall be considered end-user Licensed Products subject to the payment of royalties.

Adopter Agreement Attach. B, ECF No. 161-14 (emphasis added). Availink argues that the phrase "sold otherwise" means that Components sold directly to end users – *i.e.*, not incorporated into other products – are subject to a royalty. Mot. at 5. The Court did not reject this premise. Rather, the Court concluded that Availink's interpretation is underinclusive because it ignores another circumstance under which a royalty is owed for Components. As clearly stated in Attachment B, Components are subject to royalties unless they are incorporated into end-user Licensed Products "subject to royalty." MSJ Order at 11. End-user Licensed Products "subject to royalty" are those sold by Adopters. *Id.* Thus, absent evidence that Availink's Components were

incorporated into end-user Licensed Products sold **by Adopters**, the royalty "exemption does not apply." *Id*. Yet Availink produced **no evidence** that its Components were incorporated into products sold by other Adopters, or that any other Adopter paid a royalty on products incorporating Availink's Components. *Id*. Therefore, Availink was not excused from paying royalties on sales of its Components.[2]

Third, Availink argues that it was HDMI LA's burden to prove that "Components sold by Availink were *not* incorporated into royalty-bearing 'end-user Licensed Products.'" Mot. at 5. That reading is plainly inconsistent with the royalty-reporting terms of the Adopter Agreement. Section 7.3.1 requires **Availink** to "maintain accurate and detailed books and records sufficient to ascertain the royalties payable" under the Adopter Agreement. Section 7.3.2 requires **Availink** to submit quarterly reports showing the "total amount of royalties due, together with reasonable supporting data as may be requested" by HDMI LA. Thus, if Availink wishes to avoid or reduce its royalty obligation, Availink had the contractual duty to show that its Components were incorporated into "end-user Licensed Products subject to royalty."

Fourth, Availink argues that "the withdrawal terms controlling Availink's termination permitted it to use the [HDMI] Specification" for three years post-termination without paying a royalty. Mot. at 4. Simply restating this position demonstrates its absurdity, but the Court also explained why it is foreclosed by the unambiguous language of the Adopter Agreement. MSJ Order at 10. Specifically, Section 9.1 provides that the licenses "shall continue to apply for a period of three (3) years," but they are "subject to the terms and conditions of this [Adopter] Agreement." Availink now argues that the phrase "subject to the terms and conditions of this Agreement" is "undefined and highly ambiguous."[3] Mot. at 4. Not so. The Adopter Agreement

_____

[2] In its discussion of royalties, the MSJ Order included the following topic sentence: "The royalty scheme in the Adopter Agreement is designed to require payment of a single royalty per product that uses the HDMI Specification, even when multiple components of a product use the HDMI technology." MSJ Order at 10. Availink faults the Court for not citing "any provision of the Adopter Agreement" after this sentence. Mot. at 5. This argument is trivial. The remainder of that paragraph cites to and quotes extensively from Attachment B to the Adopter Agreement, which contains the royalty provisions. MSJ Order at 10-11. The Court cited HDMI LA's briefing to show where an argument was made, not for support.

[3] This position is an about-face from Availink's unequivocal position at summary judgment that

states that the license to the HDMI Specification is "[s]ubject to the terms and conditions of this Agreement, including without limitation, . . . *the payment of royalty fees*." Adopter Agreement § 4 (emphasis added). Thus, Availink's continued license to the HDMI Specification post-termination was conditioned upon the payment of royalties that Availink indisputably did not pay. MSJ Order at 11. Accordingly, Availink was *not* authorized to continue making and selling products that use the HDMI Specification, and its conduct is a continuing breach.

Fifth, Availink maintains that it was entitled to continue using the HDMI Specification post-termination because the Specification was "publicly available on the internet," and thus no longer "confidential." *See* Mot. at 3-4; MSJ Order at 12. But, as the Court explained, "Availink assumed an independent contractual obligation to treat the Specification as confidential," regardless of whether the Specification could be found somewhere online. MSJ Order at 12. Availink may be excused from its confidentiality obligations only under specific circumstances, such as if the HDMI Specification is "[r]ightfully in the public domain" or if Availink "[r]ightfully received [it] from a third party without any obligation of confidentiality." Adopter Agreement § 8. Availink bore the burden of proof to show that one of these exceptions applies. *Id*. In the MSJ Order, the Court noted that Availink's limited evidence on this issue – the Oktar Declaration – was insufficient. The Oktar Declaration states that certain versions of the HDMI Specification were found online in 2025, and "internet history indicat[ed] that" the Specification had been online from 2017 to 2019 but had been removed. MSJ Order at 12 n.10. Nothing in the Oktar Declaration indicates that the HDMI Specification was "rightfully" in the public domain. And in any event, Availink's after-the-fact internet search does not change the reality that Availink received the HDMI Specification pursuant to the Adopter Agreement, not from any of these online sources. HDMI Statement at 3 (Fact 1), ECF No. 211-6.

Sixth, Availink argues that the Court "refused to weigh probative evidence relevant to" whether language in the Adopter Agreement "was actually ambiguous" in light of how other

---

the Adopter Agreement is "clear," "unambiguous," and reasonably susceptible to only one interpretation. Availink Opp. at 9-10; Availink Reply at 4, 6-7. Availink does not explain, and the Court fails to see, how a contract can morph from "unambiguous" to "highly ambiguous" when the only intervening event is Availink's summary judgment loss.

Adopters interpreted their royalty obligations. Mot. at 1. But this contradicts Availink's primary argument at summary judgment that the Adopter Agreement is "complete, clear and unambiguous on its face," thus it must be interpreted according to the "plain meaning of its terms." Availink Opp. at 10, ECF No. 204 (quoting *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (2022)). Indeed, Availink repeatedly asserted that the "plain language" of the Adopter Agreement "is dispositive and resolves the central issues regarding royalties." Availink Reply at 1; *see also id.* at 4 ("New York law is settled that a clear and unambiguous agreement must be construed in accordance with the plain meaning of its terms.").[4]

Having found the plain language of the contract unambiguous, the Court appropriately declined to consider extrinsic evidence. *See* MSJ Order at 7 (citing *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) ("When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract[.]")); *id.* at 7 n.8 ("Because the contract is unambiguous, evidence of how other Adopters allegedly interpret the Adopter Agreement is immaterial to the Court's analysis."); *see also Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1166 (2d Cir. 2024) ("The court is to determine an unambiguous contract's meaning without considering extrinsic evidence of the parties' intent, such as their course of dealing." (quotation omitted)); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 207-08 (2d Cir. 2005) (holding that extrinsic evidence such as "the parties' intent" and "their 'course of dealing'" is not relevant where the contract is unambiguous); *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (1990) ("It is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'"). In its motion for leave, Availink

---

[4] Although Availink introduced extrinsic evidence at summary judgment, it did so only to "confirm[]" its reading of the plain language of the Adopter Agreement. Availink Opp. at 10. The cases Availink cited do not support considering extrinsic evidence when a contract is unambiguous. *See, e.g., Studley v. Nat'l Fuel Gas Supply Corp.*, 485 N.Y.S.2d 880, 884 (1985) (relying on evidence that *neither* party understood a contract to impose a condition precedent); *Heston v. Farmers Ins. Group*, 160 Cal. App. 3d 402, 407 (1984) (holding that trial court "properly admitted parol evidence to ascertain the meaning of an ambiguous agreement"); *Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 402, 406-07 (S.D.N.Y. 2024) (considering extrinsic evidence to address ambiguity).

6

emphasizes *Hobish v. AXA Equitable Life Insurance Co.*, 43 N.Y.3d 442 (2025), which Availink never previously cited, even though the opinion issued six months before summary judgment briefing commenced. In any event, *Hobish* offers no new support to Availink's position. As with the other authority Availink cited, the court in *Hobish* considered extrinsic evidence only ***after*** concluding that a contractual term was "subject to two reasonable interpretations, and [was] thus ambiguous when considered within the four corners of the contract."[5] *Id*. at 450.

Finally, Availink raises miscellaneous quibbles. For example, Availink argues that the Court erred in stating that HDMI LA filed suit in part to "enjoin Availink's unauthorized use of its technology" because HDMI LA sought to enjoin the use of trademarks, and trademarks are not "technology." Mot. at 5-6 n.1. But the complaint clearly challenges Availink's unauthorized use of the HDMI Specification too – *i.e.*, the technology used to make products HDMI compliant – and seeks to enjoin that unauthorized use and to recover royalties. Compl. ¶¶ 29, 32-33, 40-41, ECF No. 1. As another example, Availink faults the Court for citing to a portion of its antitrust expert report as additional authority when explaining that "necessary" patents are defined by the Adopter Agreement as the patents that are necessarily practiced in implementing the HDMI Specification. *See* Mot. at 6. Contrary to Availink's suggestion, the Court did not rely on patent infringement in concluding that Availink breached the Adopter Agreement. Thus, these quibbles do not identify error. Nor are they material to the Court's ruling on the contract issues for which Availink seeks reconsideration.

In sum, none of Availink's arguments support its motion for leave, and none would support reconsideration of the MSJ Order even if the Court granted leave.

---

[5] Availink's argument for considering extrinsic evidence separately fails because the Adopter Agreement has a merger clause. Adopter Agreement § 9.8 ("This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings relating hereto. No modifications or additions to or deletions from this Agreement, or waiver of any right hereunder, shall be binding unless accepted in writing[.]"). Availink merely brushes this clause aside without any explanation. *See* Availink Reply at 9.

United States District Court
Northern District of California

**B.    Availink's Affirmative Defenses**

In its MSJ Order, the Court held that HDMI LA was entitled to summary judgment on its breach of contract claim, and that the "only triable issues are the amount of damages owed and the scope of injunctive relief that may be appropriate." MSJ Order at 13. In reaching this conclusion, the Court noted that contract formation and HDMI LA's performance under the contract were not in dispute. *Id*. at 6. The Court then explained why HDMI LA had met its burden as to the two remaining elements of its claim – that Availink breached the Adopter Agreement, and that HDMI LA suffered damages as a result. *Id*. at 9-13.[6] The Court also addressed Availink's affirmative defense – really, a combination of several affirmative defenses – that the Adopter Agreement is void for public policy reasons. *Id*. at 13, 20-32.

In its motion for leave, Availink asks the Court to "reconsider or clarify" whether Availink's affirmative defenses "remain live for trial." Mot. at 7. Availink contends that its failure to assert affirmative defenses in response to HDMI LA's motion for summary judgment does not constitute waiver or abandonment. *Id*. Availink emphasizes two defenses. First, Availink seeks to argue that HDMI LA "should be equitably estopped from pursuing damages for claimed royalties" based on purported evidence regarding the "course of performance" of the Adopter Agreement. *Id*. at 9. Second, Availink contends that its defense of the "statute of limitations is still live for trial, particularly as it applies to damages." *Id*. At Availink's request, the Court takes this opportunity to clarify that Availink's fifth affirmative defense of laches, waiver, and estoppel has been abandoned, but Availink may raise its second affirmative defense – the statute of limitations – in the context of limiting damages that HDMI LA may claim at trial.

The Court finds *Netlist Inc. v. Samsung Electronics Co.* persuasive. That case also involved a breach of contract claim and affirmative defenses of waiver, estoppel, and acquiescence. No. 20-cv-00993-MCS-ADS, 2021 WL 6103543, at *2 (C.D. Cal. Nov. 17, 2021).

---

[6] Availink contends that "plaintiff has not yet proven all the elements of its claim," Mot. at 8, but this is incorrect. As recounted above and in the MSJ Order, HDMI LA has established all the elements of its breach of contract claim, including the *fact of* damages resulting from Availink's breach. Although the *amount* of HDMI LA's damages will be addressed at trial, that is a question of remedy, not liability.

The district court noted that there "is no binding law from the Ninth Circuit as to whether an affirmative defense timely asserted in an answer but omitted in a summary judgment opposition may be allowed to proceed to trial." *Id*. But, after surveying relevant authorities, the court deemed the defendant's "failure to raise the waiver, estoppel, and acquiescence defenses at summary judgment as [an] abandonment of those defenses." *Id*. (collecting cases). The Ninth Circuit affirmed this ruling. *Netlist Inc. v. Samsung Elecs. Co.*, No. 22-55209, 2023 WL 6820683, at \*3 (9th Cir. Oct. 17, 2023) (reversing and remanding on other grounds). The Ninth Circuit held that the defendant abandoned the defenses of waiver, estoppel, and acquiescence – despite pleading them in its answer – by failing to "raise them in response to [plaintiff's] motion for partial summary judgment or in its own motion for summary judgment." *Id*. The Ninth Circuit explained that, "[w]here a movant puts liability at issue on summary judgment, a defendant opposing summary judgment may not decline to raise an affirmative defense that, if successful, would defeat the movant's claim, and then seek to assert that defense at trial." *Id*.

Although the Ninth Circuit's opinion in *Netlist* is non-precedential, its reasoning is sound, and its conclusion is consistent with many other authorities addressing abandonment of affirmative defenses, including estoppel.[7] Moreover, the holding in *Netlist* is consistent with fundamental principles of summary judgment practice. For example, a plaintiff is not required to proactively negate all possible affirmative defenses because the defendant bears the burden of proof on an affirmative defense. *See Kanne v. Conn. Gen. Life. Ins. Co.*, 867 F.2d 489, 492 n.4

---

[7] *Accord Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1264 (11th Cir. 2001); *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352-53 (Fed. Cir. 1999) ("[T]he trial court correctly held that [defendant's] failure to raise its affirmative defense of estoppel in opposition to [plaintiff's] summary judgment motion constituted an abandonment of the defense."); *United States v. Mottolo*, 26 F.3d 261, 263-64 (1st Cir. 1994) ("At summary judgment on the issue of liability, unproffered affirmative defenses to liability normally are deemed abandoned."); *United States v. Westreich*, No. 21-cv-09013-SSS-SKX, 2024 WL 2000088, at \*3 (C.D. Cal. Mar. 14, 2024) (collecting cases); *Kaffaga v. Steinbeck*, No. CV 14-08699 TJH (FFMx), 2017 WL 5989039, at \*1 (C.D. Cal. Aug. 25, 2017); *Duarte Nursery, Inc. v. U.S. Army Corps of Eng'rs*, No. 13-cv-02095-KJM-DB, 2017 WL 3453206, at \*3 (E.D. Cal. Aug. 11, 2017) (allowing the defenses of estoppel and unclean hands "to lay dormant and then resurface at trial, after liability has been determined, would undermine judicial economy, efficiency, and fairness to the opposing party"); *Williams v. Univ. Med. Ctr. of S. Nev.*, No. 09-cv-00554-PMP-PAL, 2010 WL 3001707, at \*2-3 (D. Nev. July 28, 2010); *Aviation Fin. Grp., LLC v. Duc Hous. Partners, Inc.*, No. CV 08-535-LMB, 2010 WL 1576841, at \*14-15 (D. Idaho Apr. 20, 2010).

(9th Cir. 1988); *Johnson v. Georgia-Pacific Corp.*, 329 F. App'x 65, 68 (9th Cir. 2009). It follows that, if the plaintiff moves for total summary judgment and the defendant contends that an affirmative defense precludes its liability, the defendant must designate specific facts showing that there is a genuine dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Another important principle is that courts "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). A cryptic affirmative defense lurking quietly in an answer, but never presented in the defendant's papers, is insufficient to prevent summary judgment.

The Court need not decide whether an affirmative defense is *always* abandoned if not raised in response to a summary judgment motion. It is sufficient to conclude that, on the record of this case, Availink abandoned the affirmative defenses to liability that it did not raise at summary judgment. Several factors support this conclusion.

First, Availink was on notice that HDMI LA sought *total* – not partial – summary judgment. HDMI LA's motion sought "summary judgment in favor of HDMI LA on its Count One for breach of contract, and against Availink on Counts I-VI of Availink's Amended Answer and Counterclaims." HDMI Mot. at 25, ECF No. 157-2; *see also* Proposed Order, ECF No. 160-2. Facing a motion for total summary judgment on all claims and counterclaims, Availink had every reason to assert all available affirmative defenses to avoid that outcome. *See Netlist*, 2023 WL 6820683, at *3; *Johnson*, 263 F.3d at 1264 (reasoning that because plaintiffs "moved for final summary judgment, not merely partial summary judgment. . . . it became incumbent upon the [opposing party] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment").

Second, Availink asserted *other* affirmative defenses in response to HDMI LA's motion for summary judgment on the breach of contract claim. Indeed, Availink's first argument was that "there are triable issues regarding whether the Adopter Agreement is unenforceable as contrary to public policy." Availink Opp. at 1. Availink argued at length that "the Adopter Agreement is unenforceable as contrary to public policy because it violates federal and state antitrust statutes,

10

federal trademark and patent misuse doctrine, and state unfair competition law." *Id*. at 8, 13-22. Thus, Availink asserted its sixth, seventh, and eighth affirmative defenses. Answer ¶¶ 88-90, ECF No. 118 (asserting "unclean hands and/or trademark misuse," violation of "public policy," and violations of "antitrust and unfair practice laws"). But Availink declined to assert the waiver and estoppel defense that it now seeks to raise at trial. "Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Marentes v. State Farm Mut. Auto. Ins. Co*., 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016).

Third, HDMI LA had no reason to expect that Availink would rely on a defense of waiver or estoppel at trial. Availink's operative answer states in relevant part: "HDMI LA's claims are barred by the doctrines of laches, waiver, and/or estoppel." Answer ¶ 87. This boilerplate assertion did not give HDMI LA notice of the grounds for Availink's estoppel defense.[8] Moreover, HDMI LA issued a contention interrogatory that requested Availink to "[s]tate with specificity all facts" that support Availink's "defense to Count I of the Complaint in this action (Breach of Contract)." Pl.'s Ex. 26 at 15-16, ECF No. 158-10. In response, Availink identified only the following grounds for its defense to the breach of contract claim:

> Availink does not owe royalties under the Adopter Agreement because Availink does not sell end-user products; it sells integrated circuits (ICs) that are incorporated into end-user products. Further, Availink does not owe royalties under the Adopter Agreement because of the parties' course of dealings and communications with HDMI LA, as well as HDMI LA's course of dealings and communications with other IC manufacturers. The Adopter Agreement is also unenforceable because it violates public policy.

*Id*. Thus, Availink did not identify estoppel as a basis for its defense. Instead, it identified the three points that it ultimately raised in the summary judgment briefing.

The Court is not persuaded by Availink's argument that *Long v. Howard University*, 550 F.3d 21 (D.C. Cir. 2008), requires a different outcome. In *Long*, the D.C. Circuit held that "there is no requirement that a party assert a statute-of-limitations defense in opposition to a summary

---

[8] *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). District courts within the Ninth Circuit have reached different conclusions as to whether the "fair notice" pleading standard or the more demanding *Twombly/Iqbal* standard applies to affirmative defenses. *See Kanaan v. Yaqub*, 709 F. Supp. 3d 864, 867-68 (N.D. Cal. 2023) (collecting cases). The Court need not resolve that issue here.

judgment motion" in order to preserve the defense for trial. *Id.* at 24. But *Long* differs from this case in at least two important respects. First, as the D.C. Circuit emphasized, the defendant in *Long* "repeatedly" asserted a statute-of-limitations defense in its answer *and* "in responding to interrogatories during discovery, at the pre-trial conference, and in a motion filed before trial," thus the defense was not waived. *Id.* at 23-25. Here, Availink did not "repeatedly" assert its waiver or estoppel defense. To the contrary, it failed to identify the defense (or any facts supporting it) in responding to interrogatories. Second, in *Long,* the plaintiff moved for *partial* summary judgment, not total summary judgment. *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 9-10 (D.D.C. 2007). The plaintiff did not prevail, so plaintiff's claim and the statute-of-limitations defense were both presented to the jury. *Long,* 550 F.3d at 23, 25. Here, by contrast, Availink seeks to raise a defense at trial *after* HDMI LA moved for *total* summary judgment, and after the Court held that HDMI LA is entitled to summary judgment on the breach of contract claim.

In sum, Availink has abandoned its fifth affirmative defense of "laches, waiver, and/or estoppel." Answer ¶ 87. In its motion for leave, Availink also urges that its second affirmative defense, which asserts that "HDMI LA's claims are barred, in whole or in part, by the applicable statute of limitations," *id.* ¶ 84, remains live for trial. This defense suffers from the same procedural deficiencies discussed above: It is a boilerplate assertion in Availink's answer that was not raised in Avalink's interrogatory response or at summary judgment, even though Availink raised *other* affirmative defenses. However, the Court's MSJ Order acknowledged that "[t]riable issues remain as to the appropriate remedies for Availink's breach," including "the amount of damages owed." MSJ Order at 13, 31. To the extent that the statute of limitations is relevant to the issue of remedies, this defense may be raised at trial.[9] This issue can be addressed at the upcoming pretrial conference.

---

[9] In its motion for leave, Availink does not identify any other affirmative defense that it seeks to raise at trial.

### III.  CONCLUSION

For the foregoing reasons, Availink's motion for leave to file a motion for reconsideration of the Court's MSJ Order is DENIED.[10]

**IT IS SO ORDERED.**

Dated: January 20, 2026

_____
Eumi K. Lee
United States District Judge

---

[10] In ruling on the motion for leave, the Court has reviewed and considered the arguments raised in Availink's motion for leave to file a reply brief.  *See* ECF No. 222.  Although Avalink dubbed that motion a "motion for leave" to file a reply brief, Availink included its substantive replies to the points raised in HDMI LA's opposition brief.  To the extent Avalink is requesting to file yet another brief in support of its motion for leave to file a motion for reconsideration, the request is DENIED.  At this point, Availink is simply repeating arguments that have already been made twice before – both at summary judgment, and in its motion for leave to file a motion for reconsideration.  These arguments are not improving with repetition.  Enough is enough.